| 1A. Deceptive Contracts Are Not A Basis For Consideration In New York And Not Enforceable | *Legal Authorities* |
|---|---|
| | 28 (2d Cir. 1989) |
| 17. Indeed, the Second Circuit has instructed "courts [to] not be timid in voiding agreements which tend to injure the public good or contravene some established interest of society." | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *Stamford Bd. of Educ. v. Stamford Educ. Ass'n.*, 697 F.2d 70, 73 (2d Cir. 1982). |
| 18. If it was agreed that the funds would be deposited with Levine under false pretenses, to not pay federal taxes, the agreement between sellers and Levine would be unenforceable. No cause of action can arise from an agreement which has been documented falsely for an illegal purpose regardless of degree of complicity in scheme. | *AQ Asset Mgt. LLC v. Levine*, 2013 N.Y. Misc. LEXIS 2054 (N.Y. Sup. Ct., Mar. 28, 2013) |

| B. *Constructive Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| 19. The Second Circuit has instructed that a conveyance is "deemed constructively fraudulent" under NYDCL Section 273 only if "two separate elements are satisfied:  first, it is made without fair consideration, and second, the transferor is insolvent or will be rendered insolvent by the transfer in question." | *United States v. Watts,* 786 F.3d 152, 164 (2d Cir. 2015) (internal quotation marks omitted) (quoting *In re Sharp Int'l Corp.,* 403 F.3d 43, 53 (2d Cir. 2005)). |
| 20. Constructive fraudulent conveyance under NYDCL Section 273 is "defined exclusively by the objective conditions of the asset transfer at issue, without regard to the debtor's intent in making the transfer." | *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.,* 126 F. Supp. 3d 388, 400 (S.D.N.Y. 2015), aff'd, 716 Fed. Appx. 23, 2017 U.S. App. LEXIS 23002, 2017 WL 5499156 (2d Cir. Nov. 16, 2017). |
| 21. "[T]he element of insolvency is presumed when a conveyance is made without fair consideration, and the | *Watts,* 786 F.3d at 165 (citations omitted); *Fannie Mae v. Olympia Mortg. Corp.,* 792 F. Supp. 2d 645, 651 (E.D.N.Y. 2011). |

| B. *Constructive Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| burden of overcoming such presumption is on the transferee." | |
| 22. To prevail on a claim under §273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied. | *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014); *Grace v. BankLeumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006). |
| 23. Fair consideration is given for property, or obligation,<br><br>a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or<br><br>b. When such property, or obligation, is *received in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained. | NYDCL §272; *Pryor v. Tiffen (In re TC Liquidations LLC)*, 463 B.R. 257, 268 (E.D.N.Y. 2011); *Mendelsohn v. Kovalchuk (In re APCO Merch. Servs.)*, 585 B.R. 306 (Bankr. E.D.N.Y. 2018); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 647 (3d Cir. 1991). |
| 24. Where, as here, the Defendants fail to show both fair equivalence and good faith in the transaction, the transfer should be avoided. | *Lawson v. Barden (In re Skalski)*, 257 B.R. 707, 710 (Bankr. W.D.N.Y. 2001). |
| 25. As suggested by the language of the statute, fair consideration under New York law has two components—the exchange of fair value and good faith—and both are required. | *Kramer v. Mahia (In re Khan)*, 2015 U.S. Dist. LEXIS 133241, 41 (E.D.N.Y. 2015). |
| 26. Even if there is fair consideration, a transfer is still constructively fraudulent in the absence of good faith on the part | *Wimbledon Fin. Master Fund v. Wimbledon Fund, SPC*, 2016 N.Y. Misc. LEXIS 4805 (N.Y. Sup. Ct., Dec. 2016) (emphasis added), quoting *Berner Trucking, Inc. v. Brown*, 281 AD2d 924, 925, 722 N.Y.S.2d 656 (1st Dept. |

| B. *Constructive Fraudulent Conveyance* | *Legal Authorities* |
|---|---|
| "of both the transferor and the transferee." | 2001). |
| 27. Defendants who present no credible evidence to meet their burden of proving that the property was conveyed for "fair consideration" as defined under prevailing New York State law have not met their burden. | *United States v. Alfano,* 34 F. Supp. 2d 82, 848 (E.D.N.Y. 1999). |
| 28. Fraudulent conveyance claim granted where no record of the release of an antecedent debt serving as consideration for transfer of residence from husband to wife. | *United States v. Nirelli*, 1997 U.S. Dist. LEXIS 15451, No. 92- CV-563C, 1997 WL 718443, at (W.D.N.Y. 1997) |
| 29. A transferee's good faith is lacking if the transferee acted with either actual or constructive knowledge of the fraudulent scheme." | *HBE Leasing Corp.*, 48 F.3d 623, 636 (2nd Cir. 1995);  NYDCL § 278(1) |
| 30. New York courts have recognized that where the transferee is an officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law. | *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* 403 F.3d 43, 54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dept. 1984). |
| 31. When preferences are given to a debtor corporation's shareholders, officers, or directors, such transfers are *per se* violations of the good faith requirement. | *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* 403 F.3d 43, 54 (2d Cir. 2005); *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 21(S.D.N.Y, 2015); *Sardis v. Frankel*, 113 A.D.3d 135, 142, 978 N.Y.S.2d 135 (1st Dept. 2014); *Geltzer v. Artists Mktg. Corp. (In re Cassandra Group)*, 338 B.R. 583, 594 (Bankr S.D.N.Y. 2006); *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept. 2016). |

| C. *Participation In the Fraudulent Transfer; 11 U.S.C. 550(a)* | *Legal Authorities* |
|---|---|
| 32. "Under New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer | *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. |

| C. *Participation In the Fraudulent Transfer; 11 U.S.C. 550(a)* | *Legal Authorities* |
|---|---|
| and are either transferees of the assets or beneficiaries of the conveyance." | 1993); *RTC Mort. Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001). |
| 33. Under federal law, one participates in a fiduciary's breach if he or she affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed. | *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 51(2nd Cir. 2005) (citing to *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992) (2d Cir. 2003). |
| 34. Masterminding the fraudulent transfers, using some of the transferred assets to pay personal expenses, and diverting funds to cheat creditors is sufficient to support a finding of personal involvement in a fraudulent conveyance. | *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993) |
| 35. An officer acting as a signatory on its corporate bank accounts and who authorizes expenditures to benefit himself and his family members, benefits both directly and indirectly and is liable for the entire amount of the fraudulent transfers. | *Fannie Mae v. Olympia Mortg. Corp.*, 2014 U.S. Dist. LEXIS 79479 (E.D.N.Y. June 10, 2014). |
| 36. The owner of the transferee corporation, the individual and the defendant was, "[b]y any meaning of the word" a "beneficiary" of the corporations' fraudulent transfers and thus liable for the fraudulent conveyance | *U.S. v. Lax,* 414 F. Supp. 3d 359, 366-367 (E.D.N.Y. 2019); *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 161 (Bankr. D. Va. 2007) |

| D. *Alter Ego* | *Legal Authorities* |
|---|---|
| 37. Alter ego liability exists under New York law "when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . that its separate identity so disregarded that it primarily transacted the dominator's business rather than its own. | *City of Almaty v. Ablyazov*, 2019 U.S. Dist. LEXIS 55183 (Bankr. S.D.N.Y. 2019); *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 195 (2d Cir. 2010) (internal quotation marks and citation omitted). |

2223

| D. *Alter Ego* | *Legal Authorities* |
|---|---|
| 38. The Second Circuit set forth ten non-exhaustive factors to assess whether a corporation has been sufficiently dominated to warrant piercing the corporate veil: (1) [T]he absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. | *In Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.,* 933 F.2d 131, 134 (2d Cir. 1991). |
| 39. "Factors to be considered in determining whether the owner has 'abused the privilege of doing business in the corporate form' include whether there was a 'failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use. | *East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.,* 66 AD3d 122, 127, 884 N.Y.S.2d 94 (2009), quoting *Millennium Constr., LLC v. Loupolover,* 44 AD3d 1016, 1017, 845 N.Y.S.2d 110 (2007). |
| 40. An action to pierce the corporate veil and to hold the owners liable for an underlying corporate obligation is | *Lederer v. King,* 214 AD2d 354, 625 N.Y.S.2d 149 [1st Dept. 1995]. |

| D. *Alter Ego* | *Legal Authorities* |
|---|---|
| "equitable in nature" and dependent "on the attendant facts and equities". | |
| 41. A Plaintiff is not required to prove actual fraud in order to pierce the corporate defendant's veil, but [must prove] only that the individual defendant's control of the corporate defendant was used to perpetrate a wrongful or unjust act toward plaintiff. | *BP 399 Park Ave. LLC v. Pret 399 Park, Inc.*, 150 A.D.3d 507, 508 [1st Dept. 2017] (citing to (*Lederer v King*, 214 AD2d 354, 625 N.Y.S.2d 149 [1st Dept. 1995]; *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 AD3d 405, 407, 997 N.Y.S.2d 67 (App. Div.1st Dept.). |
| 42. Under Debtor Creditor law, fraud by an individual is justification to pierce the corporate veil and hold the individual liable for the debts of a corporation. | *Commissioners of the State Ins. Fund v Kalafatis*, 2011 N.Y. Misc. LEXIS 3469 (NY County Sup. Ct.) (citing to *In re Rave Communications, Inc.*, 138 B.R. 390 (Bankr. S.D.N.Y. 1992). |
| 43. While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice. | *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 A.D.3d 405, 407[1st Dept. 2014]; *TNS Holdings v. MKI Sec. Corp.*, 92 NY2d 335, 339, 703 NE2d 749, 680 N.Y.S.2d 891 (1998)). |
| 44. Courts have recognized piercing of the corporate veil when an individual exercised complete domination of the corporation, which was used to commit a fraud or wrong against the plaintiff, and abused the privilege of doing business in the corporate form. | *NPR. LLC v. Met Fin Management, Inc.*, 63 A.D.3d 1128, 882 N.Y.S.2d 253 (2nd Dept, 2009), *cf. Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807; *Millennium Constr., LLC v. Loupolover*, 44 AD3d 1016, 845 N.Y.S.2d 110 (2007). |
| 45. Where an undercapitalized corporation is unable to pay a judgment debt and there has been "disregard of corporate formalities and personal use of corporate funds,[there is] sufficient evidence of wrongdoing to justify piercing the corporate veil". | *Austin Powder Co. v. McCullough*, 216 AD 2d 825, 827, 628 N.Y.S. 2d 855 (App. Div. 3d Dept. 1995); *Walkovszky v. Carlton*, 18 N.Y.2d 414, 420, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966). |
| 46. When a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego, the | *Austin Powder Co. v. McCullough*, 216 A.D.2d 825, 827, 628 N.Y.S. 2d 855 (App. Div. 3d Dept. 1995); *First Horizon Bank v. Moriarty-Gentile*, 2015 U.S. Dist. LEXIS 165695, (Bankr. E.D.N.Y. 2015); *Gardiners Bay Landscape v. Postiglione (In re Postiglione)* 2019 Bankr. LEXIS 1887 (Bankr. E.D.N.Y |

2225

| D.  *Alter Ego* | *Legal Authorities* |
|---|---|
| corporate form may be disregarded to achieve an equitable result. | 2019); *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 187 Conn. 544, 556-57, 447 A.2d 406 (1982); *Balmer v. 1716 Realty LLC*, No. 05 CV 839 (NG)(MDG), 2008 U.S. Dist. LEXIS 38113, 2008 WL 2047888 (E.D.N.Y. May 9, 2008). |

| E.  **Deceptive Contracts Are Not A Basis For Consideration In New York And Not Enforceable** | *Legal Authorities* |
|---|---|
| 47.  The courts will not recognize contracts which rest upon an illegal consideration, and will not order restitution in so far as one has been performed, but may interfere and prevent the arrangement being further consummated in case of partial performance. | *Di Tomasso*, 250 A.D. 206, 209, 293 N.Y.S. 912, 916 (App. Div. 2nd Dept. 1937). |
| 48.  A contract is void in New York and unenforceable as a matter of public policy when its performance would practice fraud or deception on a third party. | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 86 (2d Cir. 1982) (Oakes, C.J. concurring and dissenting) |
| 49.  As a matter of public policy, fraud and deception practiced on a third party . . . will invalidate a New York contract, at least where there is a 'direct connection between the illegal transaction . . . and the obligation sued upon. | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) (quoting *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.S.2d 465, 471, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960)) |
| 50.  "[E]ven where a contract is not itself unlawful, the bargain may still be illegal under New York law if it is closely connected with an unlawful act."). | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 28 (2d Cir. 1989) |
| 51.  Indeed, the Second Circuit has instructed "courts [to] not be timid in voiding agreements which tend to injure the public good or contravene some established interest of society." | *Chia Huey Chou v. Remington Tai Che*, 2010 U.S. Dist. LEXIS 142766 (E.D.N.Y. 2010) citing to *Stamford Bd. of Educ. v. Stamford Educ. Ass'n.*, 697 F.2d 70, 73 (2d Cir. 1982). |

| E. Deceptive Contracts Are Not A Basis For Consideration In New York And Not Enforceable | Legal Authorities |
|---|---|
| 52. If it was agreed that the funds would be deposited with Levine under false pretenses, to not pay federal taxes, the agreement between sellers and Levine would be unenforceable. No cause of action can arise from an agreement which has been documented falsely for an illegal purpose regardless of degree of complicity in scheme. | *AQ Asset Mgt. LLC v. Levine*, 2013 N.Y. Misc. LEXIS 2054 (N.Y. Sup. Ct., Mar. 28, 2013) |

Dated:  July 10, 2024

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP


/s/ *Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

*Counsel for Plaintiff, the Liquidating Trustee*

2227

## The Law Office of Eugene R. Scheiman, PLLC

17 State Street
Floor 40
New York, New York 10004

Office: (212) 594-7563
Mobile:(646) 280-9000
Eugene.Scheiman@ScheimanLaw.com

August 5, 2024

The Hon. Alan S. Trust
Chief Judge
United States Bankruptcy Court
Eastern District of New York
Alphonse M. D'Amato U.S. Courthouse
290 Federal Plaza
Central Islip, NY 11722

Re: Case No. 8-20-08049 (AST)

Your Honor,

We represent Arvind Walia and Niknim Management, Inc. in the above noted Adversary Proceeding which was tried before the Court on July 24, 2024.

At closing argument Your Honor requested that the Defendants explain what occurred to some one million three-hundred dollars ($1.3 million) dollars which were disbursed as funds based on the sale of Porteck Corporation to Physicians Practice Plus, LLC.

After consultation with Mr. Walia, the answer to Your Honor's inquiry appears to be found in Plaintiff's Exhibits 1 (the Asset Purchase Agreement) and 5 (Post Closing payment calculation contained in an email from Mr. Walia to Mr. Parmar and others).

Exhibit 5 shows a deduction from the purchase price of five hundred thousand dollars ($500,000.00) to pay down an advance (loan), alleged to be by CHT to Porteck. Six hundred thousand dollars ($600,000.00) was deducted to enable the payment of a loan assumed by CHT. Two hundred thousand dollars ($200,000.00) was deducted for Abstract fees.

Together the listed deductions on Exhibit 5 contain a record explanation of the "missing" amounts, the

# The Law Office of Eugene R. Scheiman, PLLC

details of which Defendant Walia was unable to recall during his cross-examination and questioning by Your Honor.

Respectfully,

*Eugene R. Scheiman*

.

Sanford P. Rosen

Rosen & Associates, P.C

747 Third Ave

New York, NY 10017

By email to:

Jeffrey P. Nolan

Pachulsky Stang Ziehl & Jonwa LLP

780 Third Avenue, 34th Floor

New York, NY  10017

jnolan@pszlaw.com



Jeffrey P. Nolan

310.772.2313
jnolan@pszjlaw.com

August 5, 2024

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.

LOS ANGELES, CALIFORNIA 90067-4003

310.277.6910

**NEW YORK**

780 THIRD AVENUE, 34TH FL.

NEW YORK, NEW YORK 10017-2024

212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET, 17TH FLOOR,

P.O. BOX 8705

WILMINGTON, DELAWARE 19899-8705

302.652.4100

**HOUSTON**

700 LOUISIANA STREET, STE. 4500

HOUSTON, TEXAS 77002

713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET, 34TH FL. STE. 3430

SAN FRANCISCO, CALIFORNIA 94104

415.263.7000

The Honorable Alan S. Trust
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

> Re:   **In re Orion HealthCorp., Inc., et al.**
> **Howard M. Ehrenberg v. Arvind Walia; Niknim**
> **Management, Inc.**
> **Adv. Proc. No. 20-08049 (AST)**

Dear Judge Trust:

We are counsel for Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al.* (the "Liquidating Trustee") in the above referenced adversary proceeding. I write to address the issue raised by the Court to the parties at the end of Trial: what evidence was introduced as to the discrepancy in price and distribution of funds surrounding the Porteck APA.

As the Court may recall, the Asset Purchase Agreement ("APA") was dated March 2015. [**Pl Trial Ex 3**] On summary judgment, Plaintiff established through the forensic analysis testified to in the Affidavit of Frank Lazzara, that on March 2, 2015, $9.8 M was deposited from the Debtors' bank account at M&T Bank into the Debtors' IOLA Account which sum was disbursed the following day on March 3, 2015, at the closing. [**Dkt No. 57**; Aff'd of Frank Lazzara in Support of Plaintiff's SJM, §8] This fact was memorialized in the parties Joint Pretrial Memorandum as an established fact. [**Joint Pretrial Memorandum Dkt. No. 137, §19, 20**] $6,800,000 was disbursed to the Sellers and the remaining balance of the sale proceeds, $3,000,000 was disbursed to First



United Health, LLC, a Paul Parmar controlled entity. [**Joint Pretrial Memorandum, Dkt. No. 137, §20**]

As the Court noted at trial, the Disbursement Authorization and Itemization Form dated March 3, 2015, **Pl Trial Ex. 4,** evidences $7M distributed to the Sellers, or on their behalf, at the closing. Coupled with the First Transfer of $2.5 M made one year later, a total of $9,500,000 was distributed to the Defendants. Mr. Walia's testimony at trial was that the purchase price was $10.8M, which left an unexplained discrepancy of $1.3M.

Defendant Walia directs the Court to **Pl Trial Ex. 5** to explain the discrepancy. **Pl Trial Ex 5,** is an email prepared by the Defendant one year removed from the closing. The math in the email is not accurate. The $600,000 for a "PCA Loan" was already accounted for in the $7MM disbursed to Seller as part of the Disbursement Authorization and Itemization Form dated March 3, 2015, **Pl Trial Ex. 4.** (see entry "People's United Bank, $597,648.59"). The APA closing documents do not reflect any sum paid to Abstract Business Advisors at closing, let alone $200,000, and Walia testified at trial this was handled by Parmar.

The testimony of a purchase price of $10.8M is not corroborated by the trial record.

Respectfully submitted,

*/s/ Jeffrey P. Nolan*

Jeffrey P. Nolan

cc:  Sanford Rosen, Esq.
     Counsel for Defendants (Via ECF)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------

In re:                                        : Chapter 11
                                              :
ORION HEALTHCORP, INC.[1]                     : Case No. 18-71748 (AST)
                                              :
                              Debtors.        : (Jointly Administered)
                                              :
---------------------------------------       :
                                              :
HOWARD M. EHRENBERG IN HIS CAPACITY AS        : Adv. Pro. No. 20-08049 (AST)
LIQUIDATING TRUSTEE OF ORION                  :
HEALTHCORP, INC., ET AL.,                     : Trial:    July 24, 2024
                                              : Time:     9:30 a.m.
                              Plaintiff,      : Place:    Courtroom 960
                                              :           U.S. Bankruptcy Court
                                              :           290 Federal Plaza
                       v.                     :           Islip, NY
                                              :
ARVIND WALIA; NIKNIM MANAGEMENT, INC.,        : PTC:      July 17, 2024
                                              : Time:     1:30 p.m.
                              Defendants.     :
                                              : Judge:  Hon. Alan S. Trust
                                              :
                                              :
---------------------------------------       :

### NOTICE OF ERRATA AND LODGING OF CORRECTED EXHIBIT A TO TRIAL BRIEF OF PLAINTIFF, HOWARD M. EHRENBERG AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC.

PLEASE TAKE NOTICE that, in connection with the trial in the above-captioned

adversary proceeding, Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of

Orion Healthcorp., Inc. ("Plaintiff") hereby files this Notice of Errata and lodges a true and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

complete copy of the Ruling Conference transcript for the hearing dated April 10, 2024, in the above referenced adversary which includes adversary no. 20-08052(AST) (as the matters were called together on calendar).

Dated:  August 8, 2024

Respectfully submitted,
PACHULSKI STANG ZIEHL & JONES LLP


/s/ Jeffrey P. Nolan
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777

*Counsel for Plaintiff, the Liquidating Trustee*

# EXHIBIT A

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 18-71748-ast

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    ORION HEALTHCORP, INC., et al.,

7             Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 20-08049-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   HOWARD M. EHRENBERG, in his capacity as liquidating trustee

12   of Orion HealthCorp, Inc., et al.,

13                  Plaintiffs,

14          v.

15   ARVIND WALIA; NIKNIM MANAGEMENT, INC.,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18   Adv. Case No. 8-20-08052-ast

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20   HOWARD M. EHRENBERG in his capacity as LIQUIDATING TRUSTEE

21   OF ORION HEALTHCORP, INC., et al.,

22                  Plaintiffs,

23          v.

24   ABRUZZI INVESTMENTS, LLC,

25                  Defendants.

1    - - - - - - - - - - - - - - - - - - - - - - - - - x

2                    United States Bankruptcy Court

3                    290 Federal Plaza

4                    Central Islip, New York 11722

5

6                    April 10, 2024

7                    11:29 AM

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON ALAN S. TRUST

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:    UNKNOWN

1    HEARING re Recovery Of Certain Transfers

2

3    HEARING re Summary Judgment

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Rita Weltsch

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   PACHULSKI STANG ZIEHL & JONES LLP

 4         Attorneys for Trustee Howard Ehrenberg

 5         780 Third Avenue, 34th Floor

 6         New York, NY 10017

 7

 8   BY:  JEFFREY P. NOLAN

 9

10   ROSEN & ASSOCIATES

11         Attorneys for Arvind Walia

12         747 Third Avenue

13         New York, NY 10017

14

15   BY:  SANFORD P. ROSEN

16

17   THE LAW OFFICE OF EUGENE R. SCHEIMAN, PLLC

18         Attorneys for Niknim Management Inc.

19         570 Lexington Ave, Suite 1600

20         New York, NY 10022

21

22   BY:  EUGENE R. SCHEIMAN

23

24

25
```

1    GIULIANO LAW, P.C.

2        Attorney for the Counter-Claimant Abruzzi Investments

3        445 Broadhollow Road, Suite 25

4        Melville, NY 11754

5

6    BY:  ANTHONY F. GIULIANO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              MR. ROSEN:  Good morning, Judge.

3              THE COURT:  Good morning.

4              MR. ROSEN:  You're muted, Judge.

5              THE COURT:  That will make for a short ruling

6    conference.

7              MR. ROSEN:  Sorry.  That's better.  We can hear

8    you now.

9              THE COURT:  I've been ruling for the last hour-

10   and-a-half.  You guys didn't hear it?

11             MR. ROSEN:  I'm so sorry.  Can you do it again?

12             THE COURT:  Sorry, my throat is sore now.

13             CLERK:  Good morning.  I am Alexis -- excuse me.

14             THE COURT:  It's contagious.

15             CLERK:  Good morning.  I am Alexis Hennigan,

16   backup courtroom deputy for Chief Judge Alan S. Trust

17   presiding.  These hearings are being recorded.  Please speak

18   clearly.  Once you hear your case called, please give your

19   appearance.  And remember, before speaking please state your

20   name so we can get a clear record of who is appearing.  All

21   parties not speaking, please put your phone on mute.

22             Case Number 20-08049, Howard M. Ehrenberg v.

23   Arvind Walia, et al, and Case Number 20-08052, Howard M.

24   Ehrenberg v. Abruzzi Investments LLC, et al.

25             THE COURT:  Let's take appearances please.  First

1    in Walia.

2             MR. ROSEN:  Good morning, Judge.  Sanford Rosen,

3    Rosen & Associates.  And we are counsel for the Defendants.

4             MR. SCHEIMAN:  Good morning, Your Honor.  Eugene

5    Sheiman with the Law Firm of Eugene Scheiman, co-counsel for

6    the Defendants.

7             MR. NOLAN:  Good morning, Your Honor.  Jeff Nolan

8    appearing on behalf of the Plaintiffs, Howard Ehrenberg, the

9    Trustee of the Orion Liquidating Trust.

10            MR. EHRENBERG:  Good morning, Your Honor.  I'm

11   Howard Ehrenberg, the liquidating trustee.

12            THE COURT:  All right.  Do we have counsel in

13   Abruzzi also?

14            MR. GIULIANO:  Yes, Your Honor.  Good morning.

15   Good morning, Your Honor.  Anthony Giuliano for the

16   defendants in the Abruzzi matter.

17            THE COURT:  All right.  And Mr. Nolan, you're

18   still representing Mr. Ehrenberg in Abruzzi?

19            MR. NOLAN:  Yes, Your Honor.  Jeff Nolan appearing

20   on behalf of the plaintiff in the 08052 Abruzzi adversary on

21   behalf of the plaintiff.

22            THE COURT:  All right.  I'm going to start with

23   the ruling conference in 20-08052, Ehrenberg v. Abruzzi

24   Investments and John Petrozza.

25            This is the Court's ruling made in narrative form

Page 8

1    under Rule 7052 and will include the Court's findings of

2    undisputed facts and conclusions of law.  This is a core

3    proceeding under Title 28, Section 157(b)(2)(H).  The venue

4    is proper in this court.  Due and proper notice of the

5    various motions have been provided to the parties.  The

6    Court has before it Plaintiff-Trustee's motion for summary

7    judgment, the Defendant's cross-motion for summary judgment,

8    and motion to strike, which raises various evidentiary

9    issues.

10        The Court has determined that the following facts

11   are not subject to a genuine dispute and are therefore

12   established in this case pursuant to Rule 56(g) of the

13   Federal Rules of Civil Procedure as incorporated by Rule

14   7056.  The Court will also address the myriad evidentiary

15   objections raised by the Defendants to the extent that they

16   relate to the determination that this Court has made as to

17   what facts are not in genuine dispute.

18        This adversary proceeding revolves around one

19   payment, a $250,000 transfer made to one or more of the

20   defendants.  That transfer came prepetition from funds that

21   belonged to one or more of the debtors.  Those funds of

22   $250,000 were ultimately repaid, but repaid to a non-debtor

23   entity.  However, for purposes of this summary judgment

24   motion, the only issue before the Court is the transfer that

25   was made of the $250,000.

Page 9

1        The Court has determined for the reasons that

2    follow to deny both parties' cross-motions for summary

3    judgment and will issue a trial scheduling order on the

4    pending claims.

5        The Debtors are the various multiple entities that

6    are listed in the adversary proceeding.  I won't recite all

7    18 or so of them in the record, but they are apparent on the

8    face of the adversary.

9        Those entities prepetition operated a consolidated

10   enterprise of companies which were aggregated through a

11   series of acquisitions and operated in the healthcare sector

12   space, primarily in revenue and practice management.

13       At all times relevant, John Petrozza, who I will

14   refer to as Petrozza, has been a resident of the State of

15   Florida who did business in New York.  His entity, Abruzzi

16   Investments, is a Limited Liability Company that had no

17   employees, no officers, and no directors but was managed by

18   Mr. Petrozza.  I'll refer to them collectively as

19   Defendants.  The only activity undertaken by Abruzzi was to

20   invest money on Mr. Petrozza's behalf.

21       Between 2015 and 2016, Mr. Petrozza considered

22   Paul Parmar, who was the primary principal of the Debtors,

23   as a close friend.  Mr. Parmar was at all relevant times the

24   primary operating person, officer, and controlling

25   shareholder behind the Debtors.

1           In June of 2013, Mr. Petrozza commenced his

2    business relationship with the Debtors when he was

3    approached by Mr. Parmar and asked to invest $4 million in

4    Constellation Healthcare Investment, which I'll refer to as

5    CHI, which is a non-debtor entity.  CHI allegedly held an

6    ownership interest in the Debtor entity, Orion HealthCorp

7    Inc., which I will refer to as Orion.  According to the

8    Defendants, their purpose in investing $4 million in CHI was

9    to acquire 100 percent ownership interest in Orion.  Mr.

10   Petrozza subsequently made the $4 million investment in what

11   he believed was CHI.  Additionally, he paid approximately

12   $300,000 to Orion to cover IPO and expenses associated with

13   his investment.  The money paid by Mr. Petrozza was sent to

14   Parmar and subsequently deposited into an IOLTA account held

15   at Robinson Brog Leinwald Greene Genovese & Gluck, referred

16   to as Robinson Brog, in the name of the non-debtor entity,

17   Constellation Health LLC.

18           In December of 2015, the United States District

19   Court for the Southern District of Texas entered a judgment

20   against Orion in the amount of $194,185.  That Southern

21   District of Texas judgement ultimately resulted in a proof

22   of claim being filed in the bankruptcy case and assigned as

23   Claim Number 1000.  That judgment remained outstanding at

24   the time the Debtors filed for bankruptcy relief.

25           On March 9th of 2016, a lawsuit was filed against

1    the debtor entities Physician Practice Plus and CHT by a

2    plaintiff called Criterions LLC.  On November 30th of 2017,

3    an adverse judgement was entered against those debtors,

4    Physician Practice and CHT, for some $77,000.  That

5    judgement also remained outstanding at the petition date.

6           In November of 2016 as part of a large-scale

7    private transaction involving taking CHT private, Mr.

8    Petrozza met with Mr. Parmar and the board of directors who

9    approved to go-private transaction so they could all make "a

10   gazillion dollars".  Petrozza asserted he was an investor in

11   one or more of the debtors at the time of the go-private

12   transaction and wanted to receive a multiple on his $4

13   million investment.

14          Along the way, several fictitious entities have

15   been created to represent ownership of the equity of CHT.

16   One of those entities was Lexington Landmark Services, Inc.,

17   which as far as Mr. Parmar knew, did not exist as a

18   legitimate business.  While his name was signed on certain

19   documents, he claimed his signature was forged and that he

20   never gave Robinson Brog authority to receive monies on

21   behalf of Landmark Services.

22          Mr. Petrozza testified that on May 24th of 2017,

23   he asked Mr. Parmar for a personal loan of $200,000.  He

24   testified that he wanted the money in order to acquire a

25   lease to a certain property in Florida.  The Court has not

1    been provided with any specifics concerning what property or

2    what lease.

3           In any event, on that same day, on May 24th, 2017,

4    Mr. Parmar directed partner Mitchell Greene at Robinson Brog

5    to wire $250,000 from the Debtor's IOLTA account to Mr.

6    Abruzzi. Later that same day at 8:39 p.m., Parmar emailed

7    Mr. Greene to wire the $250,000 and he did not care which

8    account the funds were taken out of.

9           The next day, May 25, Robinson Brog confirmed to

10    Mr. Parmar that the $250,000 wire was in fact sent from the

11    Debtor's IOLTA account to Abruzzi. The funds were sent from

12    an account held in the name of Constellation Health/CHT

13    Closing. That transaction is what the pleadings refer to

14    and what the Court will refer to as the Transfer.

15           The Debtor's books and records evidence no

16    antecedent debt owed to the Defendants at any time during

17    the calendar year 2017. Mr. Petrozza could not explain why

18    he asked for $200,000 but received $250,000.

19           Mr. Petrozza further testified that shortly after

20    receiving the wire, the deal for the property that he was

21    working on in Florida fell through and he no longer needed

22    the money. He then advised his assistant, Lisa Basich, to

23    return the money to Mr. Parmar. Mr. Parmar then provided

24    wiring instructions to Ms. Basich, who then directed that

25    the funds be wired back as directed by Mr. Parmar.

1    On June 28th of 2017, $250,000 was liquidated from

2  an investment account of Abruzzi and forwarded to Mr.

3  Petrozza's checking account.  The next day, Mr. Abruzzi

4  wired $250,000 to an entity called Sunshine Star LLC.

5  Sunshine Star was a newly-created entity, not a debtor

6  entity, but was created by or for the benefit of Mr. Parmar

7  and his at that time girlfriend, Elena Sartison.  The

8  Debtor's books and records reflect no antecedent debt owed

9  to Sunshine Star during 2017.

10    In October of 2017, Sunshine Star closed the bank

11  account into which the $250,000 had been wired.  Defendants

12  admit that the transfer to Sunshine did not benefit any of

13  the Debtors and that the Defendants had provided no services

14  for the debtors.

15    The multiple entities which ended up filing for

16  bankruptcy on March 16, 2018 include the entities the Court

17  has described thus far.  The Debtor's cases had been jointly

18  administered.

19    In July of 2018, Defendant Abruzzi Investment,

20  filed Claim Number 10062, identifying itself as a

21  shareholder of CHT.  That day Defendant also filed Claim

22  10063, asserting it held a 49 percent member interest in

23  CHT.

24    This adversary proceeding was commenced in March

25  of 2020.  The only transaction at issue for summary judgment

1    purposes, as I said, is the $250,000 wire transfer sent to

2    Abruzzi on May 25, 2017.  That transfer was from the funds

3    that belonged to one or more of the Debtors.

4         The parties have filed various pleadings

5    throughout this case, including and answer and counterclaim,

6    a plaintiff's motion for summary judgment, defendant's

7    cross-motion for summary judgment, and motions to strike

8    various of the evidentiary affidavits submitted by the

9    trustee.  The various motions have been on submission with

10   the Court since May of 2022.

11        I will let the parties know it is not this Court's

12   practice to hold matters on submission for nearly that

13   length of time.  So the Court's apologies to the parties for

14   the length of time it's taken to get to today's rulings.

15        Standards for summary judgement are well known by

16   the parties.  The Court won't recite them.  The central

17   issue is whether or not there exists genuine issues of

18   material fact -- whether or not there are genuine issues of

19   material fact that are in dispute such that judgment as a

20   matter of law can or cannot be awarded to either party.

21        Where cross-motions for summary judgment are

22   pending, the Court must make an independent valuation of

23   each motion separately.

24        Even though the Court is denying both summary

25   judgement motions because the matter will ultimately be

1    tried, I'm going to go ahead and give you my evidentiary

2    rulings on the affidavits that were presented to the Court

3    because the Court anticipates those affidavits will appear

4    again at the time of trial and there is no reason to redo

5    these objections.

6           With respect to the affidavit of Edith Wong and

7    the declaration of Frank Lazzara, Defendants have objected

8    under Rule 901 of the Federal Rules of Evidence, which is an

9    authentication requirement.  The caselaw that addresses Rule

10   901 is fairly replete that the burden of authentication is

11   not particularly high.  The Defendant objects to the Wong

12   affidavit and Lazzar declarations, including emails and

13   other business records that are identified in those

14   declarations because Ms. Wong and Mr. Lazzar did not

15   constitute witnesses with knowledge of the items that are

16   par of what they are claimed to be.

17          However, in a related adversary proceeding arising

18   out of the same Orion case, the same evidentiary objections

19   were raised by the same counsel as here.  Anecdotally, the

20   district court in that action determined that personal

21   knowledge is not a requirement for the authentication of

22   written documents in the Second Circuit.  See Aquila Alpha

23   v. Ehrenberg, 2023 WL 2164268 *4 (E.D.N.Y. Feb. 22, 2023),

24   affirmed by the Second Circuit, 95 F.4th 98.

25          The evidentiary objections to the Wong affidavit

1    and Lazzar affidavit for 901 purposes are overruled.

2    There's an adequate basis for the Court to accept those

3    documents as part of the summary judgment record, which

4    means that they can then become part of the trial record.

5            As to Ms. Sartison, the Debtor also -- the

6    Defendants also objected to her declaration which contained

7    the opening and closing bank statement of M&T for Sunshine

8    Star, again, based on authentication.  Again, there is an

9    adequate basis that's set out in the Sartison affidavit to

10   authenticate those documents, including the Ms. Sartison's

11   declaration that "At the request and direction of Mr.

12   Parmar, I opened an account at M&T Bank for Sunshine Star

13   LLC."

14           As the creator of the bank account for Sunshine,

15   there is clearly enough circumstantial evidence to

16   authenticate the opening and closing statements of that very

17   same bank account.  Refer you all back again to Acquila

18   Alpha.  Both the District Court's opinion and the Second

19   Circuits affirmed this.

20           The Defendants also object to the Wong and Lazzar

21   declarations as inadmissible expert testimony.  However,

22   there is no specific statement contained in either

23   declaration which should be stricken because it is providing

24   an opinion.  Both of those declarations were offering fact

25   testimony and aren't proffered as expert testimony, so 703

1    is irrelevant.

2         As far as the Defendant's hearsay objection, that

3    too is overruled obviously under the well-known hearsay

4    exception for business records under 803(6).  The records

5    attached are business records and the objection is

6    overruled.  Hearsay objections and business records

7    exceptions have been routinely construed in favor of

8    admissibility due to the general trustworthiness of

9    regularly-kept records and the need for this type of

10   evidence in many cases, particularly cases which an

11   independent trustee is appointed to oversee the

12   administration of a case and/or litigation arising

13   therefrom.  I'll refer the party to Arista Records v. Lime

14   Group, 784 F.Supp.2d 398, 421 and Chevron Corp. v. Donziger,

15   974 F.Supp.2d 362, 691-692.

16        With respect to the question of whether or not the

17   $250,000 was property of the estate, the Court has

18   determined that as a matter of law, the funds transferred

19   were property of the bankruptcy estate -- would have been

20   property of the bankruptcy estate had the bankruptcy estate

21   had the bankruptcy case existed at the time that the

22   transfer occurred.  The record is undisputed that the

23   Debtors utilized the IOLTA account at Robinson Brog to hold

24   large amounts of funds and for multiple transactions.  Just

25   because the fund were held in an IOLTA account does not make

1    them not funds of the Debtors.  New York Fiduciary Law

2    Section 4971 is clear that monies that are held by an

3    attorney or held in a fiduciary capacity from a client for a

4    client and/or for a designated beneficial owner.  The

5    Debtors had control and custody over the funds while they

6    sat in the Robinson Brog account and had the power to direct

7    their disposition.

8          The  Court finds no genuine dispute as to whether

9    or not the funds transferred to the Defendants are

10    recoverable as property of the estate.

11          In terms then of the substantive legal theory,

12    trustee moves forward first on Bankruptcy Code Section

13    548(a)(a), which allows the recovery of any property that

14    was transferred with actual intent to hinder, delay, or

15    defraud any entity to which the Debtor was or became liable,

16    as well as New York DCL Section 276, which provides that

17    every conveyance made and every obligation incurred with

18    actual intent to hinder, delay, or defraud present or future

19    creditors is fraudulent.  The two statutes are adequately

20    identical for the Court to conduct one analysis of both.

21    See Janitorial Close-out City Corp., 2013 WL 492375 *5

22    (Bankr. E.D.N.Y. 2013).

23          Transfer may be avoided either under 548(a) of the

24    Bankruptcy Code or New York DCL 276.  If the Debtor had an

25    interest in the property transferred, which is undisputed

1    here -- as to which there is no genuine dispute here.  The

2    transfer occurred within two years of the petition date.

3    That is undisputed here.  And the transfer was made with

4    actual intent to hinder, delay, or defraud a creditor.

5    That's where the factual dispute arises.

6        The trustee has the burden of establishing the

7    actual intent of the transfer or debtor by clear and

8    convincing evidence.  See In re Jacobs, 394 B.R. 646, 658

9    (Bankr. E.D.N.Y. 2008).

10        Because it is difficult to find direct evidence of

11    actual fraudulent intent, courts in this circuit look to

12    certain badges of fraud which can constitute circumstantial

13    evidence of fraudulent intent.  See In re Kaiser, 722 F.2d

14    1574, 1582-1583 (2d. Cir. 1983).  The parties generally

15    agree on what those badges of fraud can include.  Lack of

16    consideration, close association between the parties, the

17    financial condition of the transferor, chronology of events

18    and transactions under inquiry.

19        The Court has determined that a genuine issue of

20    fact disputes as to whether or not there was adequate

21    consideration for the transfer of the $250,000.  In the

22    shortest way to state it, Plaintiff asserts that it was

23    simply a transfer for no consideration.  The Defendant

24    asserted it was a loan, and a loan supported by a promise to

25    repay.

Page 20

1        The Defendants rely on certain text messages to or

2   from Mr. Petrozza where he requests the $200,000 in exchange

3   for a promise to repay it.  The record is clear though that

4   there is no signed promissory note.  There doesn't appear to

5   be any interest charged for the loan or any collateral

6   provided.

7        Based upon the entire record before the Court,

8   there is a genuine dispute of material fact as to whether or

9   not there was consideration for the transfer at the time the

10  transfer was made and whether or not that consideration is

11  adequate.

12       On the close relationship, there is a close

13  relationship in this record between Petrozza and Mr. Parmar

14  for the reasons that I've already outlined.  There doesn't

15  appear to be any retention of possession or benefit of the

16  property by the Debtor once transferred.  Funds went to

17  Petrozza.  Petrozza then paid the funds back in the

18  equivalent amount that he received, although he didn't pay

19  it into the right entity.

20       As far as the financial condition of the Debtor

21  before or at the time of the transfer, the undisputed

22  evidence before the Court based upon an expert opinion from

23  B. Reily is that the Debtors were insolvent on the measuring

24  date, the probative date, the date of the transfer.  So

25  insolvency condition here exists.

1        In addition, the record is clear that there was

2    the Southern District of Texas judgement outstanding at the

3    time -- prior to the time that the transfer was made and the

4    FBI had seized over $20 million from the IOLTA account prior

5    to the time of the transfer.

6        Questions certainly do exist concerning the

7    overall chronology of events and whether or not the

8    transaction should have been considered legitimate at the

9    time that it was made, but that is a fact issue for the

10   court to determine after trial.

11       With respect to the Trustee's cause of action for

12   a constructively fraudulent transfer and New York DCL 273-a,

13   New York law is clear that any conveyance made without fair

14   consideration when debtor is a defendant in action for money

15   judgement and a judgement has been docketed against him can

16   be set aside as a constructively fraudulent transfer.  To

17   prevail, the Plaintiff must establish that the conveyance

18   was made without fair consideration and for the same reasons

19   that I discussed in connection with the actual fraudulent

20   transfer claim.  The Court has found a question of fact as

21   to whether or not there was fair consideration for the

22   transfer at the time it was made.  The other elements under

23   273-a have been satisfied as a matter of law by the trustee.

24       Again, as I've noted, the expert insolvency report

25   of Craig Jacobson from B. Reily is unrebutted in the summary

1    judgement record.  So Orion was insolvent on May 25, 2017.

2            The fair consideration under Section 272 of DCL,

3    the Court has also found a question of fact as to whether or

4    not the consideration -- whether consideration was provided

5    and whether that consideration was fair for 272 purposes.

6    The Court has also found a question of fact as to whether or

7    not the defendants were operating in good faith at the time

8    that the transfer was made.  See Sardis v. Frankel, 113

9    A.D.3d 135, 141-142.

10           So for all of those reasons, both motions for

11   summary judgement have been denied.  And again, the motion

12   to strike as to the evidence, the Court has already ruled on

13   that.

14           The Court has also noted in the pleadings that the

15   parties have a serious disagreement about the impact of

16   Section 550 of the Bankruptcy Code.  550 is only triggered

17   once a transfer has been avoided.  I won't spend any time

18   talking about 550 because to this point no transfer has been

19   avoided so there is no reason to talk about who might

20   ultimately have liability for the transfer if it were set

21   aside.

22           I'm going to set a trial on the claim in the

23   adversary proceeding.  As I said, for Rule 56(g) purposes,

24   the facts that I've identified as undisputed are undisputed

25   for trial purposes.  The trial will be limited to the

Page 23

1   matters on which the Court stated there to be genuine issues

2   of material fact.  The Court's intention is to set the

3   matter for trial on July 24th of this year so that the

4   matter can be tried this summer.  The Court will issue a

5   trial scheduling order consistent therewith.

6         Mr. Nolan, I'm going to ask you and Mr. Giuliano

7   to work on a short form of order denying both summary

8   judgment motions.  You don't need to repeat all of the

9   evidentiary rulings that I've made on the record, but they

10  will -- as I said, those evidentiary rulings will stand

11  should the same declarations and affidavits be submitted at

12  the time of trial, which I suspect they might well be.

13        All right?

14        MR. NOLAN:  Yes, Your Honor.  Thank you.

15        MR. GIULIANO:  Thank you, Your Honor.

16        THE COURT:  Thank you both.

17        THE COURT:  All right.  I'm going to turn now back

18  to 20-08049, Trustee v. Walia.  This too is an adversary

19  proceeding seeking recovery of certain transfers.  The

20  causes of action set out in the adversary proceeding are

21  core proceedings, which this Court may hear and determine

22  under Title 28, Section 157(b)(2) and the orders of

23  reference in effect in the Eastern District of New York and

24  is proper before this Court.

25        As with the prior adversary proceeding, these

1   matters have been pending for some time.  And again, it's

2   not the Court's practice to let matters fester for this

3   long.  Apologies to the parties for the length of time it's

4   taken to get to today's ruling.

5            This too is a ruling in narrative form.  And under

6   Bankruptcy Rule 7052, it includes the Court's findings of

7   undisputed facts as well as conclusions of law in accordance

8   with 2056(g) of the Federal Rules of Civil Procedures

9   incorporated by Bankruptcy Rule 7056, the facts that are

10  stated by this Court to be undisputed are undisputed for

11  purposes of the ultimate trial.

12           This case involves two transfers sought to be

13  recovered by the trustee through summary judgement.  And

14  there's also a partial summary judgement motion by the

15  Defendants.  I'll address these together.

16           First, the trustee seeks recovery of a $2.5

17  million wire transfer made on April 15 of 2016 from an M&T

18  bank account of the Debtors, the Debtor, CHT, that was made

19  to a JP Morgan Chase account, Chase bank account of the

20  defendant, Niknim.  A transfer was made at the direction of

21  Mr. Walia and was made in connection with -- arguably made

22  in connection with an asset purchase transaction, which I'll

23  describe in more detail and defined as the Porteck

24  transaction.

25           The second claim is to recover a $1,520,000 wire

1    transfer made in June of 2017 from the Debtor's Robinson

2    Brog IOLTA account, law firm IOLTA account.  That transfer

3    was sent to a JP Morgan Chase bank account of Niknim.  I'll

4    refer to that as the second transfer and the $2.5 million

5    wire as the first transfer.  The parties have provided an

6    extensive set of -- extensive joint set of undisputed facts.

7    The parties then separately provided their own proposed

8    undisputed facts.

9            Trustee claims that both the first transfer and

10   the second transfer either intentional fraudulent transfers

11   and/or constructive fraudulent transfers.  The defendants in

12   their partial summary judgement motion essentially seek

13   dismissal of the trustee's claims on a standing theory that

14   the trustee lacks standing to use Section 544 of the

15   Bankruptcy Code to invoke the remedies of state law

16   creditors in the New York DCL.

17           For the reasons to follow, the Court is denying

18   the trustee's request for summary judgment on the first

19   transfer, being the $2.5 million wire transfer made in April

20   of 2016, is granting summary judgment to the trustee on the

21   second transfer claim, the $1,520,000 transfer made to

22   Niknim in June of 2017.  All other relief sought by the

23   Trustee is denied and the Defendant's motion for partial

24   summary judgement is also denied.

25           I am going to direct the parties to return to

1  mediation and I'm going to set a trial date in June of 2024.

2  But I didn't want to jump past that part before I go through

3  the elaborate ruling. But this case will also be set for

4  trial on the remaining claims on July 24th, but I am

5  directing the parties to return to mediation.

6      At all relevant times, the Debtors were a

7  consolidated enterprise of several companies aggregated

8  through a series of acquisitions and operating in the

9  healthcare space, primarily in revenue and practice

10 management services for physician practices. The debtors

11 are as stated in the pleadings. I won't read all of their

12 names back into the record, but they do include the entity

13 Constellation Healthcare Technologies, which is a debtor

14 that I'll refer to as CHT. CHT maintained a checking

15 account at all relevant times at M&T Bank.

16     In 2015, Mr. Paul Parmar was the chief executive

17 officer of CHT and was looking to acquire a medical billing

18 company. He became interested in purchasing Porteck

19 Corporation, which I will refer as Porteck. Se joint

20 statement Paragraph 26. At that time, Porteck was a

21 technology services company in the healthcare space owned,

22 controlled, and operated by Defendant, Arvind Walia. Mr.

23 Walia was its CFO.

24     At that time, Porteck had two business lines, AHMS

25 and PC Advantage, which I will refer to as PCA, which both

1   provided medical billing services.

2          Niknim Management Inc, which I call Niknim, is a

3   New York corporation registered and operating from Mr.

4   Walia's residence on 27 Kettlepond Road in Jericho, New

5   York.  Mr. Walia was the sole officer, employee, and

6   shareholder of Niknim.  Mr. Walia formed Niknim to manage

7   his consulting work, take care of his personal investments,

8   and family trust.  Niknim followed no corporate formalities

9   and maintained no resolutions of shareholders or minutes.

10          In March of 2015, the debtor entity Physician

11  Practices Plus acquired the assets of Porteck pursuant to an

12  asset purchase agreement executed that same month.  I'll

13  call that the Porteck APA.  The sellers were Porteck, Walia,

14  the Walia Trust, and the Janaminder Trust.  Mr. Walia

15  executed the APA on behalf of himself and the Janaminder

16  Trust and Porteck.  The Walia Truste never signed the APA.

17          Mr. Parmar executed the APA on behalf of the

18  debtor, Physicians Practice.  The APA provides for a

19  purchase price of $12.8 million even though Mr. Walia had

20  agreed in writing to sell the Porteck assets for $10.8

21  million.  The purchase price was juiced up -- my phrase, not

22  the parties.  The purchase price was juiced up because Mr.

23  Parmar told Mr. Walia that he needed to add $2 million as

24  "deal fees".  Joint Fact 35.

25          Mr. Walia was unconcerned about the deal price

1   being juiced up, Joint Fact 37.

2           In fact, Mr. Walia testified in his deposition

3   that he really paid no attention to what Mr. Parmar was

4   doing when the APA purchase price was set at $2 million more

5   than the parties had agreed.  When asked when you were

6   negotiating with Mr. Parmar or Orion, "Was the purchase

7   price supposed to be $10.8 million?"

8           Answer, "Correct."

9           Question, "When did it change to $12.8 million?"

10          Answer, "At some point Mr. Parmar stated there are

11  fees to close this deal that have to be included in the

12  purchase price.  I said as long as my share of the purchase

13  price doesn't change, it doesn't concern me."  That's Page

14  134 of Mr. Walia's deposition.

15          The evidence in the record is that the actual deal

16  fees, the fees paid to the abstract business advisor's

17  broker, was $192,000.  So one-tenth or so of the nearly $2

18  million by which the purchase price was juiced up.

19          In terms of the value of the assets acquired by

20  the debtor entity, the net asset value of the AHMS business

21  was $1.35 million.  The assets were valued at $2.35 million,

22  but there was still an outstanding $1 million note.  The

23  value of the PCA side was $2,546,000, but there was still an

24  almost half-million note outstanding, an almost $1.9 million

25  loan outstanding.  So the actual value of the assets as

1    acquired from Porteck at the time that they were acquired

2    was $1.824 million being the net asset value of AHMS and the

3    net asset value of PCA.

4        Despite the written record of the asset valuation,

5    Mr. Parmar and Mr. Walia agreed to the value of the assets

6    being $10.8 million and apparently was five times the 204

7    EBITDA of $2.2 million.  And again, that five times multiple

8    is before the $2 million was added into the transaction.

9        Closing did occur in March of 2015.  Bank records

10    provided in the summary judgement evidence memorialized a

11    wire of $9.8 million from the debtor Constellation

12    Healthcare Technologies to the IOLTA account at Robinson

13    Brog, which was used to close the Porteck sale.

14        Of that $9.8 million, $6.8 million was wired on to

15    Mr. Walia and $3 million went sideways in the vernacular to

16    another non-debtor entity controlled by Mr. Parmar called

17    First United Health.

18        The Court notes this portion of the extensive

19    factual background to the extent that it will ultimately

20    relate to the Court's conclusions after trial as to whether

21    or not there was an intentionally-fraudulent transfer in the

22    second stage of the transaction because the trustee is not

23    seeking to recover the $6.8 million paid to Walia in the

24    Porteck transaction.

25        Once the Porteck deal closed shortly thereafter in

1    June of 2015, Mr. Walia was installed as the chief executive

2    officer of the Debtor's main operating company, Orion Health

3    Corp., and became the chief technology officer of

4    Constellation Healthcare Technologies.  He continued to

5    serve in those capacities through the fall of 2018.

6            While Mr. Walia was CEO of Orion and CTO of

7    Constellation Health Technologies, being on or about April

8    15 of 2016, the debtor, Constellation Health Technologies,

9    transferred $2.5 million from its JP Morgan account to

10   Niknim.  That's what I referred to earlier as the first

11   transfer.

12           The dispute between the parties seems to center

13   around a portion of the asset purchase agreement which

14   concerns the alleged balance of the purchase price and the

15   need for funds to be escrowed in accordance with Section 1.6

16   of the APA.  In his affidavit at Docket 64, Mr. Walia

17   testifies that the stated purpose of the escrow arrangement

18   was to protect the rights of Physicians Practice, the actual

19   acquirer, as purchaser under the Porteck APA to receive $2.5

20   million to the extent such funds were required to indemnify

21   Physicians Practice.

22           As a practical matter, the arrangement was not

23   necessary to protect the buyer because it simply withheld

24   payment of the $2.5 million.

25           As far as what the parties' written agreement

1   calls for, however, Section 1.6 of the APA provides that for

2   purposes of partially-securing the seller's obligations, the

3   amount of $2,500,000 shall be delivered by the buyers at

4   closing to the escrow agent by wire transfer of immediately

5   available funds pursuant to an escrow agreement

6   substantially in the form attached as Exhibit A to the APA.

7   Other conditions are stated in the APA concerning what the

8   escrow agreement would look like.

9        Section 1.6 clearly required certain conditions of

10  the escrow including that it be established and that it be

11  funded upon occurrence of certain events.  However, no

12  escrow agreement was ever executed and no escrow account was

13  ever established.  See Joint Facts 46 through 49.

14       Despite Walia's assertion that the $2.5 million

15  was owed to him or his company, the books and records of the

16  Debtor reflect no antecedent debt at the year ending

17  December 2015.  There is no antecedent debt reflected --

18  there is no debt reflected on the books and records as being

19  owed to Walia or Niknim.  The Debtor's books and records

20  reflect no debt being owed as a result of the Porteck

21  transaction as of the end of 2015.

22       The Debtor's 2016 books and records did not

23  evidence the satisfaction of any antecedent debt of $2.5

24  million or any increase in the net assets of the Debtors as

25  a result of that $2.5 million transfer.

1        The Trustee asserts that the $2.5 million transfer

2   was fraudulent based in part on an email that Mr. Parmar

3   sent to Mr. Walia on the date of the transfer, stating, "I

4   am willing to give you $3.5 million in return for you to

5   allow me to structure it property internally, which requires

6   I close the file with the $2 million payment."

7        On the same day as that email, the Debtor

8   transferred $2.5 million from its M&T account, the M&T

9   account of CHT to the JP Morgan account of Niknim.  That

10  transfer was sent at Mr. Walia's direction.  The parties

11  concede that that transfer occurred within two years prior

12  to the petition date.

13       The second transfer at issue involves a 2017

14  transaction and agreement under which Mr. Walia agreed to

15  sell to Mr. Parmar or a designated entity a software company

16  that Mr. Walia indirectly owned called AllRad Direct LLC,

17  which at that time was a successful software company.  Mr.

18  Walia owned AllRad indirectly through his ownership of an

19  entity, Object Tech Holding LLC.

20       The sale was memorialized by a membership interest

21  purchase agreement, or MIPA, dated June 2017 between Object

22  Tech as seller and Physicians Healthcare Network Management

23  Solutions as buyer.  That entity, Physicians Network

24  Solutions, is not and was not one of the Debtors, but was

25  again a third party entity owned or controlled by Mr.

Page 33

1    Parmar.

2           The MIPA required a due diligence report and the

3    negotiations required the diligence report to be prepared in

4    connection with the sale, but that due diligence report was

5    never completed.  The MIPA required various schedules to be

6    provided.  Those schedules were never completed.  The MIPA

7    had multiple sections which were never completed, such as

8    1.3, earnout payments; 1.4, discharge of debts and

9    liabilities, maintenance of working capital.  The MPIA also

10   called for certain revenue projections, balance sheets or

11   statements of assets and liabilities to be provided.  Those

12   were never provided.  State and federal tax returns that

13   were called for under the MIPA from the sellers were never

14   provided.  And the Debtor's board of directors never

15   approved the purchase.  See Joint Statements of Fact 60 to

16   62, 66, 68, and 69.

17          Despite these deficiencies, the MIPA sale closed

18   in June of 2017 and Debtor's funds, $1,520,000, was wired

19   out of the Robinson Brog IOLTA account to the Niknim bank

20   account at JP Morgan Chase.  Correspondingly, all of the

21   shares of AllRad were transferred, but transferred to the

22   non-debtor entity, Physicians Network Solutions.  No assets

23   were ever transferred in connection with the AllRad Object

24   Tech transaction to any of the debtors.

25          At no point during 2017 did any of the debtors'

1    books and records evidence an antecedent debt of $1,520,000

2    or any other debt owed to either of the defendants in

3    connection with Object Tech or AllRad.  In fact, the

4    debtors' books and records do not evidence the satisfaction

5    of any antecedent debt or increase in net assets of the

6    debtors through the acquisition of the interest in Object

7    Tech or AllRad.  The second transfer occurred within eight

8    months prior to the petition date, so well within the two-

9    year period.

10           With respect to the Court's legal determinations,

11   again, I won't recite the standard for summary judgment.

12   It's well-known by the parties.  The Court has determined

13   that there are certain material facts which are not disputed

14   and other material facts as to which a genuine dispute does

15   exist.  I've set out under Rule 56(g) the facts which are

16   undisputed for summary judgment purposes.  And therefore for

17   the remaining portions of the adversary proceeding are also

18   undisputed for trial purposes.

19           I'm first going to turn to Sections 548(a) of the

20   Bankruptcy Code for actual fraudulent transfer and New York

21   DCL 273-A.  Bankruptcy Code Section 548(a)(1)(B) allows a

22   trustee to avoid any transfer of an interest that was made

23   two years prior to the petition date if it was an actual

24   fraudulent transfer.  New York DCL Section 273(a) provides

25   that every conveyance made without fair consideration when

1    the person making it is a defendant in an action for money

2    damages or a judgement in such action has been docketed

3    against him, it's fraudulent as to the plaintiff in that

4    action without regard to the actual tent of the defendant if

5    the debtor fails to satisfy the judgement.  See Lyman

6    Commerce v. Lung, 2015 U.S. District LEXIS 51447, *17

7    (S.D.N.Y. 2015).

8           Whereas here a judgment has already been docketed

9    under New York DCL 273-A, there is no requirement that the

10   transfer at issue have rendered the debtor insolvent.  See

11   Cadle Company v. Newhouse, 2002 U.S. Dist. LEXIS 15173

12   (S.D.N.Y. Aug. 16, 2002).

13          Here, there was a final judgment entered in the

14   Southern District of Texas in excess of $200,000 in December

15   of 2015.  That judgement preceded both of the transfers at

16   issue and remained outstanding at the time of the bankruptcy

17   petitions.  Proof of claim was filed on behalf of that

18   judgement creditor.  Thus that federal court judgment is

19   sufficient as a matter of law to satisfy DCL 273-A as to any

20   transfer which was made which lacked fair consideration.

21          Trustee has also alleged under New York DCL 273,

22   274 and 275 that both transfers were not made in good faith

23   or for fair consideration.  Conveyance is vulnerable to

24   attack by a creditor without regard to the actual intent of

25   the transferor if the -- without -- if the transfer is

1    considered to have been in constructive fraud of creditors.

2    See Laco X-Ray, 88 A.D.2d 425.

3            The transfer is constructively fraudulent if made

4    without fair consideration of any if the following

5    conditions are met.  The transferor is insolvent or would be

6    rendered insolvent by the transfer in question.  There is no

7    solvency analysis in this adversary proceeding.  Transferor

8    is engaged in or is about to engage in a transaction which

9    has a reasonably small capital or the transferor believes it

10   will incur debt beyond its ability to pay.

11           Even if there is fair consideration, a transfer is

12   constructively fraudulent in the absence of good faith on

13   the part of both the transferor and the transferee.  CIT

14   Group v. 160-09 Jamaica Avenue, 25 A.D.3d 301, 303.

15           This Court, as I've stated at the outset, has

16   determined that genuine issues of material fact exist as to

17   whether or not the first transfer can be avoided either as

18   an actual intent fraudulent transfer or as a constructive

19   fraudulent transfer.

20           Those issues include whether or not the first

21   transfer was in fact a payment due in connection with the

22   Porteck sale despite the noncompliance with the escrow

23   provisions of a purchase agreement.

24           However, there are no genuine issues of material

25   fact as to the second transfer at least as to the direct

Page 37

1    payment to the defendant, Niknim.  It's undisputed that the

2    second transfer of funds that belonged to the debtor.  Those

3    funds were paid to a third-party corporation in connection

4    with a transaction by which assets were conveyed to a non-

5    debtor entity, being Physician Network Solutions, an entity

6    controlled by Mr. Parmar.

7           Physicians Network was owed no antecedent debt.

8    Niknim was owed no antecedent debt, and there is no

9    consideration in that transaction for the debtors.

10           As far as the intentional fraudulent claim under

11    548, Bankruptcy Code Section -- excuse me.  That section

12    allows the trustee to avoid any transfer made within two

13    years before the petition date if made with actual intent to

14    hinder, delay, or defraud any creditor to which the debtor

15    was or became liable.

16           Similarly, under New York DCL 276, every

17    conveyance made or obligation occurred with actual intent to

18    hinder, delay, or defraud present or future creditors is

19    voidable.  As this Court had stated in (indiscernible)

20    closeout the statutes are -- the statutes are analogous and

21    can be analyzed together.

22           An actual fraudulent transfer can be made -- can

23    be found, excuse me, where a debtor had an interest in the

24    property transferred, which it did in both transfers.  The

25    transfer occurred within two years of the petition date.

1    Again, it did in both transfers.  But the transfer was made

2    with actual intent to hinder, delay, or defrauded a

3    creditor.  See In re Jacobs, 394 B.R. 646, 658-653 (Bankr.

4    E.D.N.Y. 2008), which requires the trustee to establish

5    actual intent of the transferor by clear and convincing

6    evidence.

7              As typically in fraudulent and actual fraud

8    settings, the courts typically look to various badges of

9    fraud.  I'll highlight those that the Court has considered

10   here for trial purposes.

11             First is as far as lack or inadequacy of

12   consideration.  This Court has already noted in respect to

13   the Porteck transaction that the agreed sale price of $10.8

14   million was juiced up by $2 million at Mr. Parmar's request.

15   Mr. Walia was aware of the inflation of the purchase price

16   and essentially didn't care.

17             As I've already noted, the APA under the Asset

18   Purchase Agreement for Porteck established various

19   requirements for an escrow agreement and the funding of an

20   escrow account, none of which occurred.  Various disclosure

21   documents, due diligence requirements were required in the

22   purchase transaction.  None were provided.

23             As far as the AllRad transaction is concerned, the

24   Debtors gave up $1.52 million and got nothing in exchange.

25             As far as close or family relationship, it's clear

1    that Mr. Parmar and Mr. Walia were both officers and

2    insiders at the time of both transfers.  They knew each

3    other going back to at least 2015.  They both served in the

4    highest level of officer positions at the debtors Orion and

5    CHT.  Mr. Walia was clearly an insider of the debtors at the

6    time of both the first and second transactions.

7              On financial condition, there's no solvency

8    analysis here so the Court is not passing on solvency at the

9    time of the transfer.

10             The Court has determined that genuine issues of

11   material fact exist as to whether the first transfer, the

12   $2.5 million in Porteck, can be avoided as an intentionally

13   fraudulent transfer either under the Bankruptcy Code or New

14   York DCL.

15             Again, as to defendant Niknim in the second

16   transfer, there are no genuine issues of material fact.

17   There was no fair consideration in that transaction for the

18   debtor estate for the $1.52 million.

19             I want to turn just for a couple of minutes to the

20   recovery theory of the trustee against the defendants Walia

21   and Niknim.  Not the liability theory.  Liability theories

22   are clear, but the recovery theory.

23             With respect to the $1.52 million fraudulent

24   transfer, the trustee seeks recovery both against Niknim,

25   who received the money, and defendant Walia given his

1    control position at Niknim.

2            Under New York law, a creditor may recover money

3    damages against parties who participated in a fraudulent

4    transfer and are either transferees of the assets or

5    beneficiaries of the conveyance.  See Tae H. Kim v. Jisung

6    Yoo, 311 F.Supp.3d 598, 613 (S.D.N.Y. 2008) and

7    Cadle Co. v. Newhouse, 74 F. App'x 152, 153 (2d Cir. 2003).

8            The Court has determined that genuine issues of

9    material fact exist as to whether Mr. Walia individually

10   adequately participated in or adequately benefitted from the

11   $1.25 million payment that was made to Niknim.  So summary

12   judgment is not granted on that portion.

13           The trustee has also asserted that defendants

14   Walia and Niknim were alter egos of each other and should be

15   held jointly severally liable on an alter-ego veil piercing

16   analysis.  New York law is clear that alter ego liability

17   exists when a parent or owner uses the corporate form to

18   achieve fraud for when the corporation has been so dominated

19   by an individual or another corporation, that separate

20   identity has been so disregarded that -- excuse me, that its

21   separate identity should be disregarded.  See City of Almaty

22   v. Ablyazov, 2019 U.S. Dist. LEXIS 55183, *14 (Bankr.

23   S.D.N.Y. 2019).  Courts consider factors such as whether or

24   not the owner of the corporation has abused the privilege of

25   doing business in corporate form, whether there has been a

1    failure to adhere to corporate formalities, inadequate

2    capitalization, comingling of assets, or use of corporate

3    funds for personal use.  See East Hampton Union Free School

4    District v. Sandpebble Builders, 66 A.D.3d 122, 127.

5            The Court is not prepared to conclude that the

6    trustee has met his burden of proof as a matter of law on

7    alter ego liability of Mr. Walia in connection with the

8    $1.52 million transaction with Niknim.

9            That said, the Court has found for Rule 56(g)

10   purposes certain alter ego facts to be undisputed and

11   therefore found for purposes of trial.  Those are Niknim was

12   incorporated in 2015 and at all times had a single employee,

13   officer, and shareholder, Mr. Walia.  Niknim was formed to

14   manage Walia's consulting work, his personal investments,

15   and his family trust.  Niknim was paid by the Debtor as a

16   personal accommodation to Mr. Walia for tax purposes.

17           Walia was receiving money from Orion in 2017,

18   which he would deposit at his convenience either into his

19   personal checking account or an account of Niknim.

20           In 2016 and 2017, Walia would deposit monies from

21   his other investments, his family trust and his wife's

22   account into Niknim bank account.  Walia used the Niknim

23   account to pay personal expenses of his such as pool

24   maintenance, purchasing suits, salon treatments, voice

25   lessons, homeowner dues, and car payments.  Niknim followed

1    and observed no corporate formalities and maintained no

2    resolutions or shareholder minutes.  Niknim was initially

3    capitalized with one or two-thousand dollars.  So even

4    though the Court has not found as a matter of law alter ego,

5    those facts are established for purposes of trial.

6            I'll turn briefly now to the defendant's partial

7    summary judgement motion.  As stated near the outset, it's

8    essentially arguing that the trustee lacks creditor standing

9    under Section 544 to invoke the New York DCL provisions.

10           The rights available through 541(b) of the

11   Bankruptcy Code are limited to those of an existing

12   unsecured creditor and are derivative of the rights of an

13   actual unsecured creditor.  See Lippe v. Bairnco Corp., 225

14   B.R. 846, 852 (S.D.N.Y. 1998).

15           Creditors seeking recovery through Section 544(b)

16   can only attack transfers to the extent a creditor with an

17   allowable claim could do so under New York law.  Here, it's

18   clear and undisputed that the trustee has adequate standing

19   to utilize Section 544(b) and thereby use the rights of

20   creditors under New York DCL Law given the existence of

21   unsatisfied judgements at the time of each of the two

22   transfers.

23           In addition, the Trustee has noted in its summary

24   judgment pleadings the existence of over $100 million of

25   unsecured claimants that existed at the time of each of the

1    transfers.  So the request for summary judgment of the

2    defendants is also denied.

3         I'm going to direct, Mr. Nolan, that you and Mr.

4    Rosen and Mr. Scheiman work on a form of order.  It simply

5    needs to recite granting the relief and denying the relief

6    as set out on the record today.  It doesn't need to be a

7    significant restating of the why reasons.  The why reasons

8    are all part of the record of an order granting the summary

9    judgment relief that was granting and denying all remaining

10   relief.  As I stated, I am directing the parties to return

11   to mediation.  I know that you all went, didn't settle.

12   Hopefully with the resolution, at least partial resolution

13   of some of the issues today, the parties can engage in a

14   more meaningful effort to resolve the claims for which

15   liability has been determined and those that remain.

16        I'm also going to set a trial down to start July

17   24th.  I'll set my pretrial requirements.  While that's only

18   90 days from today but also several years from when the

19   litigation started, I think you all generally know what

20   you're going to bring to the trial.  So there's not a lot of

21   reinventing of wheels that need to be done.  I expect I'll

22   see the same declarations and probably not a whole lot more,

23   but I'll get to observe witness testimony at least through

24   cross-examination and make the necessary credibility

25   assessments that I need to make to close the gap on the

Page 44

1    issues that the Court was not prepared to make dispositive

2    findings as a matter of law today.

3         All right?  Anything else we need to address today

4    then on this adversary proceeding?

5         UNIDENTIFIED SPEAKER:  I guess just a couple

6    points of clarification, Your Honor.  Do we want to set a

7    date -- the Court is setting a date by mediation in like the

8    next 30 days?

9         THE COURT:  Thank you.  So the Court's

10   anticipation was within 30 days from now you would go back

11   to the mediator.  I don't remember who you all used before.

12   You can go back to him or her, you can start over with

13   someone different.  It seems to be more cost-effective and

14   time-efficient to go back to who you all used before, but I

15   will leave that to the parties.

16        I'm envisioning that as something that can be done

17   in the next 30 days so that you essentially have -- it's

18   three chunks of 30 days.  You've got 30 days to try to

19   settle it, 30 days to prepare for whatever else you need to

20   submit for pretrial purposes, and then 30 days to prepare

21   for the trial.  Those are somewhat permeable deadlines, but

22   I think that give you all time to focus on settlement before

23   refocusing on the trial.

24        UNIDENTIFIED SPEAKER:  Okay.  And as far as trial,

25   Your Honor, are you in Brooklyn now?

1          THE COURT:  I am in Central Islip.

2          UNIDENTIFIED SPEAKER:  Okay.  So we have the

3     opportunity to be present, or are we doing it by Zoom or...

4          THE COURT:  Trial will be in-person under judicial

5     conference protocol since we have exited the Zoom -- exited

6     the COVID period.  Because I anticipate I'm going to be

7     taking live testimony, that would be taken live and in-

8     person.  So the witnesses will need to be here in my

9     courtroom.  I will use my ongoing protocol that I hold my

10    trials in Central Islip and I hold my settlement conference

11    in Brooklyn if that's of any help to you, although July on

12    Long Island tends to be a very beautiful time of year I am

13    told.

14         UNIDENTIFIED SPEAKER:  You're told.  All right.

15         THE COURT:  Some of you may be on your way to or

16    from other summer residences that you maintain, borrow, or

17    lease out further east from the courthouse.  So it's a

18    beautiful time of year on Long Island and not so bad in

19    Central Islip.

20         UNIDENTIFIED SPEAKER:  It's a beautiful time to be

21    there, Judge.

22         THE COURT:  And I'll set aside adequate time to

23    get the case tried.  We're holding July 24th and July 25th,

24    but I gave the 24th, part of that morning to the other

25    adversary proceeding.

1          UNIDENTIFIED SPEAKER:  Okay.  Judge, I just want

2  to say thank you to you and your chambers for the many, many

3  accommodations in terms of the adjournments of the hearings

4  on the motion.  So thank you.

5          UNIDENTIFIED SPEAKER:  I would like to add my

6  thanks also, Your Honor.  I appreciate it very much.  And I

7  have nothing further to add.

8          THE COURT:  Well, I know you all prefer hearing

9  yourselves argue than me rule, but I know we had teed this

10  up for summary judgment arguments.  But again, given the

11  delays that have just happened in the adversary proceeding

12  and my desire for it no longer to sit without resolution,

13  you'll still have time to practice your well-honed skills in

14  my courtroom examining witnesses as opposed to arguing to

15  that little dot on your computers that constitutes a camera.

16  So you'll have plenty of time to mix it up live out here

17  unless you take it out of my hands and resolve it.  All

18  right?

19          UNIDENTIFIED SPEAKER:  Well, we'll certainly try

20  to, Your Honor.

21          THE COURT:  All right.  So then we'll be adjourned

22  -- yes.

23          UNIDENTIFIED SPEAKER:  Thank you very much.

24          THE COURT:  Thank you all.  (indiscernible) we'll

25  go off the record.  Thank you.

Page 47

1          (Whereupon these proceedings were concluded)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1                          I N D E X

2

3                          RULINGS

4                                          Page        Line

5    Trustee's Motion for Summary Judgment

6    on First Transfer Denied                 8           2

7

8    Trustee's Motion for Summary Judgment

9    on Second Transfer Granted               8           5

10

11   Defendant's Motion for Summary

12   Judgement Denied                        25          12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3        I, Rita Weltsch, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Rita Weltsch

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 25, 2024

| **&** | | | |
| --- | --- | --- | --- |
| **&**  4:3,10 7:3 10:15 | **12.8**  27:19 28:9 | **2.5**  24:16 25:4  25:19 30:9,19  30:24 31:14,23  31:25 32:1,8  39:12 | **2018**  13:16,19  30:5 |

**&**
&  4:3,10 7:3
  10:15

**0**
08052  7:20

**1**
1  28:22 34:21
1,520,000
  24:25 25:21
  33:18 34:1
1.25  40:11
1.3  33:8
1.35  28:21
1.4  33:8
1.52  38:24
  39:18,23 41:8
1.6  30:15 31:1
  31:9
1.824  29:2
1.9  28:24
10  2:6
10.8  27:20 28:7
  29:6 38:13
100  10:9 42:24
1000  10:23
10017  4:6,13
10022  4:20
10062  13:20
10063  13:22
113  22:8
11501  49:23
11722  2:4
11754  5:4
11:29  2:7
12  48:12

12.8  27:19 28:9
12151  49:7
122  41:4
127  41:4
134  28:14
135  22:9
14  40:22
141-142  22:9
15  24:17 30:8
15173  35:11
152  40:7
153  40:7
157  8:3 23:22
1574  19:14
1582-1583
  19:14
16  13:16 35:12
160-09  36:14
1600  4:19
17  35:6
18  9:7
18-71748  1:3
192,000  28:17
194,185  10:20
1983  19:14
1998  42:14

**2**
2  8:3 23:22
  27:23 28:4,17
  29:8 32:6
  38:14 48:6
2,500,000  31:3
2,546,000
  28:23
2.2  29:7
2.35  28:21

2.5  24:16 25:4
  25:19 30:9,19
  30:24 31:14,23
  31:25 32:1,8
  39:12
20  21:4
20-08049  1:9
  6:22 23:18
20-08052  6:23
  7:23
200,000  11:23
  12:18 20:2
  35:14
2002  35:11,12
2003  40:7
2008  19:9 38:4
  40:6
2013  10:1
  18:21,22
2015  9:21
  10:18 26:16
  27:10 29:9
  30:1 31:17,21
  35:6,7,15 39:3
  41:12
2016  9:21
  10:25 11:6
  24:17 25:20
  30:8 31:22
  41:20
2017  11:2,22
  12:3,17 13:1,9
  13:10 14:2
  22:1 25:1,22
  32:13,21 33:18
  33:25 41:17,20

2018  13:16,19
  30:5
2019  40:22,23
2020  13:25
2022  14:10
2023  15:23,23
2024  2:6 26:1
  49:25
204  29:6
2056  24:8
2164268  15:23
22  15:23
225  42:13
24th  11:22
  12:3 23:3 26:4
  43:17 45:23,24
25  5:3 12:9
  14:2 22:1
  36:14 48:12
  49:25
250,000  8:19
  8:22,25 12:5,7
  12:10,18 13:1
  13:4,11 14:1
  17:17 19:21
25th  45:23
26  26:20
27  27:4
272  22:2,5
273  21:12,23
  34:21,24 35:9
  35:19,21
274  35:22
275  35:22
276  18:16,24
  37:16

**[28 - actual]**

**28**  8:3 23:22
**28th**  13:1
**290**  2:3
**2d**  19:14 40:7

**3**

**3**  29:15
**3.5**  32:4
**30**  44:8,10,17
  44:18,18,19,20
**300**  49:22
**300,000**  10:12
**301**  36:14
**303**  36:14
**30th**  11:2
**311**  40:6
**330**  49:21
**34th**  4:5
**35**  27:24
**362**  17:15
**37**  28:1
**394**  19:8 38:3
**398**  17:14

**4**

**4**  10:3,8,10
  11:12 15:23
**421**  17:14
**425**  36:2
**445**  5:3
**46**  31:13
**49**  13:22 31:13
**492375**  18:21
**4971**  18:2

**5**

**5**  18:21 48:9
**51447**  35:6

**541**  42:10
**544**  25:14 42:9
  42:15,19
**548**  18:13,23
  34:19,21 37:11
**550**  22:16,16
  22:18
**55183**  40:22
**56**  8:12 22:23
  34:15 41:9
**570**  4:19
**598**  40:6

**6**

**6**  17:4
**6.8**  29:14,23
**60**  33:15
**613**  40:6
**62**  33:16
**64**  30:16
**646**  19:8 38:3
**658**  19:8
**658-653**  38:3
**66**  33:16 41:4
**68**  33:16
**69**  33:16
**691-692**  17:15

**7**

**703**  16:25
**7052**  8:1 24:6
**7056**  8:14 24:9
**722**  19:13
**74**  40:7
**747**  4:12
**77,000**  11:4
**780**  4:5

**784**  17:14

**8**

**8**  48:6,9
**8-20-08052**
  1:18
**803**  17:4
**846**  42:14
**852**  42:14
**88**  36:2
**8:39**  12:6

**9**

**9.8**  29:11,14
**90**  43:18
**901**  15:8,10
  16:1
**95**  15:24
**974**  17:15
**98**  15:24
**9th**  10:25

**a**

**a.d.2d**  36:2
**a.d.3d**  22:9
  36:14 41:4
**ability**  36:10
**ablyazov**  40:22
**abruzzi**  1:24
  5:2 6:24 7:13
  7:16,18,20,23
  9:15,19 12:6
  12:11 13:2,3
  13:19 14:2
**absence**  36:12
**abstract**  28:16
**abused**  40:24
**accept**  16:2

**accommodat...**
  41:16
**accommodat...**
  46:3
**accordance**
  24:7 30:15
**account**  10:14
  12:5,8,11,12
  13:2,3,11
  16:12,14,17
  17:23,25 18:6
  21:4 24:18,19
  24:19 25:2,2,3
  26:15 29:12
  30:9 31:12
  32:8,9,9 33:19
  33:20 38:20
  41:19,19,22,22
  41:23
**accurate**  49:4
**achieve**  40:18
**acquila**  16:17
**acquire**  10:9
  11:24 26:17
**acquired**  27:11
  28:19 29:1,1
**acquirer**  30:19
**acquisition**
  34:6
**acquisitions**
  9:11 26:8
**action**  15:20
  21:11,14 23:20
  35:1,2,4
**activity**  9:19
**actual**  18:14,18
  19:4,7,11

21:19 28:15,25
30:18 34:20,23
35:4,24 36:18
37:13,17,22
38:2,5,7 42:13
**add** 27:23 46:5
46:7
**added** 29:8
**addition** 21:1
42:23
**additionally**
10:11
**address** 8:14
24:15 44:3
**addresses** 15:9
**adequate** 16:2
16:9 19:20
20:11 42:18
45:22
**adequately**
18:19 40:10,10
**adhere** 41:1
**adjourned**
46:21
**adjournments**
46:3
**administered**
13:18
**administration**
17:12
**admissibility**
17:8
**admit** 13:12
**adv** 1:9,18
**advantage**
26:25

**adversary** 7:20
8:18 9:6,8
13:24 15:17
22:23 23:18,20
23:25 34:17
36:7 44:4
45:25 46:11
**adverse** 11:3
**advised** 12:22
**advisor's** 28:16
**affidavit** 15:6
15:12,25 16:1
16:9 30:16
**affidavits** 14:8
15:2,3 23:11
**affirmed** 15:24
16:19
**agent** 31:4
**aggregated**
9:10 26:7
**agree** 19:15
**agreed** 27:20
28:5 29:5
32:14 38:13
**agreement**
27:12 30:13,25
31:5,8,12
32:14,21 36:23
38:18,19
**ahead** 15:1
**ahms** 26:24
28:20 29:2
**al** 1:6,12,21
6:23,24
**alan** 2:22 6:16
**alexis** 6:13,15

**alleged** 30:14
35:21
**allegedly** 10:5
**allow** 32:5
**allowable**
42:17
**allows** 18:13
34:21 37:12
**allrad** 32:16,18
33:21,23 34:3
34:7 38:23
**almaty** 40:21
**alpha** 15:22
16:18
**alter** 40:14,15
40:16 41:7,10
42:4
**amount** 10:20
20:18 31:3
**amounts** 17:24
**analogous**
37:20
**analysis** 18:20
36:7 39:8
40:16
**analyzed** 37:21
**anecdotally**
15:19
**answer** 14:5
28:8,10
**antecedent**
12:16 13:8
31:16,17,23
34:1,5 37:7,8
**anthony** 5:6
7:15

**anticipate** 45:6
**anticipates**
15:3
**anticipation**
44:10
**apa** 27:13,15
27:16,17,18
28:4 30:16,19
31:1,6,7 38:17
**apologies**
14:13 24:3
**app'x** 40:7
**apparent** 9:7
**apparently**
29:6
**appear** 15:3
20:4,15
**appearance**
6:19
**appearances**
6:25
**appearing** 6:20
7:8,19
**appointed**
17:11
**appreciate**
46:6
**approached**
10:3
**approved** 11:9
33:15
**approximately**
10:11
**april** 2:6 24:17
25:19 30:7
49:25

aquila  15:22
aren't  16:25
arguably  24:21
argue  46:9
arguing  42:8
  46:14
arguments
  46:10
arises  19:5
arising  15:17
  17:12
arista  17:13
arrangement
  30:17,22
arvind  1:15
  4:11 6:23
  26:22
aside  21:16
  22:21 45:22
asked  10:3
  11:23 12:18
  28:5
asserted  11:10
  19:24 40:13
asserting  13:22
assertion  31:14
asserts  19:22
  32:1
assessments
  43:25
asset  24:22
  27:12 28:20
  29:2,3,4 30:13
  38:17
assets  27:11,20
  28:19,21,25
  29:5 31:24

33:11,22 34:5
  37:4 40:4 41:2
assigned  10:22
assistant  12:22
associated
  10:12
associates  4:10
  7:3
association
  19:16
ast  1:3,9,18
attached  17:5
  31:6
attack  35:24
  42:16
attention  28:3
attorney  5:2
  18:3
attorneys  4:4
  4:11,18
aug  35:12
authenticate
  16:10,16
authentication
  15:9,10,21
  16:8
authority
  11:20
available  31:5
  42:10
ave  4:19
avenue  4:5,12
  36:14
avoid  34:22
  37:12
avoided  18:23
  22:17,19 36:17

39:12
awarded  14:20
aware  38:15

                    b

b  2:21 8:3
  20:23 21:25
  23:22 34:21
  42:10,15,19
b.r.  19:8 38:3
  42:14
back  12:25
  16:17 20:17
  23:17 26:12
  39:3 44:10,12
  44:14
background
  29:19
backup  6:16
bad  45:18
badges  19:12
  19:15 38:8
bairnco  42:13
balance  30:14
  33:10
bank  13:10
  16:7,12,14,17
  24:18,19 25:3
  26:15 29:9
  33:19 41:22
bankr  18:22
  19:9 38:3
  40:22
bankruptcy
  1:1 2:2,23
  10:22,24 13:16
  17:19,20,20,21
  18:12,24 22:16

24:6,9 25:15
  34:20,21 35:16
  37:11 39:13
  42:11
based  16:8
  20:7,22 32:2
basich  12:22
  12:24
basis  16:2,9
beautiful  45:12
  45:18,20
behalf  7:8,20
  7:21 9:20
  11:21 27:15,17
  35:17
believed  10:11
believes  36:9
belonged  8:21
  14:3 37:2
beneficial  18:4
beneficiaries
  40:5
benefit  13:6,12
  20:15
benefitted
  40:10
better  6:7
beyond  36:10
billing  26:17
  27:1
board  11:8
  33:14
books  12:15
  13:8 31:15,18
  31:19,22 34:1
  34:4

| | | | |
|---|---|---|---|
| **borrow** 45:16 | **capacities** 30:5 | **cfo** 26:23 | **claimants** |
| **briefly** 42:6 | **capacity** 1:11 | **chambers** 46:2 | 42:25 |
| **bring** 43:20 | 1:20 18:3 | **change** 28:9,13 | **claimed** 11:19 |
| **broadhollow** | **capital** 33:9 | **charged** 20:5 | 15:16 |
| 5:3 | 36:9 | **chase** 24:19,19 | **claims** 9:4 25:9 |
| **brog** 10:15,16 | **capitalization** | 25:3 33:20 | 25:13 26:4 |
| 11:20 12:4,9 | 41:2 | **checking** 13:3 | 43:14 |
| 17:23 18:6 | **capitalized** | 26:14 41:19 | **clarification** |
| 25:2 29:13 | 42:3 | **chevron** 17:14 | 44:6 |
| 33:19 | **car** 41:25 | **chi** 10:5,5,8,11 | **clear** 6:20 18:2 |
| **broker** 28:17 | **care** 12:7 27:7 | **chief** 6:16 | 19:7 20:3 21:1 |
| **brooklyn** | 38:16 | 26:16 30:1,3 | 21:13 38:5,25 |
| 44:25 45:11 | **case** 1:3,9,18 | **chronology** | 39:22 40:16 |
| **builders** 41:4 | 6:18,22,23 | 19:17 21:7 | 42:18 |
| **burden** 15:10 | 8:12 10:22 | **cht** 11:1,4,7,15 | **clearly** 6:18 |
| 19:6 41:6 | 14:5 15:18 | 12:12 13:21,23 | 16:15 31:9 |
| **business** 9:15 | 17:12,21 24:12 | 24:18 26:14,14 | 39:5 |
| 10:2 11:18 | 26:3 45:23 | 26:17 32:9 | **clerk** 6:13,15 |
| 15:13 17:4,5,6 | **caselaw** 15:9 | 39:5 | **client** 18:3,4 |
| 26:24 28:16,20 | **cases** 13:17 | **chunks** 44:18 | **close** 9:23 |
| 40:25 | 17:10,10 | **cir** 19:14 40:7 | 18:21 19:16 |
| **buyer** 30:23 | **cause** 21:11 | **circuit** 15:22 | 20:12,12 28:11 |
| 32:23 | **causes** 23:20 | 15:24 19:11 | 29:13 32:6 |
| **buyers** 31:3 | **center** 30:12 | **circuits** 16:19 | 38:25 43:25 |
| | **central** 2:4 | **circumstantial** | **closed** 13:10 |
| **c** | 14:16 45:1,10 | 16:15 19:12 | 29:25 33:17 |
| **c** 4:1 6:1 49:1,1 | 45:19 | **cit** 36:13 | **closeout** 37:20 |
| **cadle** 35:11 | **ceo** 30:6 | **city** 18:21 | **closing** 12:13 |
| 40:7 | **certain** 3:1 | 40:21 | 16:7,16 29:9 |
| **calendar** 12:17 | 11:18,25 19:12 | **civil** 8:13 24:8 | 31:4 |
| **call** 27:2,13 | 20:1 23:19 | **claim** 10:22,23 | **code** 18:12,24 |
| **called** 6:18 | 31:9,11 33:10 | 13:20,21 21:20 | 22:16 25:15 |
| 11:2 13:4 | 34:13 41:10 | 22:22 24:25 | 34:20,21 37:11 |
| 29:16 32:16 | **certainly** 21:6 | 25:21 35:17 | 39:13 42:11 |
| 33:10,13 | 46:19 | 37:10 42:17 | **collateral** 20:5 |
| **calls** 31:1 | **certified** 49:3 | **claimant** 5:2 | **collectively** |
| **camera** 46:15 | | | 9:18 |

| | | | |
|---|---|---|---|
| **comingling** 41:2 | 33:4,23 34:3 36:21 37:3 41:7 | **contained** 16:6 16:22 | **counter** 5:2 **counterclaim** 14:5 |
| **commenced** 10:1 13:24 | **consider** 40:23 **consideration** | **continued** 30:4 **control** 18:5 40:1 | **country** 49:21 **couple** 39:19 |
| **commerce** 35:6 **companies** | 19:16,21,23 20:9,10 21:14 | **controlled** 26:22 29:16 | 44:5 **court** 1:1 2:2 |
| 9:10 26:7 **company** 9:16 | 21:18,21 22:2 22:4,4,5 34:25 | 32:25 37:6 **controlling** | 6:3,5,9,12,14 6:25 7:12,17 |
| 26:18,21 30:2 31:15 32:15,17 | 35:20,23 36:4 36:11 37:9 | 9:24 **convenience** | 7:22 8:4,6,10 8:14,16,24 9:1 |
| 35:11 **completed** 33:5 | 38:12 39:17 **considered** | 41:18 **conveyance** | 10:19 11:25 12:14 13:16 |
| 33:6,7 **computers** | 9:21 21:8 36:1 38:9 | 18:17 21:13,17 34:25 35:23 | 14:10,16,22,24 15:2,3,20 16:2 |
| 46:15 **concede** 32:11 | **consistent** 23:5 **consolidated** | 37:17 40:5 **conveyed** 37:4 | 17:17 18:8,20 19:19 20:7,22 |
| **concern** 28:13 **concerned** | 9:9 26:7 **constellation** | **convincing** 19:8 38:5 | 21:10,20 22:3 22:6,12,14 |
| 38:23 **concerning** | 10:4,17 12:12 26:13 29:11 | **core** 8:2 23:21 **corp** 17:14 | 23:1,4,16,17 23:21,24 24:10 |
| 12:1 21:6 31:7 **concerns** 30:14 | 30:4,7,8 **constitute** | 18:21 30:3 42:13 | 25:17 29:18 34:12 35:18 |
| **conclude** 41:5 **concluded** 47:1 | 15:15 19:12 **constitutes** | **corporate** 27:8 40:17,25 41:1 | 36:15 37:19 38:9,12 39:8 |
| **conclusions** 8:2 24:7 29:20 | 46:15 **constructive** | 41:2 42:1 **corporation** | 39:10 40:8 41:5,9 42:4 |
| **condition** 19:17 20:20,25 | 25:11 36:1,18 **constructively** | 26:19 27:3 37:3 40:18,19 | 44:1,7,9 45:1,4 45:15,22 46:8 |
| 39:7 **conditions** | 21:12,16 36:3 36:12 | 40:24 **correct** 28:8 | 46:21,24 **court's** 24:2,6 |
| 31:7,9 36:5 **conduct** 18:20 | **construed** 17:7 **consulting** | **correspondin...** 33:20 | 29:20 34:10 44:9 |
| **conference** 6:6 7:23 45:5,10 | 27:7 41:14 **contagious** | **cost** 44:13 **counsel** 7:3,5 | **courthouse** 45:17 |
| **confirmed** 12:9 **connection** | 6:14 | 7:12 15:19 | **courtroom** 6:16 45:9 |
| 21:19 24:21,22 | | | |

| | | | |
|---|---|---|---|
| 46:14 | dated 32:21 | debtors 8:21 | 15:7 16:6,20 |
| courts 19:11 | day 12:3,6,9 | 9:5,22,25 10:2 | 18:9 20:1 22:7 |
| 38:8 40:23 | 13:3,21 32:7 | 10:24 11:3,11 | 24:15 25:11 |
| court's 7:25 | days 43:18 | 13:13,14 14:3 | 34:2 39:20 |
| 8:1 14:11,13 | 44:8,10,17,18 | 17:23 18:1,5 | 40:13 43:2 |
| 16:18 23:2 | 44:18,19,20 | 20:23 24:18 | defendant's |
| cover 10:12 | dcl 18:16,24 | 26:6,10 31:24 | 8:7 14:6 17:2 |
| covid 45:6 | 21:12 22:2 | 32:24 33:24,25 | 48:11 |
| craig 21:25 | 25:16 34:21,24 | 34:4,6 37:9 | deficiencies |
| created 11:15 | 35:9,19,21 | 38:24 39:4,5 | 33:17 |
| 13:5,6 | 37:16 39:14 | debtor's 12:5 | defined 24:23 |
| creator 16:14 | 42:9,20 | 12:11,15 13:8 | defraud 18:15 |
| credibility | deadlines | 13:17 | 18:18 19:4 |
| 43:24 | 44:21 | debts 33:8 | 37:14,18 |
| creditor 19:4 | deal 12:20 | december | defrauded |
| 35:18,24 37:14 | 27:24,25 28:11 | 10:18 31:17 | 38:2 |
| 38:3 40:2 42:8 | 28:15 29:25 | 35:14 | delay 18:14,18 |
| 42:12,13,16 | debt 12:16 | declaration | 19:4 37:14,18 |
| creditors 18:19 | 13:8 31:16,17 | 15:7 16:6,11 | 38:2 |
| 25:16 36:1 | 31:18,20,23 | 16:23 | delays 46:11 |
| 37:18 42:15,20 | 34:1,2,5 36:10 | declarations | delivered 31:3 |
| criterions 11:2 | 37:7,8 | 15:12,14 16:21 | denied 22:11 |
| cross 8:7 9:2 | debtor 1:7 8:22 | 16:24 23:11 | 25:23,24 43:2 |
| 14:7,21 43:24 | 10:5,6,16 11:1 | 43:22 | 48:6,12 |
| cto 30:6 | 13:5 16:5 | defendant | deny 9:2 |
| custody 18:5 | 18:15,24 19:7 | 13:19,21 15:11 | denying 14:24 |
| | 20:16,20 21:14 | 19:23 21:14 | 23:7 25:17 |
| **d** | 24:18 26:13 | 24:20 26:22 | 43:5,9 |
| | 27:10,18 28:20 | 35:1,4 37:1 | deposit 41:18 |
| d 6:1 48:1 | 29:11,16 30:8 | 39:15,25 | 41:20 |
| damages 35:2 | 31:16 32:7 | defendant's | deposited |
| 40:3 | 33:22 35:5,10 | 25:23 42:6 | 10:14 |
| date 11:5 19:2 | 37:2,5,14,23 | defendants | deposition |
| 20:24,24,24 | 39:18 41:15 | 1:16,25 7:3,6 | 28:2,14 |
| 26:1 32:3,12 | debtor's 25:1 | 7:16 8:15,20 | deputy 6:16 |
| 34:8,23 37:13 | 30:2 31:19,22 | 9:19 10:8 | derivative |
| 37:25 44:7,7 | 33:14,18 | 12:16 13:11,13 | 42:12 |
| 49:25 | | | |

**describe** 24:23
**described**
  13:17
**designated**
  18:4 32:15
**desire** 46:12
**despite** 29:4
  31:14 33:17
  36:22
**detail** 24:23
**determination**
  8:16
**determinations**
  34:10
**determine**
  21:10 23:21
**determined**
  8:10 9:1 15:20
  17:18 19:19
  34:12 36:16
  39:10 40:8
  43:15
**didn't** 6:10
  20:18
**different** 44:13
**difficult** 19:10
**diligence** 33:2
  33:3,4 38:21
**direct** 18:6
  19:10 25:25
  32:16 36:25
  43:3
**directed** 12:4
  12:24,25
**directing** 26:5
  43:10

**direction** 16:11
  24:20 32:10
**directors** 9:17
  11:8 33:14
**disagreement**
  22:15
**discharge** 33:8
**disclosure**
  38:20
**discussed**
  21:19
**dismissal**
  25:13
**disposition**
  18:7
**dispositive**
  44:1
**dispute** 8:11,17
  14:19 18:8
  19:1,5 20:8
  30:12 34:14
**disputed** 34:13
**disputes** 19:20
**disregarded**
  40:20,21
**dist** 35:11
  40:22
**district** 1:2
  10:18,19,21
  15:20 16:18
  21:2 23:23
  35:6,14 41:4
**docket** 30:16
**docketed** 21:15
  35:2,8
**documents**
  11:19 15:22

  16:3,10 38:21
**doesn't** 20:4,14
**doing** 28:4
  40:25 45:3
**dollars** 11:10
  42:3
**dominated**
  40:18
**donziger** 17:14
**don't** 23:8
**dot** 46:15
**due** 8:4 17:8
  33:2,4 36:21
  38:21
**dues** 41:25

**e**

**e** 2:21,21 4:1,1
  6:1,1 48:1 49:1
**e.d.n.y.** 15:23
  18:22 19:9
  38:4
**earlier** 30:10
**earnout** 33:8
**east** 41:3 45:17
**eastern** 1:2
  23:23
**ebitda** 29:7
**ecro** 2:25
**edith** 15:6
**effect** 23:23
**effective** 44:13
**efficient** 44:14
**effort** 43:14
**ego** 40:15,16
  41:7,10 42:4
**egos** 40:14

**ehrenberg** 1:11
  1:20 4:4 6:22
  6:24 7:8,10,11
  7:18,23 15:23
**eight** 34:7
**either** 14:20
  16:22 18:23
  25:10 34:2
  36:17 39:13
  40:4 41:18
**elaborate** 26:3
**elements** 21:22
**elena** 13:7
**email** 32:2,7
**emailed** 12:6
**emails** 15:12
**employee** 27:5
  41:12
**employees** 9:17
**ended** 13:15
**engage** 36:8
  43:13
**engaged** 36:8
**entered** 10:19
  11:3 35:13
**enterprise** 9:10
  26:7
**entire** 20:7
**entities** 9:5,9
  11:1,14,16
  13:15,16
**entity** 8:23
  9:15 10:5,6,16
  13:4,5,6 18:15
  20:19 26:12
  27:10 28:20
  29:16 32:15,19

32:23,25 33:22
37:5,5
**envisioning**
44:16
**equity** 11:15
**equivalent**
20:18
**escrow** 30:17
31:4,5,8,10,12
31:12 36:22
38:19,20
**escrowed**
30:15
**essentially**
25:12 38:16
42:8 44:17
**establish** 21:17
38:4
**established**
8:12 31:10,13
38:18 42:5
**establishing**
19:6
**estate** 17:17,19
17:20,20 18:10
39:18
**et** 1:6,12,21
6:23,24
**eugene** 4:17,22
7:4,5
**event** 12:3
**events** 19:17
21:7 31:11
**evidence** 12:15
15:8 16:15
17:10 19:8,10
19:13 20:22

22:12 28:15
29:10 31:23
34:1,4 38:6
**evidentiary** 8:8
8:14 14:8 15:1
15:18,25 23:9
23:10
**examination**
43:24
**examining**
46:14
**exception** 17:4
**exceptions**
17:7
**excess** 35:14
**exchange** 20:2
38:24
**excuse** 6:13
37:11,23 40:20
**executed** 27:12
27:15,17 31:12
**executive**
26:16 30:1
**exhibit** 31:6
**exist** 11:17
21:6 34:15
36:16 39:11
40:9
**existed** 17:21
42:25
**existence** 42:20
42:24
**existing** 42:11
**exists** 14:17
20:25 40:17
**exited** 45:5,5

**expect** 43:21
**expenses** 10:12
41:23
**expert** 16:21
16:25 20:22
21:24
**explain** 12:17
**extensive** 25:6
25:6 29:18
**extent** 8:15
29:19 30:20
42:16

**f**

**f** 2:21 5:6 40:7
49:1
**f.2d** 19:13
**f.4th** 15:24
**f.supp.2d**
17:14,15
**f.supp.3d** 40:6
**face** 9:8
**fact** 12:10
14:18,19 16:24
19:20 20:8
21:9,20 22:3,6
23:2 27:24
28:1,2 33:15
34:3 36:16,21
36:25 39:11,16
40:9
**factors** 40:23
**facts** 8:2,10,17
22:24 24:7,9
25:6,8 31:13
34:13,14,15
41:10 42:5

**factual** 19:5
29:19
**fails** 35:5
**failure** 41:1
**fair** 21:13,18
21:21 22:2,5
34:25 35:20,23
36:4,11 39:17
**fairly** 15:10
**faith** 22:7
35:22 36:12
**fall** 30:5
**family** 27:8
38:25 41:15,21
**far** 11:17 13:17
17:2 20:20
30:25 37:10
38:11,23,25
44:24
**favor** 17:7
**fbi** 21:4
**feb** 15:23
**federal** 2:3
8:13 15:8 24:8
33:12 35:18
**fees** 27:24
28:11,16,16
**fell** 12:21
**fester** 24:2
**fictitious** 11:14
**fiduciary** 18:1
18:3
**file** 32:6
**filed** 10:22,24
10:25 13:20,21
14:4 35:17

| | | g | 35:22 36:12 |
|---|---|---|---|
| **filing** 13:15 | **forwarded** 13:2 | **g** 6:1 8:12 | **granted** 40:12 |
| **final** 35:13 | **found** 21:20 | 22:23 24:8 | 48:9 |
| **financial** 19:17 | 22:3,6 37:23 | 34:15 41:9 | **granting** 25:20 |
| 20:20 39:7 | 41:9,11 42:4 | **gap** 43:25 | 43:5,8,9 |
| **find** 19:10 | **frank** 15:7 | **gazillion** 11:10 | **greene** 10:15 |
| **findings** 8:1 | **frankel** 22:8 | **general** 17:8 | 12:4,7 |
| 24:6 44:2 | **fraud** 19:12,15 | **generally** | **group** 17:14 |
| **finds** 18:8 | 36:1 38:7,9 | 19:14 43:19 | 36:14 |
| **firm** 7:5 25:2 | 40:18 | **genovese** 10:15 | **guess** 44:5 |
| **first** 6:25 18:12 | **fraudulent** | **genuine** 8:11 | **guys** 6:10 |

**first** 6:25 18:12
24:16 25:5,9
25:18 29:17
30:10 34:19
36:17,20 38:11
39:6,11 48:6
**five** 29:6,7
**floor** 4:5
**florida** 9:15
11:25 12:21
**focus** 44:22
**follow** 9:2
25:17
**followed** 27:8
41:25
**following** 8:10
36:4
**foregoing** 49:3
**forged** 11:19
**form** 7:25 23:7
24:5 31:6
40:17,25 43:4
**formalities**
27:8 41:1 42:1
**formed** 27:6
41:13
**forward** 18:12

**fraudulent**
18:19 19:11,13
21:12,16,19
25:10,11 29:21
32:2 34:20,24
35:3 36:3,12
36:18,19 37:10
37:22 38:7
39:13,23 40:3
**free** 41:3
**friend** 9:23
**fund** 17:25
**funded** 31:11
**funding** 38:19
**funds** 8:20,21
12:8,11,25
14:2 17:18,24
18:1,5,9 20:16
20:17 30:15,20
31:5 33:18
37:2,3 41:3
**further** 12:19
45:17 46:7
**future** 18:18
37:18

**genuine** 8:11
8:17 14:17,18
18:8 19:1,19
20:8 23:1
34:14 36:16,24
39:10,16 40:8
**girlfriend** 13:7
**giuliano** 5:1,6
7:14,15 23:6
23:15
**give** 6:18 15:1
32:4 44:22
**given** 39:25
42:20 46:10
**gluck** 10:15
**go** 11:9,11 15:1
26:2 44:10,12
44:14 46:25
**going** 7:22 15:1
22:22 23:6,17
25:25 26:1
34:19 39:3
43:3,16,20
45:6
**good** 6:2,3,13
6:15 7:2,4,7,10
7:14,15 22:7

**h**

**h** 8:3 40:5
**half** 6:10 28:24
**hampton** 41:3
**hands** 46:17
**happened**
46:11
**health** 10:17
12:12 29:17
30:2,7,8
**healthcare**
9:11 10:4 26:9
26:13,21 29:12
30:4 32:22
**healthcorp** 1:6
1:12,21 10:6
**hear** 6:7,10,18
23:21
**hearing** 3:1,3
46:8
**hearings** 6:17
46:3
**hearsay** 17:2,3
17:6
**held** 10:5,14
12:12 13:22

| | | | |
|---|---|---|---|
| 17:25 18:2,3 40:15 | **immediately** 31:4 | **inflation** 38:15 | **investments** 1:24 5:2 6:24 |
| **help** 45:11 | **impact** 22:15 | **initially** 42:2 | 7:24 9:16 27:7 |
| **hennigan** 6:15 | **inadequacy** 38:11 | **inquiry** 19:18 | 41:14,21 |
| **high** 15:11 | **inadequate** 41:1 | **insider** 39:5 | **investor** 11:10 |
| **highest** 39:4 | **inadmissible** 16:21 | **insiders** 39:2 | **invoke** 25:15 42:9 |
| **highlight** 38:9 | **include** 8:1 13:16 19:15 | **insolvency** 20:25 21:24 | **involves** 24:12 32:13 |
| **hinder** 18:14 18:18 19:4 37:14,18 38:2 | 26:12 36:20 | **insolvent** 20:23 22:1 35:10 36:5,6 | **involving** 11:7 |
| **hold** 14:12 17:23 45:9,10 | **included** 28:11 | **installed** 30:1 | **iolta** 10:14 12:5,11 17:23 |
| **holding** 32:19 45:23 | **includes** 24:6 **including** 14:5 15:12 16:10 | **instructions** 12:24 **intent** 18:14,18 | 17:25 21:4 25:2,2 29:12 33:19 |
| **homeowner** 41:25 | 31:10 | 19:4,7,11,13 35:24 36:18 | **ipo** 10:12 |
| **hon** 2:22 | **incorporated** 8:13 24:9 | 37:13,17 38:2 38:5 | **irrelevant** 17:1 |
| **honed** 46:13 | 41:12 | **intention** 23:2 | **island** 45:12,18 |
| **honor** 7:4,7,10 7:14,15,19 | **increase** 31:24 34:5 | **intentional** 25:10 37:10 | **islip** 2:4 45:1 45:10,19 |
| 23:14,15 44:6 44:25 46:6,20 | **incur** 36:10 **incurred** 18:17 | **intentionally** 29:21 39:12 | **issue** 8:24 9:3 13:25 14:17 |
| **hopefully** 43:12 | **indemnify** 30:20 | **interest** 10:6,9 13:22 18:25 | 19:19 21:9 23:4 32:13 |
| **hour** 6:9 | **independent** 14:22 17:11 | 20:5 32:20 34:6,22 37:23 | 35:10,16 |
| **howard** 1:11 1:20 4:4 6:22 | **indirectly** 32:16,18 | **interested** 26:18 | **issues** 8:9 14:17,18 23:1 |
| 6:23 7:8,11 | **indiscernible** 37:19 46:24 | **internally** 32:5 | 36:16,20,24 39:10,16 40:8 |
| **i** | **individual** 40:19 | **invest** 9:20 10:3 | 43:13 44:1 |
| **identical** 18:20 | **individually** 40:9 | **investing** 10:8 | **items** 15:15 |
| **identified** 15:13 22:24 | | **investment** 10:4,10,13 | **it's** 6:14 14:14 |
| **identifying** 13:20 | | 11:13 13:2,19 | **i'll** 9:18 10:4 17:13 |
| **identity** 40:20 40:21 | | | **i'm** 6:11 7:10 7:22 15:1 22:22 23:6 |

**i've**  6:9 20:14
  21:24 22:24
  23:9

**j**

**jacobs**  19:8
  38:3
**jacobson**  21:25
**jamaica**  36:14
**janaminder**
  27:14,15
**janitorial**
  18:21
**jeff**  7:7,19
**jeffrey**  4:8
**jericho**  27:4
**jisung**  40:5
**john**  7:24 9:13
**joint**  25:6
  26:19 27:24
  28:1 31:13
  33:15
**jointly**  13:17
  40:15
**jones**  4:3
**jp**  24:19 25:3
  30:9 32:9
  33:20
**judge**  2:23 6:2
  6:4,16 7:2
  45:21 46:1
**judgement**
  10:21 11:3,5
  14:15,25 21:2
  21:15,15 22:1
  22:11 24:13,14
  25:12,24 29:10
  35:2,5,15,18

42:7 48:12
**judgements**
  42:21
**judgment**  3:3
  8:7,7,23 9:3
  10:19,23 13:25
  14:6,7,19,21
  16:3 23:8
  25:18,20 34:11
  34:16 35:8,13
  35:18 40:12
  42:24 43:1,9
  46:10 48:5,8
**judicial**  45:4
**juiced**  27:21,22
  28:1,18 38:14
**july**  13:19 23:3
  26:4 43:16
  45:11,23,23
**jump**  26:2
**june**  10:1 13:1
  25:1,22 26:1
  30:1 32:21
  33:18

**k**

**kaiser**  19:13
**kept**  17:9
**kettlepond**
  27:4
**kim**  40:5
**knew**  11:17
  39:2
**know**  14:11
  43:11,19 46:8
  46:9
**knowledge**
  15:15,21

**known**  14:15
  17:3 34:12

**l**

**lack**  19:15
  38:11
**lacked**  35:20
**lacks**  25:14
  42:8
**laco**  36:2
**landmark**
  11:16,21
**large**  11:6
  17:24
**law**  4:17 5:1
  7:5 8:2 14:20
  17:18 18:1
  21:13,23 24:7
  25:2,15 35:19
  40:2,16 41:6
  42:4,17,20
  44:2
**lawsuit**  10:25
**lazzar**  15:12,14
  16:1,20
**lazzara**  15:7
**lease**  11:25
  12:2 45:17
**leave**  44:15
**legal**  18:11
  34:10 49:20
**legitimate**
  11:18 21:8
**leinwald**  10:15
**length**  14:13
  14:14 24:3
**lessons**  41:25

**let's**  6:25
**level**  39:4
**lexington**  4:19
  11:16
**lexis**  35:6,11
  40:22
**liabilities**  33:9
  33:11
**liability**  9:16
  22:20 39:21,21
  40:16 41:7
  43:15
**liable**  18:15
  37:15 40:15
**lime**  17:13
**limited**  9:16
  22:25 42:11
**line**  48:4
**lines**  26:24
**lippe**  42:13
**liquidated**  13:1
**liquidating**
  1:11,20 7:9,11
**lisa**  12:22
**listed**  9:6
**litigation**  17:12
  43:19
**little**  46:15
**live**  45:7,7
  46:16
**llc**  1:24 6:24
  10:17 11:2
  13:4 16:13
  32:16,19
**llp**  4:3
**loan**  11:23
  19:24,24 20:5

| | | | |
|---|---|---|---|
| 28:25 | **make** 6:5 11:9 | **medical** 26:17 | 35:1 39:25 |
| **long** 24:3 28:12 | 14:22 17:25 | 27:1 | 40:2 41:17 |
| 45:12,18 | 43:24,25 44:1 | **melville** 5:4 | **monies** 11:20 |
| **longer** 12:21 | **making** 35:1 | **member** 13:22 | 18:2 41:20 |
| 46:12 | **manage** 27:6 | **membership** | **month** 27:12 |
| **look** 19:11 31:8 | 41:14 | 32:20 | **months** 34:8 |
| 38:8 | **managed** 9:17 | **memorialized** | **morgan** 24:19 |
| **looking** 26:17 | **management** | 29:10 32:20 | 25:3 30:9 32:9 |
| **lot** 43:20,22 | 1:15 4:18 9:12 | **messages** 20:1 | 33:20 |
| **lung** 35:6 | 26:10 27:2 | **met** 11:8 36:5 | **morning** 6:2,3 |
| **lyman** 35:5 | 32:22 | 41:6 | 6:13,15 7:2,4,7 |
| **m** | **march** 10:25 | **million** 10:3,8 | 7:10,14,15 |
| **m** 1:11,20 6:22 | 13:16,24 27:10 | 10:10 11:13 | 45:24 |
| 6:23 | 29:9 | 21:4 24:17 | **motion** 8:6,7,8 |
| **m&t** 16:7,12 | **material** 14:18 | 25:4,19 27:19 | 8:24 14:6,7,23 |
| 24:17 26:15 | 14:19 20:8 | 27:21,23 28:4 | 22:11 24:14 |
| 32:8,8 | 23:2 34:13,14 | 28:7,9,18,21 | 25:12,23 42:7 |
| **made** 7:25 8:16 | 36:16,24 39:11 | 28:21,22,24,24 | 46:4 48:5,8,11 |
| 8:19,25 10:10 | 39:16 40:9 | 29:2,6,7,8,11 | **motions** 8:5 |
| 18:17 19:3 | **matter** 1:5 | 29:14,14,15,23 | 9:2 14:7,9,21 |
| 20:10 21:3,9 | 7:16 14:20,25 | 30:9,20,24 | 14:25 22:10 |
| 21:13,18,22 | 17:18 21:23 | 31:14,24,25 | 23:8 |
| 22:8 23:9 | 23:3,4 30:22 | 32:1,4,6,8 | **moves** 18:12 |
| 24:17,18,20,21 | 35:19 41:6 | 38:14,14,24 | **mpia** 33:9 |
| 24:21 25:1,19 | 42:4 44:2 | 39:12,18,23 | **multiple** 9:5 |
| 25:21 34:22,25 | **matters** 14:12 | 40:11 41:8 | 11:12 13:15 |
| 35:20,22 36:3 | 23:1 24:1,2 | 42:24 | 17:24 29:7 |
| 37:12,13,17,22 | **meaningful** | **mineola** 49:23 | 33:7 |
| 38:1 40:11 | 43:14 | **minutes** 27:9 | **mute** 6:21 |
| **main** 30:2 | **means** 16:4 | 39:19 42:2 | **muted** 6:4 |
| **maintain** 45:16 | **measuring** | **mipa** 32:21 | **myriad** 8:14 |
| **maintained** | 20:23 | 33:2,5,6,13,17 | **n** |
| 26:14 27:9 | **mediation** 26:1 | **mitchell** 12:4 | **n** 4:1 6:1 48:1 |
| 42:1 | 26:5 43:11 | **mix** 46:16 | 49:1 |
| **maintenance** | 44:7 | **money** 9:20 | **name** 6:20 |
| 33:9 41:24 | **mediator** 44:11 | 10:13 11:24 | 10:16 11:18 |
| | | 12:22,23 21:14 | 12:12 |

| | | | |
|---|---|---|---|
| **names** 26:12 | **newhouse** | **o** | **okay** 44:24 |
| **narrative** 7:25 | 35:11 40:7 | **o** 2:21 6:1 49:1 | 45:2 46:1 |
| 24:5 | **newly** 13:5 | **object** 16:20 | **old** 49:21 |
| **near** 42:7 | **niknim** 1:15 | 32:19,21 33:23 | **once** 6:18 |
| **nearly** 14:12 | 4:18 24:20 | 34:3,6 | 20:16 22:17 |
| 28:17 | 25:3,22 27:2,2 | **objected** 15:7 | 29:25 |
| **necessary** | 27:6,6,8 30:10 | 16:6 | **ongoing** 45:9 |
| 30:23 43:24 | 31:19 32:9 | **objection** 17:2 | **opened** 16:12 |
| **need** 17:9 23:8 | 33:19 37:1,8 | 17:5 | **opening** 16:7 |
| 30:15 43:6,21 | 39:15,21,24 | **objections** 8:15 | 16:16 |
| 43:25 44:3,19 | 40:1,11,14 | 15:5,18,25 | **operated** 9:9 |
| 45:8 | 41:8,11,13,15 | 17:6 | 9:11 26:22 |
| **needed** 12:21 | 41:19,22,22,25 | **objects** 15:11 | **operating** 9:24 |
| 27:23 | 42:2 | **obligation** | 22:7 26:8 27:3 |
| **needs** 43:5 | **nolan** 4:8 7:7,7 | 18:17 37:17 | 30:2 |
| **negotiating** | 7:17,19,19 | **obligations** | **opinion** 16:18 |
| 28:6 | 23:6,14 43:3 | 31:2 | 16:24 20:22 |
| **negotiations** | **non** 8:22 10:5 | **observe** 43:23 | **opportunity** |
| 33:3 | 10:16 29:16 | **observed** 42:1 | 45:3 |
| **net** 28:20 29:2 | 33:22 37:4 | **obviously** 17:3 | **opposed** 46:14 |
| 29:3 31:24 | **noncomplian...** | **occur** 29:9 | **order** 9:3 |
| 34:5 | 36:22 | **occurred** 17:22 | 11:24 23:5,7 |
| **network** 32:22 | **note** 20:4 28:22 | 19:2 32:11 | 43:4,8 |
| 32:23 33:22 | 28:24 | 34:7 37:17,25 | **orders** 23:22 |
| 37:5,7 | **noted** 21:24 | 38:20 | **orion** 1:6,12,21 |
| **never** 11:20 | 22:14 38:12,17 | **occurrence** | 7:9 10:6,7,9,12 |
| 27:16 33:5,6,7 | 42:23 | 31:11 | 10:20 15:18 |
| 33:12,13,14 | **notes** 29:18 | **october** 13:10 | 22:1 28:6 30:2 |
| **new** 1:2 2:4 4:6 | **notice** 8:4 | **offering** 16:24 | 30:6 39:4 |
| 4:13,20 9:15 | **november** 11:2 | **office** 4:17 | 41:17 |
| 18:1,16,24 | 11:6 | **officer** 9:24 | **outlined** 20:14 |
| 21:12,13 23:23 | **number** 6:22 | 26:17 27:5 | **outset** 36:15 |
| 25:16 27:3,4 | 6:23 10:23 | 30:2,3 39:4 | 42:7 |
| 34:20,24 35:9 | 13:20 | 41:13 | **outstanding** |
| 35:21 37:16 | **ny** 4:6,13,20 | **officers** 9:17 | 10:23 11:5 |
| 39:13 40:2,16 | 5:4 49:23 | 39:1 | 21:2 28:22,24 |
| 42:9,17,20 | | | 28:25 35:16 |

**overall** 21:7
**overruled** 16:1
  17:3,6
**oversee** 17:11
**owed** 12:16
  13:8 31:15,19
  31:20 34:2
  37:7,8
**own** 25:7
**owned** 26:21
  32:16,18,25
**owner** 18:4
  40:17,24
**ownership**
  10:6,9 11:15
  32:18

**p**

**p** 4:1,1,8,15 6:1
**p.c.** 5:1
**p.m.** 12:6
**pachulski** 4:3
**page** 28:13
  48:4
**paid** 10:11,13
  20:17 28:3,16
  29:23 37:3
  41:15
**par** 15:16
**paragraph**
  26:20
**parent** 40:17
**parmar** 9:22
  9:23 10:3,14
  11:8,17,23
  12:4,6,10,23
  12:23,25 13:6
  16:12 20:13

26:16 27:17,23
28:3,6,10 29:5
29:16 32:2,15
33:1 37:6 39:1
**parmar's**
  38:14
**part** 11:6 16:3
  16:4 26:2 32:2
  36:13 43:8
  45:24
**partial** 24:14
  25:12,23 42:6
  43:12
**partially** 31:2
**participated**
  40:3,10
**particularly**
  15:11 17:10
**parties** 6:21
  8:5 14:4,11,13
  14:16 19:14,16
  22:15 24:3
  25:5,7,25 26:5
  27:22 28:5
  30:12,25 32:10
  34:12 40:3
  43:10,13 44:15
**parties'** 9:2
**partner** 12:4
**party** 14:20
  17:13 32:25
  37:3
**passing** 39:8
**past** 26:2
**paul** 9:22
  26:16

**pay** 20:18
  36:10 41:23
**payment** 8:19
  30:24 32:6
  36:21 37:1
  40:11
**payments** 33:8
  41:25
**pc** 26:25
**pca** 26:25
  28:23 29:3
**pending** 9:4
  14:22 24:1
**percent** 10:9
  13:22
**period** 34:9
  45:6
**permeable**
  44:21
**person** 9:24
  35:1 45:4,8
**personal** 11:23
  15:20 27:7
  41:3,14,16,19
  41:23
**petition** 11:5
  19:2 32:12
  34:8,23 37:13
  37:25
**petitions** 35:17
**petrozza** 7:24
  9:13,14,18,21
  10:1,10,13
  11:8,10,22
  12:17,19 20:2
  20:13,17,17

**petrozza's**
  9:20 13:3
**phone** 6:21
**phrase** 27:21
**physician** 11:1
  11:4 26:10
  27:10 37:5
**physicians**
  27:18 30:18,21
  32:22,23 33:22
  37:7
**piercing** 40:15
**plaintiff** 7:20
  7:21 8:6 11:2
  19:22 21:17
  35:3
**plaintiffs** 1:13
  1:22 7:8
**plaintiff's** 14:6
**plaza** 2:3
**pleadings**
  12:13 14:4
  22:14 26:11
  42:24
**please** 6:17,18
  6:19,21,25
**plenty** 46:16
**pllc** 4:17
**plus** 11:1 27:11
**point** 22:18
  28:10 33:25
**points** 44:6
**pool** 41:23
**porteck** 24:23
  26:18,19,20,24
  27:11,13,13,16
  27:20 29:1,13