Case No. 2:25-cv-02032-RPK

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---

**In the Matter of Orion Healthcorp, Inc.,** *et al.,*          Chapter 11

**Debtors.**          Case No.18-71748 (AST)

---

On Appeal from the United States Bankruptcy Court, Eastern District of New York, Adv. No. 20-08049 (AST)

---

**Arvind Walia; Niknim Management, Inc.,**

**Appellants**

v.

**Howard M. Ehrenberg, in his capacity as liquidating trustee of Orion Healthcorp, Inc., et al.,**

**Appellee**

---

### APPELLANTS' REPLY BRIEF IN SUPPORT OF APPEAL

---

Sanford P. Rosen, Esq.          and          Eugene R. Schieman, Esq.

ROSEN & ASSOCIATES, P.C.          THE LAW OFFICE OF EUGENE R.

P.O. Box 1274          SCHEIMAN, PLLC

Shelter Island Heights, NY 11965          570 Lexington Avenue, Suite 1600

Tel: (212) 223-1100          New York, NY 10022

*Co-counsel for Appellants*          Tel: (646) 280-9000

*Co-counsel for Appellants*

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT……………………………………………….. 1

STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW ……………………………………………………………………...3

    A. WHETHER THE BANKRUPTCY COURT ERRED IN GRANTING APPELLEE'S SUMMARY JUDGMENT MOTION AS TO APPELLANT NIKNIM WITHOUT ADDRESSING ADMITTED AND UNCONTROVERTED EVIDENCE OF INDIRECT VALE THE DEBTORS RECEIVED IN EXCHANGE FOR THE RELEVANT TRANSFER…………………………………………………………………...3

    B. WHETHER THE BANKRUPTCY COURT ERRED IN DENYING APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT WHERE APPELLEE FAILED TO ALLEGE STANDING IN THE COMPLAINT…………………………………4

    C. STANDARD OF APPELLATE REVIEW…………………………………….5

STATEMENT OF THE CASE ……………………………………………..6

    A. RELEVANT FACTS AND PROCEDURAL HISTORY……….……………….......6

    B. FIRST RULING PRESENTED FOR REVIEW: FAILURE TO ADDRESS INDIRECT VALUE PROVIDED TO DEBTORS ……………………………….......……….17

    C. SECOND RULING PRESENTED FOR REVIEW: FAILURE TO ALLEGE STANDING……………………………………………………………18

SUMMARY OF ARGUMENT……………………………………………...18

ARGUMENT…………………………………………………………...19

    A. THE DEBTORS RECEIVED INDIRECT VALUE FOR THE SECOND TRANSFER WHICH THE BANKRUPTCY COURT DISREGARDED AND WHICH PRECLUDED A FINDING OF SUMMARY JUDGMENT …………………………………….19

    B. THE BANKRUPTCY COURT ERRED IN FINDING THAT APPELLEE PROPERLY ALLEGED STANDING …………………………………………………26

CONCLUSION ……………………………………………………………...28

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ...................................19

HBE Leasing Corp. v. Frank, 48 F.3d 623, 636 (2d Cir. 1995). ...........................28

In re Allou Distributors, Inc., 392 B.R. 24, 30 (E.D.N.Y. 2008) ...........................29

In re Image Worldwide Ltd., 139 F.3d 574, 578 (7th Cir. 1998). ..........................22

In re Jacobs, 394 B.R. 646, 653-58 (Bankr. E.D.NY. 2008)..................................25

In re Wingspread Corp., 178 BR 938, 946 (Bankr. S.D.N.Y. 1995) .....................30

Pardo v. Avanti Corp. Health Systems, Inc. (In re APF Co.), 274 B.R. 634, 639 (Bankr. D. Del. 2001) ..............................................................................................30

Ries v. Wintz Props., Inc. (In re Wintz Cos.), 230 B.R. 848, 859 (8th Cir. B.A.P. 1999) ......................................................................................................................30

Rubin v. Hanover Mfr. Trust, 661 F.2d 979 (2d Cir. 1981) ..................................22

In re Sharp. Inter. Corp. 403 F.3d, 56 (2d Cir. 2005) ...........................................20

U.S. v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994)................................................ 8

## STATUTES

111U.S.C. § 544………………………………………………...4,5, 13, 17, 18, 26, 27

11 U.S.C. § 548(a) ...........................................................................................19,22

11 U.S.C. §§ 101- 1532.......................................................................................... 3

28 U.S.C. § 1334..................................................................................................... 5

28 U.S.C. § 157 ...................................................................................................... 5

N.Y. DCL § 272 .....................................................................................................27

N.Y. DCL § 273………………………………………………………………14

N.Y. Debtor & Creditor Law § 276 .......................................................................20

N.Y. Debtor & Creditor Law §§ 273-275 .............................................................22

## RULES

Fed. R. Civ. P. 56………………………………………………………………18

Fed. R. Bankr. P. 8013........................................................................................... 7

Fed. R. Bankr. P. 8002(a)(1)................................................................................. 3

Appellants Arvind Walia ("Walia") and NIKNIM Management, Inc. ("Niknim") (together, the "Appellants"), hereby appeal to this Court as follows:

## I.    JURISDICTIONAL STATEMENT

1.    This appeal arises from an adversary proceeding commenced in the bankruptcy case of Orion Healthcorp, Inc., *et al.* pending under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101- 1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").[1]  Appellants appeal final orders of the Bankruptcy Court and all pertinent underlying rulings, orders, and decisions, including the related bench rulings issued orally, and all related judgments.

2.    The first order, entered on April 22, 2024, *Order Granting and Denying in Part Plaintiff's Motion for Summary Judgment/Summary Adjudication and Denying Defendants Arvind Walia and Niknim Management, Inc. Cross Motion For Summary Judgment; Ruling on Evidentiary Objections; and Establishing Facts as Admitted in the Case Pursuant to FRCP 56(g)* [Adv. Doc. No. 97; App. Doc. No.

---

[1] *Orion Healthcorp, Inc. and Allied World National Insurance Co.* (formerly, *Orion Healthcorp, Inc., et al.*), Case No. 18-71748 (AST) (the "Bankruptcy Case"). The debtors therein are hereinafter referred to as the "Debtors" or, individually, "Debtor". The Debtors' cases were consolidated for administrative purposes only.

Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp, Inc. et al. (the "Appellee") commenced the adversary proceeding against Appellants herein, and the proceeding was assigned Adversary Proceeding Number 8-20-08049-ast (the "Adversary Proceeding").

5-15; R. 1884] (the "April 2024 Order"), denied Appellants' motion for partial summary judgment, and granted, in part, Appellee's motion for summary judgment, as to Appellant Niknim.    Thereafter, the Bankruptcy Court entered *Partial Judgement Against Niknim Management Inc.*. [Adv. Doc. No. 117; App. Doc. No. 5; R. 1888] on May 22, 2024 (the "2024 Judgement").  The Bankruptcy Court set forth its findings of fact and conclusions of law in the record of the hearing held on April 10, 2024 (the "April 2024 Ruling Hearing").    Appellants' Appendix filed simultaneously herewith includes the April 2024 Order, the 2024 Judgement, and the transcript of the April 2024 Ruling Hearing (the "April 2024 Transcript").[2]

3.    The second order, the *Order Granting and Denying in Part Judgment Against Defendants Arvind Walia and Niknim Management, Inc* (the "December 2024 Order"), entered on December 6, 2024, held Appellant Walia liable on account of Appellant Niknim's liability under the April 2024 Order, pursuant to the ruling hearing held on November 20, 2024. [Appendix Doc. 2; Adv. Doc. No. 153; App. Doc. No. 5-20; R. 2409]  On April 3, 2025, the Bankruptcy Court entered the *Judgement Against Arvind Walia and Niknim Management, Inc* (the "2025 Judgement"), based on the December 2024 Order. [Appendix Doc. 2; Adv. Doc. No. 157; App. Doc. No. 1; R. 4]  With the entry of the 2025 Judgement, the Bankruptcy

---

[2] Matters in other  adversary proceedings were heard at the April 2024 Ruling Hearing and that portion of the transcript that relates to the Adversary Proceeding begins at page 23, ln 17.  The April 2024 Transcript is also located at [Adv. Doc. No. 148][App. Doc. No. 5-19; R. 2337] and [Adv. Doc. No. 175].

References to the "Appendix" herein are references to Appellants' Appendix filed simultaneously herewith.

Court finally and completely determined all issues raised by the motions for summary judgment and the orders and judgments appealed from are now final and appealable.

4.      Appellants filed their Notice of Appeal on April 10, 2025.  [Adv. Proc. Doc. 159; App. Doc. No. 7-12; R. 7], seven (7) days after entry of the 2025 Judgement.   Pursuant to Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure, a party must file a notice of appeal within fourteen (14) days of the entry of the judgment or order appealed. Fed. R. Bankr. P. 8002(a)(1). Therefore, this appeal is timely.

5.      The Bankruptcy Court had jurisdiction over the bankruptcy case and the adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and this Court has jurisdiction to hear this appeal under 28 U.S.C. 158(a)(1) because the April 2024 Order and the December 2024 Order are final orders and were timely appealed under Bankruptcy Rule 8002.

## II.    <u>STATEMENT OF ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW</u>

**A.      <u>Whether the Bankruptcy Court Erred in Granting Appellee's Summary Judgment Motion as to Appellant Niknim without Addressing Admitted and Uncontroverted Evidence of Indirect Value the Debtors Received in Exchange for the Relevant Transfer.</u>**

3

6.     The Bankruptcy Court erred as a matter of law in finding that the Debtors received no value in exchange for the Second Transfer (as defined herein, below), notwithstanding the uncontroverted testimony of Appellant Walia that the Debtor Orion received software which was used exclusively by and for the benefit of the Debtors.  The Bankruptcy Court did not address the issue of indirect value at the First Ruling Hearing.  Had it considered this indirect value the Bankruptcy Court would have determined that questions of fact related to such value precluded a grant of summary judgment and that a trial was required to assess whether such value was reasonably equivalent to the price paid for it.  Therefore, reversal and remand are appropriate.

**B.     Whether the Bankruptcy Court Erred in Denying Appellants' Motion for Partial Summary Judgment where Appellee Failed to Allege Standing in the Complaint.**

7.     The Bankruptcy Court erred in denying the *Motion of Defendants Arvind Walia and Niknim Management Inc. for Partial Summary Judgment Dismissing Claims Asserted in the Complaint under 11 U.S.C. § 544* ("Appellants' SJM") [Adv. Doc. No. 51] [App. Doc. No. 5; R. 179], where Appellee failed to allege, as an element of its *prima facie* case, the existence of an unsecured creditor of the type described in Bankruptcy Code Section 544(b); i.e., a "qualifying creditor" whose rights the Appellee has asserted in the complaint.

4

8.     Neither the initial complaint filed in the Adversary Proceeding nor the First Amended Complaint (the "Complaint") [Adv. Proc. Doc. 22][App. Doc. No. 5; R. 118] [Appendix Doc. 4], contained an allegation that a qualifying creditor existed.  Although the Bankruptcy Court found standing based upon the actual existence of such a qualifying creditor, it failed to require Appellee to allege that existence in the Complaint as an element of the *prima facie* cause of action.  The Bankruptcy Court's ruling is silent on the issue of failure to plead the existence of a qualifying creditor.  Appellants submit that Appellee's deficient pleading requires reversal of the April 2024 Order, and dismissal of the counts of the Complaint based on Bankruptcy Code Section 544(b).

C.          **Standard of Appellate Review.**

9.     The District Court reviews the legal conclusions of the Bankruptcy Court  *de novo*. 28 U.S.C. § 158, F. R. Bankr. P. 8013.  An appellate court reviews appeals of a Bankruptcy Court's rulings on motions for summary judgment *de novo*.  Moreover, this appeal presents issues of law such that the standard of review on appeal is *de novo*.

10.    The issue of whether the Bankruptcy Court considered the indirect value the Debtors received through the transaction, is a question of law. "Indirect value" is recognized as "value" for purposes of determining whether a particular transfer is fraudulent under state and federal fraudulent conveyance law.

5

The Bankruptcy Court's apparent failure to consider the legal premise that indirect value constitutes value, the issue presented on appeal, is either a question of law or a question of the application of law to fact, and the standard of appellate review is *de novo*. See U.S. v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994) (reviewing district court's conclusion that conveyance was fraudulent under [N.Y. Debtor & Creditor Law] section 276 *de novo* as an issue involving the application of law to fact). The issue of whether the Bankruptcy Court erred in granting summary judgment where the Appellee failed to allege a *prima facie* case, is a legal issue.

## III.    STATEMENT OF THE CASE

### A.         Relevant Facts and Procedural History.

11.    The Debtors were an enterprise of several companies, aggregated through a series of acquisitions, which operated in the healthcare sector, primarily in the areas of revenue and practice management for physician practices.    [Joint Statement of Uncontroverted Facts ("JSF"), Adv. Doc. No. 54][App. Doc. No. 5; R. 268 ¶ 1]

12.    On March 16, 2018, each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code, except for Debtor New York Network Management ("NYNM") which filed its voluntary petition on July 5, 2018, in the

Bankruptcy Court. The Debtors' cases were jointly consolidated for administrative purposes only.

13.    On February 26, 2019, the Bankruptcy Court entered an order [Bankr. Doc. No. 701] confirming the Debtors' Third Amended Joint Plan of Liquidation (the "Plan").[3] The Plan provides for the formation of a Liquidating Trust (by and among the Debtors) and appointment of a Liquidating Trustee to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates. The Effective Date occurred on March 1, 2019. [Compl. Appendix Doc. 4, 3 ¶ 7] [Adv.  Doc. No. 22][App. Doc. No. 5; R. 120 ¶ 7]

14.    The Complaint describes the Plan as providing that "the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action. [Id. at ¶ 8] Appellee is the Liquidating Trustee under the Liquidating Trust Agreement.

1.    The Adversary Proceeding

15.    Appellee commenced the Adversary Proceeding on March 13, 2020, and on June 17, 2020, Appellants filed an answer with affirmative defenses.

---

[3] Capitalized terms not otherwise defined herein shall have the meanings attributed to them in the Plan and/or the Liquidating Trust.

Over a year later, on May 26, 2021, the Bankruptcy Court entered the *Stipulation and Order re Filing of First Amended Complaint; And Entering of Scheduling Order* [Adv. Doc. No. 20][App. Doc. No. 5; R. 114]  On May 28, 2021, Appellee filed the Complaint, the *First Amended Complaint for Avoidance and Recovery of: (1) Fraudulent Transfers; (2) Preferential Transfers; (3) Recovery of Avoided Transfers; (4) Objection to Claim N. 10067; Pursuant to 11 U.S.C. §§ 502, 544, 547, 548 and 550* [Adv. Doc. No. 22]. [App. Doc. No. 5; R. 118]

16.    Appellant Walia timely filed a claim in the Bankruptcy Case in the amount of $61,590,000, on or about July 5, 2018, which the bankruptcy claims' agent designated as claim number 10067, and filed an amended claim asserting a general unsecured claim in the amount of $1,150,947.00 on October 29, 2020, which the claims' agent designated as claim number 10141 (as amended, the "Filed Claim"). [Claims Register No. 10141][Adv. Doc. No. 58-2][App. Doc. No. 5-7; R. 754]

17.    The Adversary Proceeding challenges two transfers. One transfer relates to the 2015 sale of the Porteck Corporation ("Porteck") to Physicians Practice Plus, LLC ("PPP"), one of the Debtors (the "First Transfer").  The other transfer is comprised of one or more transfers relating to the June 2017 sale of AllRad Direct, LLC ("AllRad") to Physicians Healthcare Network Management Solutions, LLC ("Physicians Healthcare") a non-Debtor corporation (collectively, the "Second

Transfer").[4]  The Bankruptcy Court's rulings only as to the Second Transfer and Appellants' motion for partial summary judgment are the subject of this appeal.  The Bankruptcy Court ruled against Appellee with respect to its challenge of the First Transfer as a fraudulent conveyance.  That ruling is the subject of the Appellee's cross appeal. [Adv. Doc. No. 168][App. Doc. No. 5-20; R. 2458]

a.    Relevant Facts

18.    Appellant Walia was President and Chief Executive Officer of Orion Healthcorp, Inc. [JOS, Adv. Doc. No. 54][App. Doc. No. 5; R. 268 ¶ 4], the Debtors' main operating company, beginning sometime after June of 2015, and the Chief Technology Officer of Constellation Healthcare Technologies ("Constellation Healthcare") a Debtor, from some time prior to June of 2015. [Id.]  He remained in those positions until sometime in 2018.  [Id.]

19.    Appellant Niknim is an "S" corporation formed under the laws of the State of New York, and Walia is its sole officer, director, and shareholder. [Id. at 268  ¶ 5, 269 ¶¶ 8-9]  Walia formed Niknim to manage his consulting work, personal investments, and his family trust. [Id. at 269 ¶¶ 9, 10]

---

[4] Certain pleadings included in the record may refer to the First Transfer as the "Two-Year Transfer" and the Second Transfer as the "One-Year Transfer".

20.    <u>The Second Transfer</u>.  In June of 2017, Appellant Walia owned the software company AllRad through another company, Objecttech, which controlled AllRad. [<u>Id.</u> at  273 ¶ 50, 51]

21.    Debtor Constellation Healthcare was a medical billing company that had acquired Debtor NYNM. [Aff. Appellant Walia; Adv. Doc. No. 84][App. Doc. No. 5-14; R.  1695 ¶ 53]  At that time, "…NYNM needed a major technology overhaul by replacing its existing network management system from Evicore and building custom automation including integration with PARCS (Constellation Healthcare's billing system)." [<u>Id.</u>]

22.    The sale of AllRad was structured as a transfer of Walia's membership interests pursuant to the Membership Interests Purchase Agreement (the "<u>Objecttech MIPA</u>") dated June 2017, which is annexed as Exhibit "B" to Appellant Walia's affidavit.  [<u>Id.</u> at 1780]  Pursuant to the Objecttech MIPA, the closing payment for the transaction was $1,520,000.  [<u>Id.</u> at 1695  ¶ 55, 1781-82 § 1.2]

23.    On June 23rd and 28th of 2017,   a total of $1,520,000 was transferred from the Debtors' Interest on Lawyers Account (IOLA) managed by Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C., Debtors' counsel at the time, to Niknim's JP Morgan Chase bank account.  [JOS, Adv. Doc. No. 54][App. Doc. No. 5; R. 269 ¶ 7]

24.    In exchange for the Second Transfer, the shares of AllRad were transferred to Physicians Healthcare (a non-debtor) [April 2024 Hr'g Tr., App., Tr. p. 33 ll. 20-22] and the Debtors received the right to use the software and the required technical support, all of which is described in Appellant Walia's affidavit as follows:

> …. AllRad's property consisted of certain software that was advantageous to the Debtors. It provides state of the art technology to ensure that patients, providers, and payers have complete access and insight into every aspect of the diagnosis, treatment, and follow-up for each patient. The data base was designed to facilitate population wellness management solutions by consolidating and storing clinical assessments, diagnostic laboratory and imaging results, prescribed treatment regimens and care plans and their clinical outcomes for each patient. More detailed descriptions of the software are annexed hereto  as Exhibits "C" and "D".

*****

> …. AllRad software is a network management system that had the following advantages.
> • It had most of the network management features needed for NYNM.
> • The technology was the same as the PARCS system.
> • The AllRad team was very familiar with the PARCS system as they were from the same company.
> • The operational efficiency and cost saving for replacing existing software with ALLRad software once adapted by NYNM would be over $3M a year.
> • The enhancement and cost to the adaption of ALLRad software for NYNM was considerably low since the existing Constellation Healthcare technology team was familiar with the software and it had the same technology as PARCS.

[Adv. Doc. No. 84][App. Doc. No. 5-14; R. 1695 ¶ 53-54]

11

25.    As part of the Second Transfer, "the assets of Objecttech were delivered to Orion, one of the Debtors, at the closing and [Walia], as the President and Chief Executive Officer of the [sic] Orion, presided over the development and integration of the software for the exclusive benefit of the Debtors…." [Id. at 1698 ¶ 63]

b.    Procedural History

26.    By the Complaint [Adv. Doc. No. 22] [App. Doc. No. 5; R. 119], Appellee asserts five claims for relief, described below:

-    First Claim for Relief. [Id. at 124] Appellee alleges that the First Transfer and the Second Transfer (together, the "Transfers") are avoidable as intentional fraudulent transfers pursuant to Bankruptcy Code section 548(a)(1)(A) and section 276 of the New York Debtor & Creditor Law (the "NYDCL").[5]

-    Second Claim for Relief. [Id. at 125]  Appellee alleges that the Transfers are also avoidable as constructive fraudulent transfers pursuant to Bankruptcy Code section 548(a)(1)(B) and sections of the NYDCL because the Debtors did not receive reasonably equivalent.

---

[5] The relevant sections of the New York Debtor & Creditor Law, applicable at the time of the Transfers is included in the Addendum annexed hereto.

- <u>Third Claim for Relief</u>. [<u>Id.</u> at 125]   Appellee alleges that the Second Transfer was preferential, and therefore avoidable under Bankruptcy Code section 547(b).

- <u>Fourth Claim for Relief</u>. [<u>Id.</u> at 126]   Appellee alleges that Appellants are the initial, immediate, or mediate transferees of the Transfers and therefore seeks to recover the property transferred or the value of such property pursuant to Bankruptcy Code section 550(a) and the NYDCL.

- <u>Fifth Claim for Relief</u>. [<u>Id.</u> at 127]   Appellee seeks to (i) strike the Filed Claim, alleging that it was not filed with evidentiary support and is contradicted by the Debtors' books and records, or alternatively, (ii) disallow the Filed Claim pursuant to Bankruptcy Code section 502(d) unless and until Walia pays to the Appellee an amount equal to any transfer, if any, that is avoided including pre- and post-judgment interest.  Appellants filed their *Answer to the First Amended Complaint and Affirmative Defenses* on June 9, 2021 [Adv. Proc. Doc. No. 23] [App. Doc. No. 5; R. 133] On January 25, 2022, the parties filed the *Stipulation to Attend Mediation and Toll Remaining Deadlines*, which the Bankruptcy Court entered on March 7, 2022  [Adv. Doc. No. 34] [App. Doc. No. 5; R. 146]  Mediation, however, was unsuccessful.

27. On November 11, 2022, the Bankruptcy Court entered the *Stipulation for Scheduling Order Re: Briefing Schedule for Summary Judgment Motions and Order Thereon.* [Adv. Proc. Doc. No. 49] [App. Doc. No. 5; R. 176]

28. On January 18, 2023, both Appellants and Appellee filed motions for summary judgment. Appellants moved for partial summary judgment dismissing the claims asserted in the Complaint seeking relief under the NYDCL through application of Bankruptcy Code section 544(b) ("Section 544(b)") [Adv. Proc. Doc. No. 51] [App. Doc. No. 5; R. 179] (the "Appellants' SJM"), based on Appellee's failure to allege the existence of a creditor who could have attacked and set aside the Transfers, as is required for relief by Section 544(b). [Id. at 188]. The subject claims are the first and second claims alleging intentional and constructive fraud under the NYDCL and the fourth claim for relief. [Id. at 187] Appellants' SJM included a joint statement of non-disputed material facts and additional statement of fact. [Id. at R. 213]

29. Appellee moved for summary judgment or, alternatively, summary adjudication [Adv. Doc. No. 53] [App. Doc. No. 5; R. 220] (the "Appellee's SJM") as to the first claim for relief alleging intentional fraud, the second claim for relief alleging constructive fraud under NYDCL § 273-A and seeking judgment against both Appellants. In support of Appellee's SJM, Appellee filed a joint statement of uncontroverted facts with an additional statement of facts

[Adv. Doc. No. 54][App. Doc. No. 5; R. 267], counsel's supporting affidavit [Adv. Doc. No. 55][App. Doc. Nos. 5, 5-1; R. 281], and the affidavits of Edith Wong [Adv. Doc. No. 56][App. Doc. No. 5-2; R. 414] and Frank A. Lazzara. [Adv. Doc. No. 57][App. Doc. No. 5-6; R. 567]    Additionally, Appellee requested that the Bankruptcy Court take judicial notice of several documents. [Adv. Doc. No. 58][App. Doc. No. 5-6; R. 607]

30.    On February 24, 2023, Appellants and Appellee each filed opposition papers.  Appellants filed the Appellant Walia's Affidavit [Adv. Doc. No. 64][App. Doc. No. 5-11; R. 1177], (the "Walia Affidavit", and as subsequently corrected), which included the Objecttech MIPA [Id. at 1272], and descriptions of AllRad's software products. [Id. at 1337], a brief in opposition to Appellee's SJM [Adv. Doc. No. 65][App. Doc. No. 5-12; R. 1364], and counsel's affirmation [Adv. Doc. No. 66][App. Doc. No. 5-12; R. 1383]

31.    Appellee filed a brief in opposition to Appellants' SJM [Adv. Doc. No. 60][App. Doc. No. 5-7; R. 802], as well as counsel's affirmation [Adv. Doc. No. 62][App. Doc. No. 5-7; R. 816], a response to Appellants' statement of fact [Adv. Doc. No. 61][App. Doc. No. 5-7; R. 813], and a reply brief [Adv. Doc. No. 72][App. Doc. No. 5-13; R. 1622] supported by counsel's affirmation [Adv. Doc. No. 73][App. Doc. Nos. 5-13, 5-14; R. 1654]

32.    Appellee objected to the Walia Affidavit on various grounds on March 10, 2023 [Adv. Doc. No. 71][App. Doc. No. 5-13; R. 1604].  Appellants filed a corrected Walia Affidavit on January 5, 2024 [Adv. Doc. No. 84][App. Doc. No. 5-14; R. 1684], which, as stated in counsel's affirmation filed therewith [Adv. Doc. No. 85][App. Doc. No. 5-15; R. 1872], includes the inadvertently omitted paragraph number 4 which reads as follows: "4. I make this affidavit under penalty of perjury under the laws of the United States of America." [Adv. Proc. Doc.  84][App. Doc. No. 5-14; R. 1685]  Otherwise, the affidavits are identical.  The Bankruptcy Court did not sustain such objections and accepted the corrected affidavit.

33.    On April 10, 2024, the Bankruptcy Court held the April  2024 Ruling Hearing and thereafter, on April 16, 2024, it entered the *Adversary Pretrial Scheduling Order,* which scheduled certain dates and directed that the parties return to mediation. [Adv. Doc. No. 92][App. Rec. Doc. 5-15; R. 1879]  Again, mediation was unsuccessful.

34.    On April 22, 2024, the Bankruptcy Court entered the April 2024 Order which denied that portion of Appellee's SJM which was directed to Walia and the First Transfer, granted Appellee's SJM, in part, as to the Second Transfer and as to Appellant Niknim, and denied Appellants' SJM. [Adv. Doc. No. 97][App. Doc. No. 97; R. 1884]  The 2024 Judgement was subsequently entered. [Adv. Doc. No. 117][App. Doc. No. 5; R. 1888]

16

35.     Appellants and Appellee submitted additional pleadings, as to those portions of the summary judgment motions that were denied, and the Bankruptcy Court held a trial on July 24, 2024.  Thereafter, the Bankruptcy Court issued the *Order Granting and Denying in Part Judgment Against Defendants Arvind Walia and Niknim Management, Inc.*; i.e., the December 2024 Order [Adv. Doc. No. 153][App. Doc. No. 3; R. 58] and *Judgement Against Arvind Walia and Niknim Management, Inc.* was entered, the 2025 Judgement, on April 3, 2025. [Adv. Doc. No. 157][App. Doc. No. 1; R. 4]   The liability of Appellant Walia, as determined by the December 2024 Order, is derivative of the finding of liability as to Appellant Niknim in the April 2024 Order.   Herein, Appellants appeal the Bankruptcy Court's rulings as to the April 2024 Order.

**B.        First Ruling Presented for Review: Failure to Address Indirect Value Provided to Debtors.**

36.     The Bankruptcy Court set forth the following on the record of the April 2024 Ruling Hearing: "For the reasons that follow, the Court … is granting summary judgment to the trustee [Appellee] [and against Niknim only] on the second transfer claim, the $1,520,000 transfer made to Niknim in June of 2017." [April 2024 Hr'g Tr., App., Tr. 25, ll. 17-22] The Court denied all other relief sought, including as against Appellant Walia, set a trial date for July 24, 2024, on the remaining claims, and directed the parties to return to mediation, which was not

successful.  The Bankruptcy Court failed to consider the evidence of "indirect value" having been transferred to the Debtors and relied solely on the failure to deliver "direct value".

### C.        Second Ruling Presented for Review: Failure to Allege Standing.

37.    Appellants also sought summary relief because the Appellee failed to plead or allege standing under Section 544(b), which Appellee relies on to assert state law claims.  Without having pled an element of its *prima facie* case, Appellee cannot obtain relief.

## IV.    SUMMARY OF ARGUMENT

38.    The Bankruptcy Court erred in granting summary judgment against Appellant Niknim where Appellants had presented proof of indirect value provided to the Debtors in exchange for the Second Transfer.  Appellants assert that the Bankruptcy Court should have found reasonably equivalent indirect value and denied Appellee's SJM or that such evidence of indirect value raises a material issue of fact that is in dispute and required a trial.

39.    The Bankruptcy Court also erred in denying Appellants' MSJ on the basis of Appellee's procedural failure to allege the existence of a qualifying unsecured creditor in the Complaint as is required for standing under Section 544(b).  Appellant's First, Second, and Fourth Claims for Relief (alleging fraudulent

conveyance) are predicated upon both the Bankruptcy Code and the New York Debtor & Creditor Law. However, Appellant may invoke the New York Debtor & Creditor Law <u>only</u> through application of Section 544(b). And case law is clear that where a party seeks recovery through Section 544(b) it must allege <u>and</u> ultimately prove the existence of the qualifying creditor.

40.    For the reasons set forth above and discussed more fully below, these rulings which are set forth in the April 2024 Order, must be reversed, and the matters be remanded.

## V.    <u>ARGUMENT</u>

### A.    <u>The Debtors Received Indirect Value for the Second Transfer which Precluded Summary Judgment.</u>

41.    Rule 56 of the Federal Rules of Civil Procedure ("<u>Rule 56</u>"), applicable here through Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Rule 56 (a). Fed. R. Civ. P. 56(a).

42.    In an action seeking to recover on account of an alleged fraudulent conveyance, whether the allegedly aggrieved party received value through the exchange, and the amount of that value, is integral to the action

regardless of whether the action alleges intentional or constructive fraud, and regardless of whether it is based on the Bankruptcy Code or the New York Debtor & Creditor Law.

43.    In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), citing, Adickes v. SH Kress & Co., 398 U.S. 144, 158-159 (1970) (emphasis added). The Walia Affidavit addresses the issues of indirect. [Adv. Doc. No. 84] [App. Doc. No. 5-14, R. 1845-58; 5-15, R. 1859-1871]  Thus, the Bankruptcy Court must accept all statements in the Walia Affidavit as true and draw all justifiable inferences in the Appellants' favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citation omitted).

44.    The first and second counts of the Complaint allege intentional, or actual, fraud and constructive fraud [Adv. Doc. No. 22] [App. Doc. No. 5; R. 124, 125] under Bankruptcy Code section 548 ("Section 548") and section 276 of the NYDCL, which addresses intentional fraud, and section 273-A which addresses constructive fraud.

45.    Section 548, is set forth in its entirety in the Addendum, and provides, in pertinent part:

(a)    (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with <u>actual intent</u> to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received <u>less than a reasonably equivalent value</u> in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1) (emphasis added).

46.    <u>Analysis as to Intentional Fraud</u>. Section 548(a)(1)(A) addresses actual, intentional, fraud and requires that "intent" be present for a recovery thereunder.  Section 276 of the New York Debtor & Creditor Law ("<u>Section 276</u>")

21

applicable at the time of the Transfer, sets forth the elements of intentional fraud under New York State Law and provides:

> § 276. Conveyance made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. D.& Cred. L. § 276 (Section 276 is set forth in its entirety in the Addendum.).

47.    The Bankruptcy Court considered these two laws as allowing avoidance of a transfer made within two years before the bankruptcy petition date "if made with actual intent to hinder, delay, or defraud any creditor to which the debtor was or became liable." [April 2024 Hr'g Tr., App., Tr. 37, ll. 10-15]  The burden is on the Appellee to establish such intent by clear and convincing evidence. In re Jacobs, 394 B.R. 646, 653-58 (Bankr. E.D.NY. 2008).

48.    In assessing "intent" for the purposes of an allegedly intentional fraudulent transfer, courts consider the "badges of fraud". See In re Sharp. Inter. Corp., 403 F.3d 43, 56 (2d Cir. 2005).  Here, the Bankruptcy Court highlighted two badges it considered as to the Second Transfer: (1) inadequacy of consideration, based on the lack of direct value, stating "…the Debtors … got nothing in exchange" [April 2024 Tr., App. Tr. 38, ll.  23-25]; and (2) Appellant Walia's insider status as an officer of two of the Debtors. [April 2024 Tr., App., Tr., 39, ll. 1-6]  Appellants have not challenged Appellant Walia's insider status, but the finding of such status

22

alone would not be sufficient to find intentional fraud where, as here, there was a contemporaneous exchange for fair value.

49.    Consideration the Debtors Received for the Second Transfer.  As a matter of law, indirect value, where the initial benefit has gone to a third person, can provide reasonably equivalent value under Section 548. See Rubin v. Hanover Mfr. Trust, 661 F.2d 979 (2d Cir. 1981) (debtor could have received value indirectly through the ability to settle its accounts quicker thereby increasing available funds, and by receiving a source of working capital to keep the debtor in business in exchange for loans made by the debtor to third parties).  Indirect benefits can suffice as reasonably equivalent value if they are fairly concrete and identifiable. See also In re Image Worldwide Ltd., 139 F.3d 574, 578 (7th Cir. 1998).

50.    As the Objecttech MIPA provided, Objecttech transferred legal title of membership interests to a non-debtor in exchange for the Second Transfer. The Debtors, however, received the right to use AllRad's software as stated in the Walia Affidavit. [Adv. Doc. No. 85] [App. Doc. No.  5-14; R.  1698 ¶ 63]  Because "indirect value" legally constitutes value or consideration, and the Walia Affidavit provided uncontroverted evidence of indirect value, the Bankruptcy Court was required to address it.

51.    The Constructive Fraud Analysis.    Section  548(a)(1)(B) addresses constructive fraud and requires that a debtor receive "less than a

23

reasonably equivalent value" in the exchange at issue <u>and</u> that one of the four elements listed in Section(a)(1)(B)(ii) be present. The "less than reasonably equivalent" requirement acts as a gating issue in the constructive fraud analysis under the Bankruptcy Code

52.     Similarly, New York Debtor & Creditor Law § 273-A ("Section 273-A") requires that a transfer be made without "fair consideration" . It provides:

> Conveyances by defendants. <u>Every conveyance made without fair consideration</u> when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. DCL § 273-A (emphasis added) (Section 273-A is set forth in the Addendum.).

53.     Section 272 of the New York Debtor & Creditor Law defines the term "fair consideration" as existing under the following circumstances:

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. DCL § 272 (Section 272 is set forth in the Addendum.)

24

54.    As in the intentional fraud analysis, the Bankruptcy Court found that, as to the Second Transfer, "there was no fair consideration in that transaction", [April 2024 Hr'g Tr., App., Tr. 39, 17-8]  However, the Walia Affidavit described the indirect value the Debtors received as being reasonably equivalent to the value transferred, Appellant stated " . . . I believe that the value of this benefit was reasonably equivalent to the amount paid in exchange for it under the Objecttech Membership Purchase Agreement."  [Walia Aff., Adv. Doc. No. 84] [App. Doc. No. 5-14; R. 1698, ¶ 63]

55.    "Fair consideration", and therefore the constructive fraud analysis under the NYDCL, requires "good faith" in addition to value.  It appears that the Bankruptcy Court found a lack of good faith based merely upon Appellant Walia's statutory insider status.  Satisfying a singular badge of fraud is insufficient to conclude that the Second Transfer was intentionally fraudulent.

56.    Importantly, where roughly equivalent value is found to have been exchanged, "the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme" HBE Leasing Corp. v. Frank, 48 F.3d 623, 636 (2d Cir. 1995).  There is no evidence that Appellant Walia acted with any knowledge of a fraudulent scheme.

57.     Appellants request that on the basis of the foregoing, the First Order be reversed to the extent it grants Appellee's SJM on the first and second causes of action.

**B.      The Bankruptcy Court Erred in Finding That Appellee Properly Alleged Standing.**

58.     The Complaint seeks avoidance and recovery of allegedly fraudulent conveyances through the New York Debtor & Creditor Law pursuant to Bankruptcy Code section 544(b) ("Section 544(b)").  Section 544(b)(1) provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

> 11 U.S.C. §544(b)(1)(Included in the Addendum hereto.).

59.     Section 544(b)  allows a trustee in bankruptcy, such as Appellee, to seek relief under state law by essentially "stepping into the shoes" of a creditor of the debtor who existed and could have sought that relief at the time of the transfer at issue.

To invoke Section 544(b), a trustee must allege that at least one present, unsecured creditor holds an allowable claim against whom the challenged transfer or obligation would be invalid.  See In re Allou Distributors, Inc., 392 B.R. 24, 30 (E.D.N.Y. 2008) ("[I]n order to establish standing under Section 544(b) to avoid a fraudulent transfer,

26

a trustee must first identify a creditor as to whom the transfer could have been avoided under New York State law."). In other words, "before a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer occurred could have, under applicable local law, attacked and set aside the transfer under consideration." In re Wingspread Corp., 178 BR 938, 946 (Bankr. S.D.N.Y. 1995), quoting, In re Smith, 120 B.R. 588, 590 (Bankr. M.D.Fla. 1990) (emphasis added). "A plaintiff bringing a cause of action under Section 544(b) without alleging the existence of a so-called "triggering" creditor, lacks standing to pursue the claim. See Ries v. Wintz Props., Inc. (In re Wintz Cos.), 230 B.R. 848, 859 (8th Cir. B.A.P. 1999) (trustee failed to identify such a creditor and therefore lacked standing to pursue a fraudulent transfer claim). See also, Pardo v. Avanti Corp. Health Systems, Inc. (In re APF Co.), 274 B.R. 634, 639 (Bankr. D. Del. 2001) (dismissing Section 544(b) claim because the complaint was "deficient").

60.    Here, the Complaint failed to allege the existence of a qualifying creditor at the time of the Transfer, through which Appellee could assert claims under Section 544(b). Whether in fact such a creditor existed is not the issue, the issue is whether Appellee properly pled its cause of action. Because the Complaint is procedurally deficient, the Bankruptcy Court lacked jurisdiction to address the

merits and had no power to grant substantive relief on the underlying causes of action.   In denying Appellants' SJM as to Appellee's Section 544(b) claims, the Bankruptcy Court erred as a matter of law and its ruling must be reversed and the matter remanded.

## VI.   <u>CONCLUSION</u>

61.    Appellants respectfully request that this Court (1) reverse the First Order to the extent it (a) grants summary judgment in favor of Appellee and against Appellant Niknim, (b) denies Appellants' SJM.

Dated: June 26, 2025

Respectfully submitted,
ROSEN & ASSOCIATES, P.C.

*/s/ Sanford P. Rosen*
By: Sanford P. Rosen
P.O. Box 1274
Shelter Island, NY 11965
Tel: (212) 223-1100

*Co-counsel for Appellants*

# ADDENDUM 1

## Rules 56 of The Federal Rules of Civil Procedure

Rule 56. Summary Judgment

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party;or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

## ADDENDUM 2

## Sections 544 and 548 of The United States Bankruptcy Code

**11 U.S. Code § 544** - Trustee as lien creditor and as successor to certain creditors and purchasers

(a)The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1)a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2)a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3)a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b)    (1)Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2)Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2596; Pub. L. 98–353, title III, § 459, July 10, 1984, 98 Stat. 377; Pub. L. 105–183, § 3(b), June 19, 1998, 112 Stat. 518.)

**11 U.S. Code § 548** - Fraudulent transfers and obligations

(a)      (1)The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A)made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i)received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)  (I)was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV)made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

(2)A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which—

(A)the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

(B)the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

(b)The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c)Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d)    (1)For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

(2)In this section—

(A)"value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

(B)a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

(C)a repo participant or financial participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment;

(D)a swap participant or financial participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer; and

(E)a master netting agreement participant that receives a transfer in connection with a master netting agreement or any individual contract covered thereby takes for value to the extent of such transfer, except that, with respect to a transfer under any individual contract covered thereby, to the extent that such master netting agreement participant otherwise did not take (or is otherwise not deemed to have taken) such transfer for value.

(3)In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution—

(A)is made by a natural person; and

(B)consists of—

(i)a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

(ii)cash.

(4)In this section, the term "qualified religious or charitable entity or organization" means—

(A)an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

(B)an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

(e)    (1)In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if—

(A)such transfer was made to a self-settled trust or similar device;

(B)such transfer was by the debtor;

(C)the debtor is a beneficiary of such trust or similar device; and

(D)the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

(2)For the purposes of this subsection, a transfer includes a transfer made in anticipation of any money judgment, settlement, civil penalty, equitable order, or criminal fine incurred by, or which the debtor believed would be incurred by—

(A)any violation of the securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; or

(B)fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78l and 78o(d)) or under section 6 of the Securities Act of 1933 (15 U.S.C. 77f).

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2600; Pub. L. 97–222, § 5, July 27, 1982, 96 Stat. 236; Pub. L. 98–353, title III, §§ 394, 463, July 10, 1984, 98 Stat. 365, 378; Pub. L. 99–554, title II, § 283(n), Oct. 27, 1986,