**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| ORION HEALTHCORP, INC.[1] | Case No. 18-71748 (AST) |
| Debtors. | (Jointly Administered) |

------------------------------------------

| | |
|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Pro. No. 20-08049 (AST) |
| | Trial:    July 24, 2024 |
| | Time:    9:30 a.m. |
| Plaintiff, | Place:   Courtroom 960 |
| | U.S. Bankruptcy Court |
| | 290 Federal Plaza |
| v. | Islip, NY |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | PTC:    July 17, 2024 |
| | Time:   1:30 p.m. |
| Defendants. | |
| | Judge:  Hon. Alan S. Trust |

------------------------------------------

**NOTICE OF ERRATA AND LODGING OF CORRECTED EXHIBIT A TO TRIAL
BRIEF OF PLAINTIFF, HOWARD M. EHRENBERG AS LIQUIDATING TRUSTEE OF
<u>ORION HEALTHCORP, INC.</u>**

        PLEASE TAKE NOTICE that, in connection with the trial in the above-captioned

adversary proceeding, Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of

Orion Healthcorp., Inc. ("Plaintiff") hereby files this Notice of Errata and lodges a true and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

complete copy of the Ruling Conference transcript for the hearing dated April 10, 2024, in the

above referenced adversary which includes adversary no. 20-08052(AST) (as the matters were

called together on calendar).


Dated: August 8, 2024                  Respectfully submitted,
                                       PACHULSKI STANG ZIEHL & JONES LLP


                                       /s/ *Jeffrey P. Nolan*
                                       Ilan D. Scharf, Esq.
                                       Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
                                       PACHULSKI STANG ZIEHL & JONES LLP
                                       780 Third Avenue, 34th Floor
                                       New York, New York 10017
                                       Telephone:    (212) 561-7700
                                       Facsimile:    (212) 561-7777

                                       *Counsel for Plaintiff, the Liquidating Trustee*

# EXHIBIT A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   Case No. 18-71748-ast

4   - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6   ORION HEALTHCORP, INC., et al.,

7           Debtor.

8   - - - - - - - - - - - - - - - - - - - - - - - - - x

9   Adv. Case No. 20-08049-ast

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11  HOWARD M. EHRENBERG, in his capacity as liquidating trustee

12  of Orion HealthCorp, Inc., et al.,

13                  Plaintiffs,

14          v.

15  ARVIND WALIA; NIKNIM MANAGEMENT, INC.,

16                  Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - x

18  Adv. Case No. 8-20-08052-ast

19  - - - - - - - - - - - - - - - - - - - - - - - - - x

20  HOWARD M. EHRENBERG in his capacity as LIQUIDATING TRUSTEE

21  OF ORION HEALTHCORP, INC., et al.,

22                  Plaintiffs,

23          v.

24  ABRUZZI INVESTMENTS, LLC,

25                  Defendants.

Page 2

```
 1   - - - - - - - - - - - - - - - - - - - - - - - - - - x

 2                    United States Bankruptcy Court

 3                    290 Federal Plaza

 4                    Central Islip, New York 11722

 5

 6                    April 10, 2024

 7                    11:29 AM

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN
```

Page 3

1   HEARING re Recovery Of Certain Transfers

2

3   HEARING re Summary Judgment

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:   Rita Weltsch

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   PACHULSKI STANG ZIEHL & JONES LLP

 4        Attorneys for Trustee Howard Ehrenberg

 5        780 Third Avenue, 34th Floor

 6        New York, NY 10017

 7

 8   BY:  JEFFREY P. NOLAN

 9

10   ROSEN & ASSOCIATES

11        Attorneys for Arvind Walia

12        747 Third Avenue

13        New York, NY 10017

14

15   BY:  SANFORD P. ROSEN

16

17   THE LAW OFFICE OF EUGENE R. SCHEIMAN, PLLC

18        Attorneys for Niknim Management Inc.

19        570 Lexington Ave, Suite 1600

20        New York, NY 10022

21

22   BY:  EUGENE R. SCHEIMAN

23

24

25
```

Page 5

```
1    GIULIANO LAW, P.C.

2         Attorney for the Counter-Claimant Abruzzi Investments

3         445 Broadhollow Road, Suite 25

4         Melville, NY 11754

5

6    BY:  ANTHONY F. GIULIANO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                        Page 6

 1                      P R O C E E D I N G S

 2              MR. ROSEN:  Good morning, Judge.

 3              THE COURT:  Good morning.

 4              MR. ROSEN:  You're muted, Judge.

 5              THE COURT:  That will make for a short ruling

 6    conference.

 7              MR. ROSEN:  Sorry.  That's better.  We can hear

 8    you now.

 9              THE COURT:  I've been ruling for the last hour-

10    and-a-half.  You guys didn't hear it?

11              MR. ROSEN:  I'm so sorry.  Can you do it again?

12              THE COURT:  Sorry, my throat is sore now.

13              CLERK:  Good morning.  I am Alexis -- excuse me.

14              THE COURT:  It's contagious.

15              CLERK:  Good morning.  I am Alexis Hennigan,

16    backup courtroom deputy for Chief Judge Alan S. Trust

17    presiding.  These hearings are being recorded.  Please speak

18    clearly.  Once you hear your case called, please give your

19    appearance.  And remember, before speaking please state your

20    name so we can get a clear record of who is appearing.  All

21    parties not speaking, please put your phone on mute.

22              Case Number 20-08049, Howard M. Ehrenberg v.

23    Arvind Walia, et al, and Case Number 20-08052, Howard M.

24    Ehrenberg v. Abruzzi Investments LLC, et al.

25              THE COURT:  Let's take appearances please.  First
```

Page 7

1    in Walia.

2            MR. ROSEN:  Good morning, Judge.  Sanford Rosen,

3    Rosen & Associates.  And we are counsel for the Defendants.

4            MR. SCHEIMAN:  Good morning, Your Honor.  Eugene

5    Sheiman with the Law Firm of Eugene Scheiman, co-counsel for

6    the Defendants.

7            MR. NOLAN:  Good morning, Your Honor.  Jeff Nolan

8    appearing on behalf of the Plaintiffs, Howard Ehrenberg, the

9    Trustee of the Orion Liquidating Trust.

10           MR. EHRENBERG:  Good morning, Your Honor.  I'm

11   Howard Ehrenberg, the liquidating trustee.

12           THE COURT:  All right.  Do we have counsel in

13   Abruzzi also?

14           MR. GIULIANO:  Yes, Your Honor.  Good morning.

15   Good morning, Your Honor.  Anthony Giuliano for the

16   defendants in the Abruzzi matter.

17           THE COURT:  All right.  And Mr. Nolan, you're

18   still representing Mr. Ehrenberg in Abruzzi?

19           MR. NOLAN:  Yes, Your Honor.  Jeff Nolan appearing

20   on behalf of the plaintiff in the 08052 Abruzzi adversary on

21   behalf of the plaintiff.

22           THE COURT:  All right.  I'm going to start with

23   the ruling conference in 20-08052, Ehrenberg v. Abruzzi

24   Investments and John Petrozza.

25           This is the Court's ruling made in narrative form

Page 8

1    under Rule 7052 and will include the Court's findings of

2    undisputed facts and conclusions of law.  This is a core

3    proceeding under Title 28, Section 157(b)(2)(H).  The venue

4    is proper in this court.  Due and proper notice of the

5    various motions have been provided to the parties.  The

6    Court has before it Plaintiff-Trustee's motion for summary

7    judgment, the Defendant's cross-motion for summary judgment,

8    and motion to strike, which raises various evidentiary

9    issues.

10           The Court has determined that the following facts

11   are not subject to a genuine dispute and are therefore

12   established in this case pursuant to Rule 56(g) of the

13   Federal Rules of Civil Procedure as incorporated by Rule

14   7056.  The Court will also address the myriad evidentiary

15   objections raised by the Defendants to the extent that they

16   relate to the determination that this Court has made as to

17   what facts are not in genuine dispute.

18           This adversary proceeding revolves around one

19   payment, a $250,000 transfer made to one or more of the

20   defendants.  That transfer came prepetition from funds that

21   belonged to one or more of the debtors.  Those funds of

22   $250,000 were ultimately repaid, but repaid to a non-debtor

23   entity.  However, for purposes of this summary judgment

24   motion, the only issue before the Court is the transfer that

25   was made of the $250,000.

Page 9

1          The Court has determined for the reasons that

2     follow to deny both parties' cross-motions for summary

3     judgment and will issue a trial scheduling order on the

4     pending claims.

5          The Debtors are the various multiple entities that

6     are listed in the adversary proceeding.  I won't recite all

7     18 or so of them in the record, but they are apparent on the

8     face of the adversary.

9          Those entities prepetition operated a consolidated

10    enterprise of companies which were aggregated through a

11    series of acquisitions and operated in the healthcare sector

12    space, primarily in revenue and practice management.

13         At all times relevant, John Petrozza, who I will

14    refer to as Petrozza, has been a resident of the State of

15    Florida who did business in New York.  His entity, Abruzzi

16    Investments, is a Limited Liability Company that had no

17    employees, no officers, and no directors but was managed by

18    Mr. Petrozza.  I'll refer to them collectively as

19    Defendants.  The only activity undertaken by Abruzzi was to

20    invest money on Mr. Petrozza's behalf.

21         Between 2015 and 2016, Mr. Petrozza considered

22    Paul Parmar, who was the primary principal of the Debtors,

23    as a close friend.  Mr. Parmar was at all relevant times the

24    primary operating person, officer, and controlling

25    shareholder behind the Debtors.

1          In June of 2013, Mr. Petrozza commenced his

2    business relationship with the Debtors when he was

3    approached by Mr. Parmar and asked to invest $4 million in

4    Constellation Healthcare Investment, which I'll refer to as

5    CHI, which is a non-debtor entity.  CHI allegedly held an

6    ownership interest in the Debtor entity, Orion HealthCorp

7    Inc., which I will refer to as Orion.  According to the

8    Defendants, their purpose in investing $4 million in CHI was

9    to acquire 100 percent ownership interest in Orion.  Mr.

10   Petrozza subsequently made the $4 million investment in what

11   he believed was CHI.  Additionally, he paid approximately

12   $300,000 to Orion to cover IPO and expenses associated with

13   his investment.  The money paid by Mr. Petrozza was sent to

14   Parmar and subsequently deposited into an IOLTA account held

15   at Robinson Brog Leinwald Greene Genovese & Gluck, referred

16   to as Robinson Brog, in the name of the non-debtor entity,

17   Constellation Health LLC.

18          In December of 2015, the United States District

19   Court for the Southern District of Texas entered a judgment

20   against Orion in the amount of $194,185.  That Southern

21   District of Texas judgement ultimately resulted in a proof

22   of claim being filed in the bankruptcy case and assigned as

23   Claim Number 1000.  That judgment remained outstanding at

24   the time the Debtors filed for bankruptcy relief.

25          On March 9th of 2016, a lawsuit was filed against

Page 11

1    the debtor entities Physician Practice Plus and CHT by a

2    plaintiff called Criterions LLC.  On November 30th of 2017,

3    an adverse judgement was entered against those debtors,

4    Physician Practice and CHT, for some $77,000.  That

5    judgement also remained outstanding at the petition date.

6            In November of 2016 as part of a large-scale

7    private transaction involving taking CHT private, Mr.

8    Petrozza met with Mr. Parmar and the board of directors who

9    approved to go-private transaction so they could all make "a

10   gazillion dollars".  Petrozza asserted he was an investor in

11   one or more of the debtors at the time of the go-private

12   transaction and wanted to receive a multiple on his $4

13   million investment.

14           Along the way, several fictitious entities have

15   been created to represent ownership of the equity of CHT.

16   One of those entities was Lexington Landmark Services, Inc.,

17   which as far as Mr. Parmar knew, did not exist as a

18   legitimate business.  While his name was signed on certain

19   documents, he claimed his signature was forged and that he

20   never gave Robinson Brog authority to receive monies on

21   behalf of Landmark Services.

22           Mr. Petrozza testified that on May 24th of 2017,

23   he asked Mr. Parmar for a personal loan of $200,000.  He

24   testified that he wanted the money in order to acquire a

25   lease to a certain property in Florida.  The Court has not

Page 12

1    been provided with any specifics concerning what property or

2    what lease.

3              In any event, on that same day, on May 24th, 2017,

4    Mr. Parmar directed partner Mitchell Greene at Robinson Brog

5    to wire $250,000 from the Debtor's IOLTA account to Mr.

6    Abruzzi.  Later that same day at 8:39 p.m., Parmar emailed

7    Mr. Greene to wire the $250,000 and he did not care which

8    account the funds were taken out of.

9              The next day, May 25, Robinson Brog confirmed to

10   Mr. Parmar that the $250,000 wire was in fact sent from the

11   Debtor's IOLTA account to Abruzzi.  The funds were sent from

12   an account held in the name of Constellation Health/CHT

13   Closing.  That transaction is what the pleadings refer to

14   and what the Court will refer to as the Transfer.

15             The Debtor's books and records evidence no

16   antecedent debt owed to the Defendants at any time during

17   the calendar year 2017.  Mr. Petrozza could not explain why

18   he asked for $200,000 but received $250,000.

19             Mr. Petrozza further testified that shortly after

20   receiving the wire, the deal for the property that he was

21   working on in Florida fell through and he no longer needed

22   the money.  He then advised his assistant, Lisa Basich, to

23   return the money to Mr. Parmar.  Mr. Parmar then provided

24   wiring instructions to Ms. Basich, who then directed that

25   the funds be wired back as directed by Mr. Parmar.

Page 13

1          On June 28th of 2017, $250,000 was liquidated from

2     an investment account of Abruzzi and forwarded to Mr.

3     Petrozza's checking account.  The next day, Mr. Abruzzi

4     wired $250,000 to an entity called Sunshine Star LLC.

5     Sunshine Star was a newly-created entity, not a debtor

6     entity, but was created by or for the benefit of Mr. Parmar

7     and his at that time girlfriend, Elena Sartison.  The

8     Debtor's books and records reflect no antecedent debt owed

9     to Sunshine Star during 2017.

10          In October of 2017, Sunshine Star closed the bank

11     account into which the $250,000 had been wired.  Defendants

12     admit that the transfer to Sunshine did not benefit any of

13     the Debtors and that the Defendants had provided no services

14     for the debtors.

15          The multiple entities which ended up filing for

16     bankruptcy on March 16, 2018 include the entities the Court

17     has described thus far.  The Debtor's cases had been jointly

18     administered.

19          In July of 2018, Defendant Abruzzi Investment,

20     filed Claim Number 10062, identifying itself as a

21     shareholder of CHT.  That day Defendant also filed Claim

22     10063, asserting it held a 49 percent member interest in

23     CHT.

24          This adversary proceeding was commenced in March

25     of 2020.  The only transaction at issue for summary judgment

Page 14

1    purposes, as I said, is the $250,000 wire transfer sent to

2    Abruzzi on May 25, 2017.  That transfer was from the funds

3    that belonged to one or more of the Debtors.

4         The parties have filed various pleadings

5    throughout this case, including and answer and counterclaim,

6    a plaintiff's motion for summary judgment, defendant's

7    cross-motion for summary judgment, and motions to strike

8    various of the evidentiary affidavits submitted by the

9    trustee.  The various motions have been on submission with

10   the Court since May of 2022.

11        I will let the parties know it is not this Court's

12   practice to hold matters on submission for nearly that

13   length of time.  So the Court's apologies to the parties for

14   the length of time it's taken to get to today's rulings.

15        Standards for summary judgement are well known by

16   the parties.  The Court won't recite them.  The central

17   issue is whether or not there exists genuine issues of

18   material fact -- whether or not there are genuine issues of

19   material fact that are in dispute such that judgment as a

20   matter of law can or cannot be awarded to either party.

21        Where cross-motions for summary judgment are

22   pending, the Court must make an independent valuation of

23   each motion separately.

24        Even though the Court is denying both summary

25   judgement motions because the matter will ultimately be

Page 15

1    tried, I'm going to go ahead and give you my evidentiary

2    rulings on the affidavits that were presented to the Court

3    because the Court anticipates those affidavits will appear

4    again at the time of trial and there is no reason to redo

5    these objections.

6           With respect to the affidavit of Edith Wong and

7    the declaration of Frank Lazzara, Defendants have objected

8    under Rule 901 of the Federal Rules of Evidence, which is an

9    authentication requirement.  The caselaw that addresses Rule

10   901 is fairly replete that the burden of authentication is

11   not particularly high.  The Defendant objects to the Wong

12   affidavit and Lazzar declarations, including emails and

13   other business records that are identified in those

14   declarations because Ms. Wong and Mr. Lazzar did not

15   constitute witnesses with knowledge of the items that are

16   par of what they are claimed to be.

17          However, in a related adversary proceeding arising

18   out of the same Orion case, the same evidentiary objections

19   were raised by the same counsel as here.  Anecdotally, the

20   district court in that action determined that personal

21   knowledge is not a requirement for the authentication of

22   written documents in the Second Circuit.  See Aquila Alpha

23   v. Ehrenberg, 2023 WL 2164268 *4 (E.D.N.Y. Feb. 22, 2023),

24   affirmed by the Second Circuit, 95 F.4th 98.

25          The evidentiary objections to the Wong affidavit

Page 16

1    and Lazzar affidavit for 901 purposes are overruled.

2    There's an adequate basis for the Court to accept those

3    documents as part of the summary judgment record, which

4    means that they can then become part of the trial record.

5            As to Ms. Sartison, the Debtor also -- the

6    Defendants also objected to her declaration which contained

7    the opening and closing bank statement of M&T for Sunshine

8    Star, again, based on authentication.  Again, there is an

9    adequate basis that's set out in the Sartison affidavit to

10   authenticate those documents, including the Ms. Sartison's

11   declaration that "At the request and direction of Mr.

12   Parmar, I opened an account at M&T Bank for Sunshine Star

13   LLC."

14           As the creator of the bank account for Sunshine,

15   there is clearly enough circumstantial evidence to

16   authenticate the opening and closing statements of that very

17   same bank account.  Refer you all back again to Acquila

18   Alpha.  Both the District Court's opinion and the Second

19   Circuits affirmed this.

20           The Defendants also object to the Wong and Lazzar

21   declarations as inadmissible expert testimony.  However,

22   there is no specific statement contained in either

23   declaration which should be stricken because it is providing

24   an opinion.  Both of those declarations were offering fact

25   testimony and aren't proffered as expert testimony, so 703

Page 17

1    is irrelevant.

2            As far as the Defendant's hearsay objection, that

3    too is overruled obviously under the well-known hearsay

4    exception for business records under 803(6).  The records

5    attached are business records and the objection is

6    overruled.  Hearsay objections and business records

7    exceptions have been routinely construed in favor of

8    admissibility due to the general trustworthiness of

9    regularly-kept records and the need for this type of

10   evidence in many cases, particularly cases which an

11   independent trustee is appointed to oversee the

12   administration of a case and/or litigation arising

13   therefrom.  I'll refer the party to Arista Records v. Lime

14   Group, 784 F.Supp.2d 398, 421 and Chevron Corp. v. Donziger,

15   974 F.Supp.2d 362, 691-692.

16           With respect to the question of whether or not the

17   $250,000 was property of the estate, the Court has

18   determined that as a matter of law, the funds transferred

19   were property of the bankruptcy estate -- would have been

20   property of the bankruptcy estate had the bankruptcy estate

21   had the bankruptcy case existed at the time that the

22   transfer occurred.  The record is undisputed that the

23   Debtors utilized the IOLTA account at Robinson Brog to hold

24   large amounts of funds and for multiple transactions.  Just

25   because the fund were held in an IOLTA account does not make

Page 18

1    them not funds of the Debtors.  New York Fiduciary Law

2    Section 4971 is clear that monies that are held by an

3    attorney or held in a fiduciary capacity from a client for a

4    client and/or for a designated beneficial owner.  The

5    Debtors had control and custody over the funds while they

6    sat in the Robinson Brog account and had the power to direct

7    their disposition.

8            The  Court finds no genuine dispute as to whether

9    or not the funds transferred to the Defendants are

10   recoverable as property of the estate.

11           In terms then of the substantive legal theory,

12   trustee moves forward first on Bankruptcy Code Section

13   548(a)(a), which allows the recovery of any property that

14   was transferred with actual intent to hinder, delay, or

15   defraud any entity to which the Debtor was or became liable,

16   as well as New York DCL Section 276, which provides that

17   every conveyance made and every obligation incurred with

18   actual intent to hinder, delay, or defraud present or future

19   creditors is fraudulent.  The two statutes are adequately

20   identical for the Court to conduct one analysis of both.

21   See Janitorial Close-out City Corp., 2013 WL 492375 *5

22   (Bankr. E.D.N.Y. 2013).

23           Transfer may be avoided either under 548(a) of the

24   Bankruptcy Code or New York DCL 276.  If the Debtor had an

25   interest in the property transferred, which is undisputed

Page 19

1    here -- as to which there is no genuine dispute here.  The

2    transfer occurred within two years of the petition date.

3    That is undisputed here.  And the transfer was made with

4    actual intent to hinder, delay, or defraud a creditor.

5    That's where the factual dispute arises.

6            The trustee has the burden of establishing the

7    actual intent of the transfer or debtor by clear and

8    convincing evidence.  See In re Jacobs, 394 B.R. 646, 658

9    (Bankr. E.D.N.Y. 2008).

10           Because it is difficult to find direct evidence of

11   actual fraudulent intent, courts in this circuit look to

12   certain badges of fraud which can constitute circumstantial

13   evidence of fraudulent intent.  See In re Kaiser, 722 F.2d

14   1574, 1582-1583 (2d. Cir. 1983).  The parties generally

15   agree on what those badges of fraud can include.  Lack of

16   consideration, close association between the parties, the

17   financial condition of the transferor, chronology of events

18   and transactions under inquiry.

19           The Court has determined that a genuine issue of

20   fact disputes as to whether or not there was adequate

21   consideration for the transfer of the $250,000.  In the

22   shortest way to state it, Plaintiff asserts that it was

23   simply a transfer for no consideration.  The Defendant

24   asserted it was a loan, and a loan supported by a promise to

25   repay.

1    The Defendants rely on certain text messages to or

2    from Mr. Petrozza where he requests the $200,000 in exchange

3    for a promise to repay it.  The record is clear though that

4    there is no signed promissory note.  There doesn't appear to

5    be any interest charged for the loan or any collateral

6    provided.

7    Based upon the entire record before the Court,

8    there is a genuine dispute of material fact as to whether or

9    not there was consideration for the transfer at the time the

10   transfer was made and whether or not that consideration is

11   adequate.

12   On the close relationship, there is a close

13   relationship in this record between Petrozza and Mr. Parmar

14   for the reasons that I've already outlined.  There doesn't

15   appear to be any retention of possession or benefit of the

16   property by the Debtor once transferred.  Funds went to

17   Petrozza.  Petrozza then paid the funds back in the

18   equivalent amount that he received, although he didn't pay

19   it into the right entity.

20   As far as the financial condition of the Debtor

21   before or at the time of the transfer, the undisputed

22   evidence before the Court based upon an expert opinion from

23   B. Reily is that the Debtors were insolvent on the measuring

24   date, the probative date, the date of the transfer.  So

25   insolvency condition here exists.

Page 21

1          In addition, the record is clear that there was

2     the Southern District of Texas judgement outstanding at the

3     time -- prior to the time that the transfer was made and the

4     FBI had seized over $20 million from the IOLTA account prior

5     to the time of the transfer.

6          Questions certainly do exist concerning the

7     overall chronology of events and whether or not the

8     transaction should have been considered legitimate at the

9     time that it was made, but that is a fact issue for the

10    court to determine after trial.

11         With respect to the Trustee's cause of action for

12    a constructively fraudulent transfer and New York DCL 273-a,

13    New York law is clear that any conveyance made without fair

14    consideration when debtor is a defendant in action for money

15    judgement and a judgement has been docketed against him can

16    be set aside as a constructively fraudulent transfer.  To

17    prevail, the Plaintiff must establish that the conveyance

18    was made without fair consideration and for the same reasons

19    that I discussed in connection with the actual fraudulent

20    transfer claim.  The Court has found a question of fact as

21    to whether or not there was fair consideration for the

22    transfer at the time it was made.  The other elements under

23    273-a have been satisfied as a matter of law by the trustee.

24         Again, as I've noted, the expert insolvency report

25    of Craig Jacobson from B. Reily is unrebutted in the summary

Page 22

1    judgement record.  So Orion was insolvent on May 25, 2017.

2              The fair consideration under Section 272 of DCL,

3    the Court has also found a question of fact as to whether or

4    not the consideration -- whether consideration was provided

5    and whether that consideration was fair for 272 purposes.

6    The Court has also found a question of fact as to whether or

7    not the defendants were operating in good faith at the time

8    that the transfer was made.  See Sardis v. Frankel, 113

9    A.D.3d 135, 141-142.

10             So for all of those reasons, both motions for

11   summary judgement have been denied.  And again, the motion

12   to strike as to the evidence, the Court has already ruled on

13   that.

14             The Court has also noted in the pleadings that the

15   parties have a serious disagreement about the impact of

16   Section 550 of the Bankruptcy Code.  550 is only triggered

17   once a transfer has been avoided.  I won't spend any time

18   talking about 550 because to this point no transfer has been

19   avoided so there is no reason to talk about who might

20   ultimately have liability for the transfer if it were set

21   aside.

22             I'm going to set a trial on the claim in the

23   adversary proceeding.  As I said, for Rule 56(g) purposes,

24   the facts that I've identified as undisputed are undisputed

25   for trial purposes.  The trial will be limited to the

Page 23

1    matters on which the Court stated there to be genuine issues

2    of material fact.  The Court's intention is to set the

3    matter for trial on July 24th of this year so that the

4    matter can be tried this summer.  The Court will issue a

5    trial scheduling order consistent therewith.

6              Mr. Nolan, I'm going to ask you and Mr. Giuliano

7    to work on a short form of order denying both summary

8    judgment motions.  You don't need to repeat all of the

9    evidentiary rulings that I've made on the record, but they

10   will -- as I said, those evidentiary rulings will stand

11   should the same declarations and affidavits be submitted at

12   the time of trial, which I suspect they might well be.

13             All right?

14             MR. NOLAN:  Yes, Your Honor.  Thank you.

15             MR. GIULIANO:  Thank you, Your Honor.

16             THE COURT:  Thank you both.

17             THE COURT:  All right.  I'm going to turn now back

18   to 20-08049, Trustee v. Walia.  This too is an adversary

19   proceeding seeking recovery of certain transfers.  The

20   causes of action set out in the adversary proceeding are

21   core proceedings, which this Court may hear and determine

22   under Title 28, Section 157(b)(2) and the orders of

23   reference in effect in the Eastern District of New York and

24   is proper before this Court.

25             As with the prior adversary proceeding, these

Page 24

1    matters have been pending for some time.  And again, it's

2    not the Court's practice to let matters fester for this

3    long.  Apologies to the parties for the length of time it's

4    taken to get to today's ruling.

5            This too is a ruling in narrative form.  And under

6    Bankruptcy Rule 7052, it includes the Court's findings of

7    undisputed facts as well as conclusions of law in accordance

8    with 2056(g) of the Federal Rules of Civil Procedures

9    incorporated by Bankruptcy Rule 7056, the facts that are

10   stated by this Court to be undisputed are undisputed for

11   purposes of the ultimate trial.

12           This case involves two transfers sought to be

13   recovered by the trustee through summary judgement.  And

14   there's also a partial summary judgement motion by the

15   Defendants.  I'll address these together.

16           First, the trustee seeks recovery of a $2.5

17   million wire transfer made on April 15 of 2016 from an M&T

18   bank account of the Debtors, the Debtor, CHT, that was made

19   to a JP Morgan Chase account, Chase bank account of the

20   defendant, Niknim.  A transfer was made at the direction of

21   Mr. Walia and was made in connection with -- arguably made

22   in connection with an asset purchase transaction, which I'll

23   describe in more detail and defined as the Porteck

24   transaction.

25           The second claim is to recover a $1,520,000 wire

Page 25

1    transfer made in June of 2017 from the Debtor's Robinson

2    Brog IOLTA account, law firm IOLTA account.  That transfer

3    was sent to a JP Morgan Chase bank account of Niknim.  I'll

4    refer to that as the second transfer and the $2.5 million

5    wire as the first transfer.  The parties have provided an

6    extensive set of -- extensive joint set of undisputed facts.

7    The parties then separately provided their own proposed

8    undisputed facts.

9            Trustee claims that both the first transfer and

10   the second transfer either intentional fraudulent transfers

11   and/or constructive fraudulent transfers.  The defendants in

12   their partial summary judgement motion essentially seek

13   dismissal of the trustee's claims on a standing theory that

14   the trustee lacks standing to use Section 544 of the

15   Bankruptcy Code to invoke the remedies of state law

16   creditors in the New York DCL.

17           For the reasons to follow, the Court is denying

18   the trustee's request for summary judgment on the first

19   transfer, being the $2.5 million wire transfer made in April

20   of 2016, is granting summary judgment to the trustee on the

21   second transfer claim, the $1,520,000 transfer made to

22   Niknim in June of 2017.  All other relief sought by the

23   Trustee is denied and the Defendant's motion for partial

24   summary judgement is also denied.

25           I am going to direct the parties to return to

Page 26

1    mediation and I'm going to set a trial date in June of 2024.

2    But I didn't want to jump past that part before I go through

3    the elaborate ruling.  But this case will also be set for

4    trial on the remaining claims on July 24th, but I am

5    directing the parties to return to mediation.

6           At all relevant times, the Debtors were a

7    consolidated enterprise of several companies aggregated

8    through a series of acquisitions and operating in the

9    healthcare space, primarily in revenue and practice

10   management services for physician practices.  The debtors

11   are as stated in the pleadings.  I won't read all of their

12   names back into the record, but they do include the entity

13   Constellation Healthcare Technologies, which is a debtor

14   that I'll refer to as CHT.  CHT maintained a checking

15   account at all relevant times at M&T Bank.

16          In 2015, Mr. Paul Parmar was the chief executive

17   officer of CHT and was looking to acquire a medical billing

18   company.  He became interested in purchasing Porteck

19   Corporation, which I will refer as Porteck.  Se joint

20   statement Paragraph 26.  At that time, Porteck was a

21   technology services company in the healthcare space owned,

22   controlled, and operated by Defendant, Arvind Walia.  Mr.

23   Walia was its CFO.

24          At that time, Porteck had two business lines, AHMS

25   and PC Advantage, which I will refer to as PCA, which both

Page 27

1    provided medical billing services.

2          Niknim Management Inc, which I call Niknim, is a

3    New York corporation registered and operating from Mr.

4    Walia's residence on 27 Kettlepond Road in Jericho, New

5    York.  Mr. Walia was the sole officer, employee, and

6    shareholder of Niknim.  Mr. Walia formed Niknim to manage

7    his consulting work, take care of his personal investments,

8    and family trust.  Niknim followed no corporate formalities

9    and maintained no resolutions of shareholders or minutes.

10         In March of 2015, the debtor entity Physician

11   Practices Plus acquired the assets of Porteck pursuant to an

12   asset purchase agreement executed that same month.  I'll

13   call that the Porteck APA.  The sellers were Porteck, Walia,

14   the Walia Trust, and the Janaminder Trust.  Mr. Walia

15   executed the APA on behalf of himself and the Janaminder

16   Trust and Porteck.  The Walia Truste never signed the APA.

17         Mr. Parmar executed the APA on behalf of the

18   debtor, Physicians Practice.  The APA provides for a

19   purchase price of $12.8 million even though Mr. Walia had

20   agreed in writing to sell the Porteck assets for $10.8

21   million.  The purchase price was juiced up -- my phrase, not

22   the parties.  The purchase price was juiced up because Mr.

23   Parmar told Mr. Walia that he needed to add $2 million as

24   "deal fees".  Joint Fact 35.

25         Mr. Walia was unconcerned about the deal price

Page 28

1    being juiced up, Joint Fact 37.

2            In fact, Mr. Walia testified in his deposition

3    that he really paid no attention to what Mr. Parmar was

4    doing when the APA purchase price was set at $2 million more

5    than the parties had agreed.  When asked when you were

6    negotiating with Mr. Parmar or Orion, "Was the purchase

7    price supposed to be $10.8 million?"

8            Answer, "Correct."

9            Question, "When did it change to $12.8 million?"

10           Answer, "At some point Mr. Parmar stated there are

11   fees to close this deal that have to be included in the

12   purchase price.  I said as long as my share of the purchase

13   price doesn't change, it doesn't concern me."  That's Page

14   134 of Mr. Walia's deposition.

15           The evidence in the record is that the actual deal

16   fees, the fees paid to the abstract business advisor's

17   broker, was $192,000.  So one-tenth or so of the nearly $2

18   million by which the purchase price was juiced up.

19           In terms of the value of the assets acquired by

20   the debtor entity, the net asset value of the AHMS business

21   was $1.35 million.  The assets were valued at $2.35 million,

22   but there was still an outstanding $1 million note.  The

23   value of the PCA side was $2,546,000, but there was still an

24   almost half-million note outstanding, an almost $1.9 million

25   loan outstanding.  So the actual value of the assets as

Page 29

1    acquired from Porteck at the time that they were acquired

2    was $1.824 million being the net asset value of AHMS and the

3    net asset value of PCA.

4        Despite the written record of the asset valuation,

5    Mr. Parmar and Mr. Walia agreed to the value of the assets

6    being $10.8 million and apparently was five times the 204

7    EBITDA of $2.2 million.  And again, that five times multiple

8    is before the $2 million was added into the transaction.

9        Closing did occur in March of 2015.  Bank records

10   provided in the summary judgement evidence memorialized a

11   wire of $9.8 million from the debtor Constellation

12   Healthcare Technologies to the IOLTA account at Robinson

13   Brog, which was used to close the Porteck sale.

14       Of that $9.8 million, $6.8 million was wired on to

15   Mr. Walia and $3 million went sideways in the vernacular to

16   another non-debtor entity controlled by Mr. Parmar called

17   First United Health.

18       The Court notes this portion of the extensive

19   factual background to the extent that it will ultimately

20   relate to the Court's conclusions after trial as to whether

21   or not there was an intentionally-fraudulent transfer in the

22   second stage of the transaction because the trustee is not

23   seeking to recover the $6.8 million paid to Walia in the

24   Porteck transaction.

25       Once the Porteck deal closed shortly thereafter in

Page 30

1    June of 2015, Mr. Walia was installed as the chief executive

2    officer of the Debtor's main operating company, Orion Health

3    Corp., and became the chief technology officer of

4    Constellation Healthcare Technologies.  He continued to

5    serve in those capacities through the fall of 2018.

6          While Mr. Walia was CEO of Orion and CTO of

7    Constellation Health Technologies, being on or about April

8    15 of 2016, the debtor, Constellation Health Technologies,

9    transferred $2.5 million from its JP Morgan account to

10   Niknim.  That's what I referred to earlier as the first

11   transfer.

12         The dispute between the parties seems to center

13   around a portion of the asset purchase agreement which

14   concerns the alleged balance of the purchase price and the

15   need for funds to be escrowed in accordance with Section 1.6

16   of the APA.  In his affidavit at Docket 64, Mr. Walia

17   testifies that the stated purpose of the escrow arrangement

18   was to protect the rights of Physicians Practice, the actual

19   acquirer, as purchaser under the Porteck APA to receive $2.5

20   million to the extent such funds were required to indemnify

21   Physicians Practice.

22         As a practical matter, the arrangement was not

23   necessary to protect the buyer because it simply withheld

24   payment of the $2.5 million.

25         As far as what the parties' written agreement

Page 31

1    calls for, however, Section 1.6 of the APA provides that for

2    purposes of partially-securing the seller's obligations, the

3    amount of $2,500,000 shall be delivered by the buyers at

4    closing to the escrow agent by wire transfer of immediately

5    available funds pursuant to an escrow agreement

6    substantially in the form attached as Exhibit A to the APA.

7    Other conditions are stated in the APA concerning what the

8    escrow agreement would look like.

9         Section 1.6 clearly required certain conditions of

10   the escrow including that it be established and that it be

11   funded upon occurrence of certain events.  However, no

12   escrow agreement was ever executed and no escrow account was

13   ever established.  See Joint Facts 46 through 49.

14        Despite Walia's assertion that the $2.5 million

15   was owed to him or his company, the books and records of the

16   Debtor reflect no antecedent debt at the year ending

17   December 2015.  There is no antecedent debt reflected --

18   there is no debt reflected on the books and records as being

19   owed to Walia or Niknim.  The Debtor's books and records

20   reflect no debt being owed as a result of the Porteck

21   transaction as of the end of 2015.

22        The Debtor's 2016 books and records did not

23   evidence the satisfaction of any antecedent debt of $2.5

24   million or any increase in the net assets of the Debtors as

25   a result of that $2.5 million transfer.

Page 32

1        The Trustee asserts that the $2.5 million transfer

2    was fraudulent based in part on an email that Mr. Parmar

3    sent to Mr. Walia on the date of the transfer, stating, "I

4    am willing to give you $3.5 million in return for you to

5    allow me to structure it property internally, which requires

6    I close the file with the $2 million payment."

7        On the same day as that email, the Debtor

8    transferred $2.5 million from its M&T account, the M&T

9    account of CHT to the JP Morgan account of Niknim.  That

10   transfer was sent at Mr. Walia's direction.  The parties

11   concede that that transfer occurred within two years prior

12   to the petition date.

13       The second transfer at issue involves a 2017

14   transaction and agreement under which Mr. Walia agreed to

15   sell to Mr. Parmar or a designated entity a software company

16   that Mr. Walia indirectly owned called AllRad Direct LLC,

17   which at that time was a successful software company.  Mr.

18   Walia owned AllRad indirectly through his ownership of an

19   entity, Object Tech Holding LLC.

20       The sale was memorialized by a membership interest

21   purchase agreement, or MIPA, dated June 2017 between Object

22   Tech as seller and Physicians Healthcare Network Management

23   Solutions as buyer.  That entity, Physicians Network

24   Solutions, is not and was not one of the Debtors, but was

25   again a third party entity owned or controlled by Mr.

Page 33

1    Parmar.

2        The MIPA required a due diligence report and the

3    negotiations required the diligence report to be prepared in

4    connection with the sale, but that due diligence report was

5    never completed.  The MIPA required various schedules to be

6    provided.  Those schedules were never completed.  The MIPA

7    had multiple sections which were never completed, such as

8    1.3, earnout payments; 1.4, discharge of debts and

9    liabilities, maintenance of working capital.  The MPIA also

10   called for certain revenue projections, balance sheets or

11   statements of assets and liabilities to be provided.  Those

12   were never provided.  State and federal tax returns that

13   were called for under the MIPA from the sellers were never

14   provided.  And the Debtor's board of directors never

15   approved the purchase.  See Joint Statements of Fact 60 to

16   62, 66, 68, and 69.

17       Despite these deficiencies, the MIPA sale closed

18   in June of 2017 and Debtor's funds, $1,520,000, was wired

19   out of the Robinson Brog IOLTA account to the Niknim bank

20   account at JP Morgan Chase.  Correspondingly, all of the

21   shares of AllRad were transferred, but transferred to the

22   non-debtor entity, Physicians Network Solutions.  No assets

23   were ever transferred in connection with the AllRad Object

24   Tech transaction to any of the debtors.

25       At no point during 2017 did any of the debtors'

Page 34

1    books and records evidence an antecedent debt of $1,520,000

2    or any other debt owed to either of the defendants in

3    connection with Object Tech or AllRad.  In fact, the

4    debtors' books and records do not evidence the satisfaction

5    of any antecedent debt or increase in net assets of the

6    debtors through the acquisition of the interest in Object

7    Tech or AllRad.  The second transfer occurred within eight

8    months prior to the petition date, so well within the two-

9    year period.

10           With respect to the Court's legal determinations,

11   again, I won't recite the standard for summary judgment.

12   It's well-known by the parties.  The Court has determined

13   that there are certain material facts which are not disputed

14   and other material facts as to which a genuine dispute does

15   exist.  I've set out under Rule 56(g) the facts which are

16   undisputed for summary judgment purposes.  And therefore for

17   the remaining portions of the adversary proceeding are also

18   undisputed for trial purposes.

19           I'm first going to turn to Sections 548(a) of the

20   Bankruptcy Code for actual fraudulent transfer and New York

21   DCL 273-A.  Bankruptcy Code Section 548(a)(1)(B) allows a

22   trustee to avoid any transfer of an interest that was made

23   two years prior to the petition date if it was an actual

24   fraudulent transfer.  New York DCL Section 273(a) provides

25   that every conveyance made without fair consideration when

Page 35

1    the person making it is a defendant in an action for money

2    damages or a judgement in such action has been docketed

3    against him, it's fraudulent as to the plaintiff in that

4    action without regard to the actual tent of the defendant if

5    the debtor fails to satisfy the judgement.  See Lyman

6    Commerce v. Lung, 2015 U.S. District LEXIS 51447, *17

7    (S.D.N.Y. 2015).

8            Whereas here a judgment has already been docketed

9    under New York DCL 273-A, there is no requirement that the

10   transfer at issue have rendered the debtor insolvent.  See

11   Cadle Company v. Newhouse, 2002 U.S. Dist. LEXIS 15173

12   (S.D.N.Y. Aug. 16, 2002).

13           Here, there was a final judgment entered in the

14   Southern District of Texas in excess of $200,000 in December

15   of 2015.  That judgement preceded both of the transfers at

16   issue and remained outstanding at the time of the bankruptcy

17   petitions.  Proof of claim was filed on behalf of that

18   judgement creditor.  Thus that federal court judgment is

19   sufficient as a matter of law to satisfy DCL 273-A as to any

20   transfer which was made which lacked fair consideration.

21           Trustee has also alleged under New York DCL 273,

22   274 and 275 that both transfers were not made in good faith

23   or for fair consideration.  Conveyance is vulnerable to

24   attack by a creditor without regard to the actual intent of

25   the transferor if the -- without -- if the transfer is

Page 36

1    considered to have been in constructive fraud of creditors.

2    See Laco X-Ray, 88 A.D.2d 425.

3         The transfer is constructively fraudulent if made

4    without fair consideration of any if the following

5    conditions are met.  The transferor is insolvent or would be

6    rendered insolvent by the transfer in question.  There is no

7    solvency analysis in this adversary proceeding.  Transferor

8    is engaged in or is about to engage in a transaction which

9    has a reasonably small capital or the transferor believes it

10   will incur debt beyond its ability to pay.

11        Even if there is fair consideration, a transfer is

12   constructively fraudulent in the absence of good faith on

13   the part of both the transferor and the transferee.  CIT

14   Group v. 160-09 Jamaica Avenue, 25 A.D.3d 301, 303.

15        This Court, as I've stated at the outset, has

16   determined that genuine issues of material fact exist as to

17   whether or not the first transfer can be avoided either as

18   an actual intent fraudulent transfer or as a constructive

19   fraudulent transfer.

20        Those issues include whether or not the first

21   transfer was in fact a payment due in connection with the

22   Porteck sale despite the noncompliance with the escrow

23   provisions of a purchase agreement.

24        However, there are no genuine issues of material

25   fact as to the second transfer at least as to the direct

Page 37

1    payment to the defendant, Niknim.  It's undisputed that the

2    second transfer of funds that belonged to the debtor.  Those

3    funds were paid to a third-party corporation in connection

4    with a transaction by which assets were conveyed to a non-

5    debtor entity, being Physician Network Solutions, an entity

6    controlled by Mr. Parmar.

7            Physicians Network was owed no antecedent debt.

8    Niknim was owed no antecedent debt, and there is no

9    consideration in that transaction for the debtors.

10           As far as the intentional fraudulent claim under

11   548, Bankruptcy Code Section -- excuse me.  That section

12   allows the trustee to avoid any transfer made within two

13   years before the petition date if made with actual intent to

14   hinder, delay, or defraud any creditor to which the debtor

15   was or became liable.

16           Similarly, under New York DCL 276, every

17   conveyance made or obligation occurred with actual intent to

18   hinder, delay, or defraud present or future creditors is

19   voidable.  As this Court had stated in (indiscernible)

20   closeout the statutes are -- the statutes are analogous and

21   can be analyzed together.

22           An actual fraudulent transfer can be made -- can

23   be found, excuse me, where a debtor had an interest in the

24   property transferred, which it did in both transfers.  The

25   transfer occurred within two years of the petition date.

Page 38

1    Again, it did in both transfers.  But the transfer was made

2    with actual intent to hinder, delay, or defrauded a

3    creditor.  See In re Jacobs, 394 B.R. 646, 658-653 (Bankr.

4    E.D.N.Y. 2008), which requires the trustee to establish

5    actual intent of the transferor by clear and convincing

6    evidence.

7            As typically in fraudulent and actual fraud

8    settings, the courts typically look to various badges of

9    fraud.  I'll highlight those that the Court has considered

10   here for trial purposes.

11           First is as far as lack or inadequacy of

12   consideration.  This Court has already noted in respect to

13   the Porteck transaction that the agreed sale price of $10.8

14   million was juiced up by $2 million at Mr. Parmar's request.

15   Mr. Walia was aware of the inflation of the purchase price

16   and essentially didn't care.

17           As I've already noted, the APA under the Asset

18   Purchase Agreement for Porteck established various

19   requirements for an escrow agreement and the funding of an

20   escrow account, none of which occurred.  Various disclosure

21   documents, due diligence requirements were required in the

22   purchase transaction.  None were provided.

23           As far as the AllRad transaction is concerned, the

24   Debtors gave up $1.52 million and got nothing in exchange.

25           As far as close or family relationship, it's clear

Page 39

1    that Mr. Parmar and Mr. Walia were both officers and

2    insiders at the time of both transfers.  They knew each

3    other going back to at least 2015.  They both served in the

4    highest level of officer positions at the debtors Orion and

5    CHT.  Mr. Walia was clearly an insider of the debtors at the

6    time of both the first and second transactions.

7              On financial condition, there's no solvency

8    analysis here so the Court is not passing on solvency at the

9    time of the transfer.

10             The Court has determined that genuine issues of

11   material fact exist as to whether the first transfer, the

12   $2.5 million in Porteck, can be avoided as an intentionally

13   fraudulent transfer either under the Bankruptcy Code or New

14   York DCL.

15             Again, as to defendant Niknim in the second

16   transfer, there are no genuine issues of material fact.

17   There was no fair consideration in that transaction for the

18   debtor estate for the $1.52 million.

19             I want to turn just for a couple of minutes to the

20   recovery theory of the trustee against the defendants Walia

21   and Niknim.  Not the liability theory.  Liability theories

22   are clear, but the recovery theory.

23             With respect to the $1.52 million fraudulent

24   transfer, the trustee seeks recovery both against Niknim,

25   who received the money, and defendant Walia given his

Page 40

1    control position at Niknim.

2             Under New York law, a creditor may recover money

3    damages against parties who participated in a fraudulent

4    transfer and are either transferees of the assets or

5    beneficiaries of the conveyance.  See Tae H. Kim v. Jisung

6    Yoo, 311 F.Supp.3d 598, 613 (S.D.N.Y. 2008) and

7    Cadle Co. v. Newhouse, 74 F. App'x 152, 153 (2d Cir. 2003).

8             The Court has determined that genuine issues of

9    material fact exist as to whether Mr. Walia individually

10   adequately participated in or adequately benefitted from the

11   $1.25 million payment that was made to Niknim.  So summary

12   judgment is not granted on that portion.

13            The trustee has also asserted that defendants

14   Walia and Niknim were alter egos of each other and should be

15   held jointly severally liable on an alter-ego veil piercing

16   analysis.  New York law is clear that alter ego liability

17   exists when a parent or owner uses the corporate form to

18   achieve fraud for when the corporation has been so dominated

19   by an individual or another corporation, that separate

20   identity has been so disregarded that -- excuse me, that its

21   separate identity should be disregarded.  See City of Almaty

22   v. Ablyazov, 2019 U.S. Dist. LEXIS 55183, *14 (Bankr.

23   S.D.N.Y. 2019).  Courts consider factors such as whether or

24   not the owner of the corporation has abused the privilege of

25   doing business in corporate form, whether there has been a

Page 41

1   failure to adhere to corporate formalities, inadequate

2   capitalization, comingling of assets, or use of corporate

3   funds for personal use.  See East Hampton Union Free School

4   District v. Sandpebble Builders, 66 A.D.3d 122, 127.

5          The Court is not prepared to conclude that the

6   trustee has met his burden of proof as a matter of law on

7   alter ego liability of Mr. Walia in connection with the

8   $1.52 million transaction with Niknim.

9          That said, the Court has found for Rule 56(g)

10  purposes certain alter ego facts to be undisputed and

11  therefore found for purposes of trial.  Those are Niknim was

12  incorporated in 2015 and at all times had a single employee,

13  officer, and shareholder, Mr. Walia.  Niknim was formed to

14  manage Walia's consulting work, his personal investments,

15  and his family trust.  Niknim was paid by the Debtor as a

16  personal accommodation to Mr. Walia for tax purposes.

17         Walia was receiving money from Orion in 2017,

18  which he would deposit at his convenience either into his

19  personal checking account or an account of Niknim.

20         In 2016 and 2017, Walia would deposit monies from

21  his other investments, his family trust and his wife's

22  account into Niknim bank account.  Walia used the Niknim

23  account to pay personal expenses of his such as pool

24  maintenance, purchasing suits, salon treatments, voice

25  lessons, homeowner dues, and car payments.  Niknim followed

1    and observed no corporate formalities and maintained no

2    resolutions or shareholder minutes.  Niknim was initially

3    capitalized with one or two-thousand dollars.  So even

4    though the Court has not found as a matter of law alter ego,

5    those facts are established for purposes of trial.

6            I'll turn briefly now to the defendant's partial

7    summary judgement motion.  As stated near the outset, it's

8    essentially arguing that the trustee lacks creditor standing

9    under Section 544 to invoke the New York DCL provisions.

10           The rights available through 541(b) of the

11   Bankruptcy Code are limited to those of an existing

12   unsecured creditor and are derivative of the rights of an

13   actual unsecured creditor.  See Lippe v. Bairnco Corp., 225

14   B.R. 846, 852 (S.D.N.Y. 1998).

15           Creditors seeking recovery through Section 544(b)

16   can only attack transfers to the extent a creditor with an

17   allowable claim could do so under New York law.  Here, it's

18   clear and undisputed that the trustee has adequate standing

19   to utilize Section 544(b) and thereby use the rights of

20   creditors under New York DCL Law given the existence of

21   unsatisfied judgements at the time of each of the two

22   transfers.

23           In addition, the Trustee has noted in its summary

24   judgment pleadings the existence of over $100 million of

25   unsecured claimants that existed at the time of each of the

Page 43

1    transfers.  So the request for summary judgment of the

2    defendants is also denied.

3           I'm going to direct, Mr. Nolan, that you and Mr.

4    Rosen and Mr. Scheiman work on a form of order.  It simply

5    needs to recite granting the relief and denying the relief

6    as set out on the record today.  It doesn't need to be a

7    significant restating of the why reasons.  The why reasons

8    are all part of the record of an order granting the summary

9    judgment relief that was granting and denying all remaining

10   relief.  As I stated, I am directing the parties to return

11   to mediation.  I know that you all went, didn't settle.

12   Hopefully with the resolution, at least partial resolution

13   of some of the issues today, the parties can engage in a

14   more meaningful effort to resolve the claims for which

15   liability has been determined and those that remain.

16          I'm also going to set a trial down to start July

17   24th.  I'll set my pretrial requirements.  While that's only

18   90 days from today but also several years from when the

19   litigation started, I think you all generally know what

20   you're going to bring to the trial.  So there's not a lot of

21   reinventing of wheels that need to be done.  I expect I'll

22   see the same declarations and probably not a whole lot more,

23   but I'll get to observe witness testimony at least through

24   cross-examination and make the necessary credibility

25   assessments that I need to make to close the gap on the

Page 44

1    issues that the Court was not prepared to make dispositive

2    findings as a matter of law today.

3              All right?  Anything else we need to address today

4    then on this adversary proceeding?

5              UNIDENTIFIED SPEAKER:  I guess just a couple

6    points of clarification, Your Honor.  Do we want to set a

7    date -- the Court is setting a date by mediation in like the

8    next 30 days?

9              THE COURT:  Thank you.  So the Court's

10   anticipation was within 30 days from now you would go back

11   to the mediator.  I don't remember who you all used before.

12   You can go back to him or her, you can start over with

13   someone different.  It seems to be more cost-effective and

14   time-efficient to go back to who you all used before, but I

15   will leave that to the parties.

16             I'm envisioning that as something that can be done

17   in the next 30 days so that you essentially have -- it's

18   three chunks of 30 days.  You've got 30 days to try to

19   settle it, 30 days to prepare for whatever else you need to

20   submit for pretrial purposes, and then 30 days to prepare

21   for the trial.  Those are somewhat permeable deadlines, but

22   I think that give you all time to focus on settlement before

23   refocusing on the trial.

24             UNIDENTIFIED SPEAKER:  Okay.  And as far as trial,

25   Your Honor, are you in Brooklyn now?

Page 45

1          THE COURT:  I am in Central Islip.

2          UNIDENTIFIED SPEAKER:  Okay.  So we have the

3     opportunity to be present, or are we doing it by Zoom or...

4          THE COURT:  Trial will be in-person under judicial

5     conference protocol since we have exited the Zoom -- exited

6     the COVID period.  Because I anticipate I'm going to be

7     taking live testimony, that would be taken live and in-

8     person.  So the witnesses will need to be here in my

9     courtroom.  I will use my ongoing protocol that I hold my

10    trials in Central Islip and I hold my settlement conference

11    in Brooklyn if that's of any help to you, although July on

12    Long Island tends to be a very beautiful time of year I am

13    told.

14         UNIDENTIFIED SPEAKER:  You're told.  All right.

15         THE COURT:  Some of you may be on your way to or

16    from other summer residences that you maintain, borrow, or

17    lease out further east from the courthouse.  So it's a

18    beautiful time of year on Long Island and not so bad in

19    Central Islip.

20         UNIDENTIFIED SPEAKER:  It's a beautiful time to be

21    there, Judge.

22         THE COURT:  And I'll set aside adequate time to

23    get the case tried.  We're holding July 24th and July 25th,

24    but I gave the 24th, part of that morning to the other

25    adversary proceeding.

Page 46

1          UNIDENTIFIED SPEAKER:  Okay.  Judge, I just want

2    to say thank you to you and your chambers for the many, many

3    accommodations in terms of the adjournments of the hearings

4    on the motion.  So thank you.

5          UNIDENTIFIED SPEAKER:  I would like to add my

6    thanks also, Your Honor.  I appreciate it very much.  And I

7    have nothing further to add.

8          THE COURT:  Well, I know you all prefer hearing

9    yourselves argue than me rule, but I know we had teed this

10   up for summary judgment arguments.  But again, given the

11   delays that have just happened in the adversary proceeding

12   and my desire for it no longer to sit without resolution,

13   you'll still have time to practice your well-honed skills in

14   my courtroom examining witnesses as opposed to arguing to

15   that little dot on your computers that constitutes a camera.

16   So you'll have plenty of time to mix it up live out here

17   unless you take it out of my hands and resolve it.  All

18   right?

19         UNIDENTIFIED SPEAKER:  Well, we'll certainly try

20   to, Your Honor.

21         THE COURT:  All right.  So then we'll be adjourned

22   -- yes.

23         UNIDENTIFIED SPEAKER:  Thank you very much.

24         THE COURT:  Thank you all.  (indiscernible) we'll

25   go off the record.  Thank you.

Page 47

1            (Whereupon these proceedings were concluded)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1                          I N D E X

2

3                         RULINGS

4                                        Page        Line

5    Trustee's Motion for Summary Judgment

6    on First Transfer Denied                8           2

7

8    Trustee's Motion for Summary Judgment

9    on Second Transfer Granted              8           5

10

11   Defendant's Motion for Summary

12   Judgement Denied                        25          12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

```
 1              C E R T I F I C A T I O N

 2

 3        I, Rita Weltsch, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Rita Weltsch

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  April 25, 2024
```

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 65 of 79 PageID #: 2386

[& - 276]    Page 1

| & | | | |
| --- | --- | --- | --- |
| **&** 4:3,10 7:3 10:15 | **12.8** 27:19 28:9 | **2.5** 24:16 25:4 25:19 30:9,19 30:24 31:14,23 31:25 32:1,8 39:12 | **2018** 13:16,19 30:5 |
| **0** | **12151** 49:7 | | **2019** 40:22,23 |
| **08052** 7:20 | **122** 41:4 | | **2020** 13:25 |
| **1** | **127** 41:4 | **20** 21:4 | **2022** 14:10 |
| **1** 28:22 34:21 | **134** 28:14 | **20-08049** 1:9 6:22 23:18 | **2023** 15:23,23 |
| **1,520,000** 24:25 25:21 33:18 34:1 | **135** 22:9 | | **2024** 2:6 26:1 49:25 |
| **1.25** 40:11 | **14** 40:22 | **20-08052** 6:23 7:23 | **204** 29:6 |
| **1.3** 33:8 | **141-142** 22:9 | **200,000** 11:23 12:18 20:2 35:14 | **2056** 24:8 |
| **1.35** 28:21 | **15** 24:17 30:8 | | **2164268** 15:23 |
| **1.4** 33:8 | **15173** 35:11 | | **22** 15:23 |
| **1.52** 38:24 39:18,23 41:8 | **152** 40:7 | **2002** 35:11,12 | **225** 42:13 |
| **1.6** 30:15 31:1 31:9 | **153** 40:7 | **2003** 40:7 | **24th** 11:22 12:3 23:3 26:4 43:17 45:23,24 |
| **1.824** 29:2 | **157** 8:3 23:22 | **2008** 19:9 38:4 40:6 | **25** 5:3 12:9 14:2 22:1 36:14 48:12 49:25 |
| **1.9** 28:24 | **1574** 19:14 | | |
| **10** 2:6 | **1582-1583** 19:14 | **2013** 10:1 18:21,22 | |
| **10.8** 27:20 28:7 29:6 38:13 | **16** 13:16 35:12 | **2015** 9:21 10:18 26:16 27:10 29:9 30:1 31:17,21 35:6,7,15 39:3 41:12 | **250,000** 8:19 8:22,25 12:5,7 12:10,18 13:1 13:4,11 14:1 17:17 19:21 |
| **100** 10:9 42:24 | **160-09** 36:14 | | |
| **1000** 10:23 | **1600** 4:19 | | |
| **10017** 4:6,13 | **17** 35:6 | | |
| **10022** 4:20 | **18** 9:7 | | |
| **10062** 13:20 | **18-71748** 1:3 | | |
| **10063** 13:22 | **192,000** 28:17 | | |
| **113** 22:8 | **194,185** 10:20 | **2016** 9:21 10:25 11:6 24:17 25:20 30:8 31:22 41:20 | **25th** 45:23 |
| **11501** 49:23 | **1983** 19:14 | | **26** 26:20 |
| **11722** 2:4 | **1998** 42:14 | | **27** 27:4 |
| **11754** 5:4 | **2** | | **272** 22:2,5 |
| **11:29** 2:7 | **2** 8:3 23:22 27:23 28:4,17 29:8 32:6 38:14 48:6 | **2017** 11:2,22 12:3,17 13:1,9 13:10 14:2 22:1 25:1,22 32:13,21 33:18 33:25 41:17,20 | **273** 21:12,23 34:21,24 35:9 35:19,21 |
| **12** 48:12 | | | **274** 35:22 |
| | **2,500,000** 31:3 | | **275** 35:22 |
| | **2,546,000** 28:23 | | **276** 18:16,24 37:16 |
| | **2.2** 29:7 | | |
| | **2.35** 28:21 | | |

**[28 - actual]**                                                          Page 2

| | | | |
|---|---|---|---|
| **28** 8:3 23:22 | **541** 42:10 | **784** 17:14 | **accommodat...** |
| **28th** 13:1 | **544** 25:14 42:9 | **8** | 41:16 |
| **290** 2:3 | 42:15,19 | **8** 48:6,9 | **accommodat...** |
| **2d** 19:14 40:7 | **548** 18:13,23 | **8-20-08052** | 46:3 |
| **3** | 34:19,21 37:11 | 1:18 | **accordance** |
| **3** 29:15 | **550** 22:16,16 | **803** 17:4 | 24:7 30:15 |
| **3.5** 32:4 | 22:18 | **846** 42:14 | **account** 10:14 |
| **30** 44:8,10,17 | **55183** 40:22 | **852** 42:14 | 12:5,8,11,12 |
| 44:18,18,19,20 | **56** 8:12 22:23 | **88** 36:2 | 13:2,3,11 |
| **300** 49:22 | 34:15 41:9 | **8:39** 12:6 | 16:12,14,17 |
| **300,000** 10:12 | **570** 4:19 | **9** | 17:23,25 18:6 |
| **301** 36:14 | **598** 40:6 | **9.8** 29:11,14 | 21:4 24:18,19 |
| **303** 36:14 | **6** | **90** 43:18 | 24:19 25:2,2,3 |
| **30th** 11:2 | **6** 17:4 | **901** 15:8,10 | 26:15 29:12 |
| **311** 40:6 | **6.8** 29:14,23 | 16:1 | 30:9 31:12 |
| **330** 49:21 | **60** 33:15 | **95** 15:24 | 32:8,9,9 33:13 |
| **34th** 4:5 | **613** 40:6 | **974** 17:15 | 33:20 38:20 |
| **35** 27:24 | **62** 33:16 | **98** 15:24 | 41:19,19,22,22 |
| **362** 17:15 | **64** 30:16 | **9th** 10:25 | 41:23 |
| **37** 28:1 | **646** 19:8 38:3 | **a** | **accurate** 49:4 |
| **394** 19:8 38:3 | **658** 19:8 | **a.d.2d** 36:2 | **achieve** 40:18 |
| **398** 17:14 | **658-653** 38:3 | **a.d.3d** 22:9 | **acquila** 16:17 |
| **4** | **66** 33:16 41:4 | 36:14 41:4 | **acquire** 10:9 |
| **4** 10:3,8,10 | **68** 33:16 | **ability** 36:10 | 11:24 26:17 |
| 11:12 15:23 | **69** 33:16 | **ablyazov** 40:22 | **acquired** 27:11 |
| **421** 17:14 | **691-692** 17:15 | **abruzzi** 1:24 | 28:19 29:1,1 |
| **425** 36:2 | **7** | 5:2 6:24 7:13 | **acquirer** 30:19 |
| **445** 5:3 | **703** 16:25 | 7:16,18,20,23 | **acquisition** |
| **46** 31:13 | **7052** 8:1 24:6 | 9:15,19 12:6 | 34:6 |
| **49** 13:22 31:13 | **7056** 8:14 24:9 | 12:11 13:2,3 | **acquisitions** |
| **492375** 18:21 | **722** 19:13 | 13:19 14:2 | 9:11 26:8 |
| **4971** 18:2 | **74** 40:7 | **absence** 36:12 | **action** 15:20 |
| **5** | **747** 4:12 | **abstract** 28:16 | 21:11,14 23:20 |
| **5** 18:21 48:9 | **77,000** 11:4 | **abused** 40:24 | 35:1,2,4 |
| **51447** 35:6 | **780** 4:5 | **accept** 16:2 | **activity** 9:19 |
| | | | **actual** 18:14,18 |
| | | | 19:4,7,11 |

| | | | |
|---|---|---|---|
| 21:19 28:15,25 | adversary 7:20 | alleged 30:14 | anticipate 45:6 |
| 30:18 34:20,23 | 8:18 9:6,8 | 35:21 | anticipates |
| 35:4,24 36:18 | 13:24 15:17 | allegedly 10:5 | 15:3 |
| 37:13,17,22 | 22:23 23:18,20 | allow 32:5 | anticipation |
| 38:2,5,7 42:13 | 23:25 34:17 | allowable | 44:10 |
| add 27:23 46:5 | 36:7 44:4 | 42:17 | apa 27:13,15 |
| 46:7 | 45:25 46:11 | allows 18:13 | 27:16,17,18 |
| added 29:8 | adverse 11:3 | 34:21 37:12 | 28:4 30:16,19 |
| addition 21:1 | advised 12:22 | allrad 32:16,18 | 31:1,6,7 38:17 |
| 42:23 | advisor's 28:16 | 33:21,23 34:3 | apologies |
| additionally | affidavit 15:6 | 34:7 38:23 | 14:13 24:3 |
| 10:11 | 15:12,25 16:1 | almaty 40:21 | app'x 40:7 |
| address 8:14 | 16:9 30:16 | alpha 15:22 | apparent 9:7 |
| 24:15 44:3 | affidavits 14:8 | 16:18 | apparently |
| addresses 15:9 | 15:2,3 23:11 | alter 40:14,15 | 29:6 |
| adequate 16:2 | affirmed 15:24 | 40:16 41:7,10 | appear 15:3 |
| 16:9 19:20 | 16:19 | 42:4 | 20:4,15 |
| 20:11 42:18 | agent 31:4 | amount 10:20 | appearance |
| 45:22 | aggregated | 20:18 31:3 | 6:19 |
| adequately | 9:10 26:7 | amounts 17:24 | appearances |
| 18:19 40:10,10 | agree 19:15 | analogous | 6:25 |
| adhere 41:1 | agreed 27:20 | 37:20 | appearing 6:20 |
| adjourned | 28:5 29:5 | analysis 18:20 | 7:8,19 |
| 46:21 | 32:14 38:13 | 36:7 39:8 | appointed |
| adjournments | agreement | 40:16 | 17:11 |
| 46:3 | 27:12 30:13,25 | analyzed 37:21 | appreciate |
| administered | 31:5,8,12 | anecdotally | 46:6 |
| 13:18 | 32:14,21 36:23 | 15:19 | approached |
| administration | 38:18,19 | answer 14:5 | 10:3 |
| 17:12 | ahead 15:1 | 28:8,10 | approved 11:9 |
| admissibility | ahms 26:24 | antecedent | 33:15 |
| 17:8 | 28:20 29:2 | 12:16 13:8 | approximately |
| admit 13:12 | al 1:6,12,21 | 31:16,17,23 | 10:11 |
| adv 1:9,18 | 6:23,24 | 34:1,5 37:7,8 | april 2:6 24:17 |
| advantage | alan 2:22 6:16 | anthony 5:6 | 25:19 30:7 |
| 26:25 | alexis 6:13,15 | 7:15 | 49:25 |

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 68 of 79 PageID #:
2389

[aquila - books]                                                Page 4

| | | | |
|---|---|---|---|
| aquila  15:22 | 33:11,22 34:5 | 39:12 | 24:6,9 25:15 |
| aren't  16:25 | 37:4 40:4 41:2 | awarded  14:20 | 34:20,21 35:16 |
| arguably  24:21 | assigned  10:22 | aware  38:15 | 37:11 39:13 |
| argue  46:9 | assistant  12:22 | **b** | 42:11 |
| arguing  42:8 | associated | b  2:21 8:3 | based  16:8 |
| 46:14 | 10:12 | 20:23 21:25 | 20:7,22 32:2 |
| arguments | associates  4:10 | 23:22 34:21 | basich  12:22 |
| 46:10 | 7:3 | 42:10,15,19 | 12:24 |
| arises  19:5 | association | b.r.  19:8 38:3 | basis  16:2,9 |
| arising  15:17 | 19:16 | 42:14 | beautiful  45:12 |
| 17:12 | ast  1:3,9,18 | back  12:25 | 45:18,20 |
| arista  17:13 | attached  17:5 | 16:17 20:17 | behalf  7:8,20 |
| arrangement | 31:6 | 23:17 26:12 | 7:21 9:20 |
| 30:17,22 | attack  35:24 | 39:3 44:10,12 | 11:21 27:15,17 |
| arvind  1:15 | 42:16 | 44:14 | 35:17 |
| 4:11 6:23 | attention  28:3 | background | believed  10:11 |
| 26:22 | attorney  5:2 | 29:19 | believes  36:9 |
| aside  21:16 | 18:3 | backup  6:16 | belonged  8:21 |
| 22:21 45:22 | attorneys  4:4 | bad  45:18 | 14:3 37:2 |
| asked  10:3 | 4:11,18 | badges  19:12 | beneficial  18:4 |
| 11:23 12:18 | aug  35:12 | 19:15 38:8 | beneficiaries |
| 28:5 | authenticate | bairnco  42:13 | 40:5 |
| asserted  11:10 | 16:10,16 | balance  30:14 | benefit  13:6,12 |
| 19:24 40:13 | authentication | 33:10 | 20:15 |
| asserting  13:22 | 15:9,10,21 | bank  13:10 | benefitted |
| assertion  31:14 | 16:8 | 16:7,12,14,17 | 40:10 |
| asserts  19:22 | authority | 24:18,19 25:3 | better  6:7 |
| 32:1 | 11:20 | 26:15 29:9 | beyond  36:10 |
| assessments | available  31:5 | 33:19 41:22 | billing  26:17 |
| 43:25 | 42:10 | bankr  18:22 | 27:1 |
| asset  24:22 | ave  4:19 | 19:9 38:3 | board  11:8 |
| 27:12 28:20 | avenue  4:5,12 | 40:22 | 33:14 |
| 29:2,3,4 30:13 | 36:14 | bankruptcy | books  12:15 |
| 38:17 | avoid  34:22 | 1:1 2:2,23 | 13:8 31:15,18 |
| assets  27:11,20 | 37:12 | 10:22,24 13:16 | 31:19,22 34:1 |
| 28:19,21,25 | avoided  18:23 | 17:19,20,20,21 | 34:4 |
| 29:5 31:24 | 22:17,19 36:17 | 18:12,24 22:16 | |

[borrow - collectively]                                                Page 5

**borrow** 45:16
**briefly** 42:6
**bring** 43:20
**broadhollow**
  5:3
**brog** 10:15,16
  11:20 12:4,9
  17:23 18:6
  25:2 29:13
  33:19
**broker** 28:17
**brooklyn**
  44:25 45:11
**builders** 41:4
**burden** 15:10
  19:6 41:6
**business** 9:15
  10:2 11:18
  15:13 17:4,5,6
  26:24 28:16,20
  40:25
**buyer** 30:23
  32:23
**buyers** 31:3

**c**

**c** 4:1 6:1 49:1,1
**cadle** 35:11
  40:7
**calendar** 12:17
**call** 27:2,13
**called** 6:18
  11:2 13:4
  29:16 32:16
  33:10,13
**calls** 31:1
**camera** 46:15

**capacities** 30:5
**capacity** 1:11
  1:20 18:3
**capital** 33:9
  36:9
**capitalization**
  41:2
**capitalized**
  42:3
**car** 41:25
**care** 12:7 27:7
  38:16
**case** 1:3,9,18
  6:18,22,23
  8:12 10:22
  14:5 15:18
  17:12,21 24:12
  26:3 45:23
**caselaw** 15:9
**cases** 13:17
  17:10,10
**cause** 21:11
**causes** 23:20
**center** 30:12
**central** 2:4
  14:16 45:1,10
  45:19
**ceo** 30:6
**certain** 3:1
  11:18,25 19:12
  20:1 23:19
  31:9,11 33:10
  34:13 41:10
**certainly** 21:6
  46:19
**certified** 49:3

**cfo** 26:23
**chambers** 46:2
**change** 28:9,13
**charged** 20:5
**chase** 24:19,19
  25:3 33:20
**checking** 13:3
  26:14 41:19
**chevron** 17:14
**chi** 10:5,5,8,11
**chief** 6:16
  26:16 30:1,3
**chronology**
  19:17 21:7
**cht** 11:1,4,7,15
  12:12 13:21,23
  24:18 26:14,14
  26:17 32:9
  39:5
**chunks** 44:18
**cir** 19:14 40:7
**circuit** 15:22
  15:24 19:11
**circuits** 16:19
**circumstantial**
  16:15 19:12
**cit** 36:13
**city** 18:21
  40:21
**civil** 8:13 24:8
**claim** 10:22,23
  13:20,21 21:20
  22:22 24:25
  25:21 35:17
  37:10 42:17
**claimant** 5:2

**claimants**
  42:25
**claimed** 11:19
  15:16
**claims** 9:4 25:9
  25:13 26:4
  43:14
**clarification**
  44:6
**clear** 6:20 18:2
  19:7 20:3 21:1
  21:13 38:5,25
  39:22 40:16
  42:18
**clearly** 6:18
  16:15 31:9
  39:5
**clerk** 6:13,15
**client** 18:3,4
**close** 9:23
  18:21 19:16
  20:12,12 28:11
  29:13 32:6
  38:25 43:25
**closed** 13:10
  29:25 33:17
**closeout** 37:20
**closing** 12:13
  16:7,16 29:9
  31:4
**code** 18:12,24
  22:16 25:15
  34:20,21 37:11
  39:13 42:11
**collateral** 20:5
**collectively**
  9:18

Case 8-20-08049-ast   Doc 148   Filed 08/08/24   Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK   Document 5-19   Filed 05/12/25   Page 70 of 79 PageID #: 2391

[comingling - courtroom]                                         Page 6

comingling
  41:2
commenced
  10:1 13:24
commerce  35:6
companies
  9:10 26:7
company  9:16
  26:18,21 30:2
  31:15 32:15,17
  35:11
completed  33:5
  33:6,7
computers
  46:15
concede  32:11
concern  28:13
concerned
  38:23
concerning
  12:1 21:6 31:7
concerns  30:14
conclude  41:5
concluded  47:1
conclusions
  8:2 24:7 29:20
condition
  19:17 20:20,25
  39:7
conditions
  31:7,9 36:5
conduct  18:20
conference  6:6
  7:23 45:5,10
confirmed  12:9
connection
  21:19 24:21,22

33:4,23 34:3
  36:21 37:3
  41:7
consider  40:23
consideration
  19:16,21,23
  20:9,10 21:14
  21:18,21 22:2
  22:4,4,5 34:25
  35:20,23 36:4
  36:11 37:9
  38:12 39:17
considered
  9:21 21:8 36:1
  38:9
consistent  23:5
consolidated
  9:9 26:7
constellation
  10:4,17 12:12
  26:13 29:11
  30:4,7,8
constitute
  15:15 19:12
constitutes
  46:15
constructive
  25:11 36:1,18
constructively
  21:12,16 36:3
  36:12
construed  17:7
consulting
  27:7 41:14
contagious
  6:14

contained  16:6
  16:22
continued  30:4
control  18:5
  40:1
controlled
  26:22 29:16
  32:25 37:6
controlling
  9:24
convenience
  41:18
conveyance
  18:17 21:13,17
  34:25 35:23
  37:17 40:5
conveyed  37:4
convincing
  19:8 38:5
core  8:2 23:21
corp  17:14
  18:21 30:3
  42:13
corporate  27:8
  40:17,25 41:1
  41:2 42:1
corporation
  26:19 27:3
  37:3 40:18,19
  40:24
correct  28:8
correspondin...
  33:20
cost  44:13
counsel  7:3,5
  7:12 15:19

counter  5:2
counterclaim
  14:5
country  49:21
couple  39:19
  44:5
court  1:1 2:2
  6:3,5,9,12,14
  6:25 7:12,17
  7:22 8:4,6,10
  8:14,16,24 9:1
  10:19 11:25
  12:14 13:16
  14:10,16,22,24
  15:2,3,20 16:2
  17:17 18:8,20
  19:19 20:7,22
  21:10,20 22:3
  22:6,12,14
  23:1,4,16,17
  23:21,24 24:10
  25:17 29:18
  34:12 35:18
  36:15 37:19
  38:9,12 39:8
  39:10 40:8
  41:5,9 42:4
  44:1,7,9 45:1,4
  45:15,22 46:8
  46:21,24
court's  24:2,6
  29:20 34:10
  44:9
courthouse
  45:17
courtroom
  6:16 45:9

46:14
courts  19:11
  38:8 40:23
court's  7:25
  8:1 14:11,13
  16:18 23:2
cover  10:12
covid  45:6
craig  21:25
created  11:15
  13:5,6
creator  16:14
credibility
  43:24
creditor  19:4
  35:18,24 37:14
  38:3 40:2 42:8
  42:12,13,16
creditors  18:19
  25:16 36:1
  37:18 42:15,20
criterions  11:2
cross  8:7 9:2
  14:7,21 43:24
cto  30:6
custody  18:5

d

d  6:1 48:1
damages  35:2
  40:3
date  11:5 19:2
  20:24,24,24
  26:1 32:3,12
  34:8,23 37:13
  37:25 44:7,7
  49:25

dated  32:21
day  12:3,6,9
  13:3,21 32:7
days  43:18
  44:8,10,17,18
  44:18,19,20
dcl  18:16,24
  21:12 22:2
  25:16 34:21,24
  35:9,19,21
  37:16 39:14
  42:9,20
deadlines
  44:21
deal  12:20
  27:24,25 28:11
  28:15 29:25
debt  12:16
  13:8 31:16,17
  31:18,20,23
  34:1,2,5 36:10
  37:7,8
debtor  1:7 8:22
  10:5,6,16 11:1
  13:5 16:5
  18:15,24 19:7
  20:16,20 21:14
  24:18 26:13
  27:10,18 28:20
  29:11,16 30:8
  31:16 32:7
  33:22 35:5,10
  37:2,5,14,23
  39:18 41:15
debtor's  25:1
  30:2 31:19,22
  33:14,18

debtors  8:21
  9:5,22,25 10:2
  10:24 11:3,11
  13:13,14 14:3
  17:23 18:1,5
  20:23 24:18
  26:6,10 31:24
  32:24 33:24,25
  34:4,6 37:9
  38:24 39:4,5
debtor's  12:5
  12:11,15 13:8
  13:17
debts  33:8
december
  10:18 31:17
  35:14
declaration
  15:7 16:6,11
  16:23
declarations
  15:12,14 16:21
  16:24 23:11
  43:22
defendant
  13:19,21 15:11
  19:23 21:14
  24:20 26:22
  35:1,4 37:1
  39:15,25
defendant's
  25:23 42:6
defendants
  1:16,25 7:3,6
  7:16 8:15,20
  9:19 10:8
  12:16 13:11,13

15:7 16:6,20
  18:9 20:1 22:7
  24:15 25:11
  34:2 39:20
  40:13 43:2
defendant's
  8:7 14:6 17:2
  48:11
deficiencies
  33:17
defined  24:23
defraud  18:15
  18:18 19:4
  37:14,18
defrauded
  38:2
delay  18:14,18
  19:4 37:14,18
  38:2
delays  46:11
delivered  31:3
denied  22:11
  25:23,24 43:2
  48:6,12
deny  9:2
denying  14:24
  23:7 25:17
  43:5,9
deposit  41:18
  41:20
deposited
  10:14
deposition
  28:2,14
deputy  6:16
derivative
  42:12

| | | | |
|---|---|---|---|
| describe 24:23 | direction 16:11 | 16:3,10 38:21 | ehrenberg 1:11 |
| described | 24:20 32:10 | doesn't 20:4,14 | 1:20 4:4 6:22 |
| 13:17 | directors 9:17 | doing 28:4 | 6:24 7:8,10,11 |
| designated | 11:8 33:14 | 40:25 45:3 | 7:18,23 15:23 |
| 18:4 32:15 | disagreement | dollars 11:10 | eight 34:7 |
| desire 46:12 | 22:15 | 42:3 | either 14:20 |
| despite 29:4 | discharge 33:8 | dominated | 16:22 18:23 |
| 31:14 33:17 | disclosure | 40:18 | 25:10 34:2 |
| 36:22 | 38:20 | donziger 17:14 | 36:17 39:13 |
| detail 24:23 | discussed | don't 23:8 | 40:4 41:18 |
| determination | 21:19 | dot 46:15 | elaborate 26:3 |
| 8:16 | dismissal | due 8:4 17:8 | elements 21:22 |
| determinations | 25:13 | 33:2,4 36:21 | elena 13:7 |
| 34:10 | disposition | 38:21 | email 32:2,7 |
| determine | 18:7 | dues 41:25 | emailed 12:6 |
| 21:10 23:21 | dispositive | | emails 15:12 |
| determined | 44:1 | **e** | employee 27:5 |
| 8:10 9:1 15:20 | dispute 8:11,17 | e 2:21,21 4:1,1 | 41:12 |
| 17:18 19:19 | 14:19 18:8 | 6:1,1 48:1 49:1 | employees 9:17 |
| 34:12 36:16 | 19:1,5 20:8 | e.d.n.y. 15:23 | ended 13:15 |
| 39:10 40:8 | 30:12 34:14 | 18:22 19:9 | engage 36:8 |
| 43:15 | disputed 34:13 | 38:4 | 43:13 |
| didn't 6:10 | disputes 19:20 | earlier 30:10 | engaged 36:8 |
| 20:18 | disregarded | earnout 33:8 | entered 10:19 |
| different 44:13 | 40:20,21 | east 41:3 45:17 | 11:3 35:13 |
| difficult 19:10 | dist 35:11 | eastern 1:2 | enterprise 9:10 |
| diligence 33:2 | 40:22 | 23:23 | 26:7 |
| 33:3,4 38:21 | district 1:2 | ebitda 29:7 | entire 20:7 |
| direct 18:6 | 10:18,19,21 | ecro 2:25 | entities 9:5,9 |
| 19:10 25:25 | 15:20 16:18 | edith 15:6 | 11:1,14,16 |
| 32:16 36:25 | 21:2 23:23 | effect 23:23 | 13:15,16 |
| 43:3 | 35:6,14 41:4 | effective 44:13 | entity 8:23 |
| directed 12:4 | docket 30:16 | efficient 44:14 | 9:15 10:5,6,16 |
| 12:24,25 | docketed 21:15 | effort 43:14 | 13:4,5,6 18:15 |
| directing 26:5 | 35:2,8 | ego 40:15,16 | 20:19 26:12 |
| 43:10 | documents | 41:7,10 42:4 | 27:10 28:20 |
| | 11:19 15:22 | egos 40:14 | 29:16 32:15,19 |

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 73 of 79 PageID #:
2394

[entity - filed]                                                    Page 9

| | | | |
|---|---|---|---|
| 32:23,25 33:22 37:5,5 | 22:12 28:15 29:10 31:23 34:1,4 38:6 | expect 43:21 | factual 19:5 29:19 |
| envisioning 44:16 | evidentiary 8:8 | expenses 10:12 41:23 | fails 35:5 |
| equity 11:15 | 8:14 14:8 15:1 | expert 16:21 | failure 41:1 |
| equivalent 20:18 | 15:18,25 23:9 23:10 | 16:25 20:22 21:24 | fair 21:13,18 21:21 22:2,5 |
| escrow 30:17 | examination 43:24 | explain 12:17 | 34:25 35:20,23 36:4,11 39:17 |
| 31:4,5,8,10,12 31:12 36:22 38:19,20 | examining 46:14 | extensive 25:6 25:6 29:18 | fairly 15:10 |
| escrowed 30:15 | exception 17:4 | extent 8:15 29:19 30:20 42:16 | faith 22:7 35:22 36:12 |
| essentially 25:12 38:16 | exceptions 17:7 | | fall 30:5 |
| 42:8 44:17 | excess 35:14 | **f** | family 27:8 38:25 41:15,21 |
| establish 21:17 38:4 | exchange 20:2 38:24 | f 2:21 5:6 40:7 49:1 | far 11:17 13:17 17:2 20:20 |
| established 8:12 31:10,13 | excuse 6:13 37:11,23 40:20 | f.2d 19:13 | 30:25 37:10 38:11,23,25 |
| 38:18 42:5 | executed 27:12 | f.4th 15:24 | 44:24 |
| establishing 19:6 | 27:15,17 31:12 | f.supp.2d 17:14,15 | favor 17:7 |
| estate 17:17,19 | executive 26:16 30:1 | f.supp.3d 40:6 | fbi 21:4 |
| 17:20,20 18:10 39:18 | exhibit 31:6 | face 9:8 | feb 15:23 |
| et 1:6,12,21 | exist 11:17 | fact 12:10 14:18,19 16:24 | federal 2:3 8:13 15:8 24:8 |
| 6:23,24 | 21:6 34:15 36:16 39:11 | 19:20 20:8 21:9,20 22:3,6 | 33:12 35:18 |
| eugene 4:17,22 7:4,5 | 40:9 | 23:2 27:24 28:1,2 33:15 | fees 27:24 28:11,16,16 |
| event 12:3 | existed 17:21 42:25 | 34:3 36:16,21 36:25 39:11,16 | fell 12:21 |
| events 19:17 21:7 31:11 | existence 42:20 42:24 | 40:9 | fester 24:2 |
| evidence 12:15 | existing 42:11 | factors 40:23 | fictitious 11:14 |
| 15:8 16:15 17:10 19:8,10 | exists 14:17 20:25 40:17 | facts 8:2,10,17 22:24 24:7,9 | fiduciary 18:1 18:3 |
| 19:13 20:22 | exited 45:5,5 | 25:6,8 31:13 34:13,14,15 41:10 42:5 | file 32:6 |
| | | | filed 10:22,24 10:25 13:20,21 14:4 35:17 |

[filing - held]                                                            Page 10

| | | | |
|---|---|---|---|
| **filing** 13:15 | **forwarded** | **g** | 35:22 36:12 |
| **final** 35:13 | 13:2 | | **granted** 40:12 |
| **financial** 19:17 | **found** 21:20 | **g** 6:1 8:12 | 48:9 |
| 20:20 39:7 | 22:3,6 37:23 | 22:23 24:8 | **granting** 25:20 |
| **find** 19:10 | 41:9,11 42:4 | 34:15 41:9 | 43:5,8,9 |
| **findings** 8:1 | **frank** 15:7 | **gap** 43:25 | **greene** 10:15 |
| 24:6 44:2 | **frankel** 22:8 | **gazillion** 11:10 | 12:4,7 |
| **finds** 18:8 | **fraud** 19:12,15 | **general** 17:8 | **group** 17:14 |
| **firm** 7:5 25:2 | 36:1 38:7,9 | **generally** | 36:14 |
| **first** 6:25 18:12 | 40:18 | 19:14 43:19 | **guess** 44:5 |
| 24:16 25:5,9 | **fraudulent** | **genovese** 10:15 | **guys** 6:10 |
| 25:18 29:17 | 18:19 19:11,13 | **genuine** 8:11 | |
| 30:10 34:19 | 21:12,16,19 | 8:17 14:17,18 | **h** |
| 36:17,20 38:11 | 25:10,11 29:21 | 18:8 19:1,19 | |
| 39:6,11 48:6 | 32:2 34:20,24 | 20:8 23:1 | **h** 8:3 40:5 |
| **five** 29:6,7 | 35:3 36:3,12 | 34:14 36:16,24 | **half** 6:10 28:24 |
| **floor** 4:5 | 36:18,19 37:10 | 39:10,16 40:8 | **hampton** 41:3 |
| **florida** 9:15 | 37:22 38:7 | **girlfriend** 13:7 | **hands** 46:17 |
| 11:25 12:21 | 39:13,23 40:3 | **giuliano** 5:1,6 | **happened** |
| **focus** 44:22 | **free** 41:3 | 7:14,15 23:6 | 46:11 |
| **follow** 9:2 | **friend** 9:23 | 23:15 | **health** 10:17 |
| 25:17 | **fund** 17:25 | **give** 6:18 15:1 | 12:12 29:17 |
| **followed** 27:8 | **funded** 31:11 | 32:4 44:22 | 30:2,7,8 |
| 41:25 | **funding** 38:19 | **given** 39:25 | **healthcare** |
| **following** 8:10 | **funds** 8:20,21 | 42:20 46:10 | 9:11 10:4 26:9 |
| 36:4 | 12:8,11,25 | **gluck** 10:15 | 26:13,21 29:12 |
| **foregoing** 49:3 | 14:2 17:18,24 | **go** 11:9,11 15:1 | 30:4 32:22 |
| **forged** 11:19 | 18:1,5,9 20:16 | 26:2 44:10,12 | **healthcorp** 1:6 |
| **form** 7:25 23:7 | 20:17 30:15,20 | 44:14 46:25 | 1:12,21 10:6 |
| 24:5 31:6 | 31:5 33:18 | **going** 7:22 15:1 | **hear** 6:7,10,18 |
| 40:17,25 43:4 | 37:2,3 41:3 | 22:22 23:6,17 | 23:21 |
| **formalities** | **further** 12:19 | 25:25 26:1 | **hearing** 3:1,3 |
| 27:8 41:1 42:1 | 45:17 46:7 | 34:19 39:3 | 46:8 |
| **formed** 27:6 | **future** 18:18 | 43:3,16,20 | **hearings** 6:17 |
| 41:13 | 37:18 | 45:6 | 46:3 |
| **forward** 18:12 | | **good** 6:2,3,13 | **hearsay** 17:2,3 |
| | | 6:15 7:2,4,7,10 | 17:6 |
| | | 7:14,15 22:7 | **held** 10:5,14 |
| | | | 12:12 13:22 |

[held - i'm]                                                                    Page 11

17:25 18:2,3
40:15
**help** 45:11
**hennigan** 6:15
**high** 15:11
**highest** 39:4
**highlight** 38:9
**hinder** 18:14
18:18 19:4
37:14,18 38:2
**hold** 14:12
17:23 45:9,10
**holding** 32:19
45:23
**homeowner**
41:25
**hon** 2:22
**honed** 46:13
**honor** 7:4,7,10
7:14,15,19
23:14,15 44:6
44:25 46:6,20
**hopefully**
43:12
**hour** 6:9
**howard** 1:11
1:20 4:4 6:22
6:23 7:8,11

**i**

**identical** 18:20
**identified**
15:13 22:24
**identifying**
13:20
**identity** 40:20
40:21

**immediately**
31:4
**impact** 22:15
**inadequacy**
38:11
**inadequate**
41:1
**inadmissible**
16:21
**include** 8:1
13:16 19:15
26:12 36:20
**included** 28:11
**includes** 24:6
**including** 14:5
15:12 16:10
31:10
**incorporated**
8:13 24:9
41:12
**increase** 31:24
34:5
**incur** 36:10
**incurred** 18:17
**indemnify**
30:20
**independent**
14:22 17:11
**indirectly**
32:16,18
**indiscernible**
37:19 46:24
**individual**
40:19
**individually**
40:9

**inflation** 38:15
**initially** 42:2
**inquiry** 19:18
**insider** 39:5
**insiders** 39:2
**insolvency**
20:25 21:24
**insolvent** 20:23
22:1 35:10
36:5,6
**installed** 30:1
**instructions**
12:24
**intent** 18:14,18
19:4,7,11,13
35:24 36:18
37:13,17 38:2
38:5
**intention** 23:2
**intentional**
25:10 37:10
**intentionally**
29:21 39:12
**interest** 10:6,9
13:22 18:25
20:5 32:20
34:6,22 37:23
**interested**
26:18
**internally** 32:5
**invest** 9:20
10:3
**investing** 10:8
**investment**
10:4,10,13
11:13 13:2,19

**investments**
1:24 5:2 6:24
7:24 9:16 27:7
41:14,21
**investor** 11:10
**invoke** 25:15
42:9
**involves** 24:12
32:13
**involving** 11:7
**iolta** 10:14
12:5,11 17:23
17:25 21:4
25:2,2 29:12
33:19
**ipo** 10:12
**irrelevant** 17:1
**island** 45:12,18
**islip** 2:4 45:1
45:10,19
**issue** 8:24 9:3
13:25 14:17
19:19 21:9
23:4 32:13
35:10,16
**issues** 8:9
14:17,18 23:1
36:16,20,24
39:10,16 40:8
43:13 44:1
**items** 15:15
**it's** 6:14 14:14
**i'll** 9:18 10:4
17:13
**i'm** 6:11 7:10
7:22 15:1
22:22 23:6

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 76 of 79 PageID #: 2397

[i've - loan]                                                                Page 12

| | | | |
|---|---|---|---|
| **i've**  6:9 20:14 21:24 22:24 23:9 | 42:7 48:12 **judgements** 42:21 **judgment**  3:3 8:7,7,23 9:3 10:19,23 13:25 14:6,7,19,21 16:3 23:8 25:18,20 34:11 34:16 35:8,13 35:18 40:12 42:24 43:1,9 46:10 48:5,8 **judicial**  45:4 **juiced**  27:21,22 28:1,18 38:14 **july**  13:19 23:3 26:4 43:16 45:11,23,23 **jump**  26:2 **june**  10:1 13:1 25:1,22 26:1 30:1 32:21 33:18 | **known**  14:15 17:3 34:12 | **let's**  6:25 **level**  39:4 **lexington**  4:19 11:16 **lexis**  35:6,11 40:22 **liabilities**  33:9 33:11 |
| **j** | | **l** | **liability**  9:16 22:20 39:21,21 40:16 41:7 43:15 |
| **jacobs**  19:8 38:3 **jacobson**  21:25 **jamaica**  36:14 **janaminder** 27:14,15 **janitorial** 18:21 **jeff**  7:7,19 **jeffrey**  4:8 **jericho**  27:4 **jisung**  40:5 **john**  7:24 9:13 **joint**  25:6 26:19 27:24 28:1 31:13 33:15 **jointly**  13:17 40:15 **jones**  4:3 **jp**  24:19 25:3 30:9 32:9 33:20 **judge**  2:23 6:2 6:4,16 7:2 45:21 46:1 **judgement** 10:21 11:3,5 14:15,25 21:2 21:15,15 22:1 22:11 24:13,14 25:12,24 29:10 35:2,5,15,18 | | **lack**  19:15 38:11 **lacked**  35:20 **lacks**  25:14 42:8 **laco**  36:2 **landmark** 11:16,21 **large**  11:6 17:24 **law**  4:17 5:1 7:5 8:2 14:20 17:18 18:1 21:13,23 24:7 25:2,15 35:19 40:2,16 41:6 42:4,17,20 44:2 **lawsuit**  10:25 **lazzar**  15:12,14 16:1,20 **lazzara**  15:7 **lease**  11:25 12:2 45:17 **leave**  44:15 **legal**  18:11 34:10 49:20 **legitimate** 11:18 21:8 **leinwald**  10:15 **length**  14:13 14:14 24:3 **lessons**  41:25 | **liable**  18:15 37:15 40:15 **lime**  17:13 **limited**  9:16 22:25 42:11 **line**  48:4 **lines**  26:24 **lippe**  42:13 **liquidated**  13:1 **liquidating** 1:11,20 7:9,11 **lisa**  12:22 **listed**  9:6 **litigation**  17:12 43:19 **little**  46:15 **live**  45:7,7 46:16 **llc**  1:24 6:24 10:17 11:2 13:4 16:13 32:16,19 **llp**  4:3 **loan**  11:23 19:24,24 20:5 |
| | **k** | | |
| | **kaiser**  19:13 **kept**  17:9 **kettlepond** 27:4 **kim**  40:5 **knew**  11:17 39:2 **know**  14:11 43:11,19 46:8 46:9 **knowledge** 15:15,21 | | |

[loan - name]    Page 13

28:25

**long**  24:3 28:12
45:12,18

**longer**  12:21
46:12

**look**  19:11 31:8
38:8

**looking**  26:17

**lot**  43:20,22

**lung**  35:6

**lyman**  35:5

**m**

**m**  1:11,20 6:22
6:23

**m&t**  16:7,12
24:17 26:15
32:8,8

**made**  7:25 8:16
8:19,25 10:10
18:17 19:3
20:10 21:3,9
21:13,18,22
22:8 23:9
24:17,18,20,21
24:21 25:1,19
25:21 34:22,25
35:20,22 36:3
37:12,13,17,22
38:1 40:11

**main**  30:2

**maintain**  45:16

**maintained**
26:14 27:9
42:1

**maintenance**
33:9 41:24

**make**  6:5 11:9
14:22 17:25
43:24,25 44:1

**making**  35:1

**manage**  27:6
41:14

**managed**  9:17

**management**
1:15 4:18 9:12
26:10 27:2
32:22

**march**  10:25
13:16,24 27:10
29:9

**material**  14:18
14:19 20:8
23:2 34:13,14
36:16,24 39:11
39:16 40:9

**matter**  1:5
7:16 14:20,25
17:18 21:23
23:3,4 30:22
35:19 41:6
42:4 44:2

**matters**  14:12
23:1 24:1,2

**meaningful**
43:14

**means**  16:4

**measuring**
20:23

**mediation**  26:1
26:5 43:11
44:7

**mediator**  44:11

**medical**  26:17
27:1

**melville**  5:4

**member**  13:22

**membership**
32:20

**memorialized**
29:10 32:20

**messages**  20:1

**met**  11:8 36:5
41:6

**million**  10:3,8
10:10 11:13
21:4 24:17
25:4,19 27:19
27:21,23 28:4
28:7,9,18,21
28:21,22,24,24
29:2,6,7,8,11
29:14,14,15,23
30:9,20,24
31:14,24,25
32:1,4,6,8
38:14,14,24
39:12,18,23
40:11 41:8
42:24

**mineola**  49:23

**minutes**  27:9
39:19 42:2

**mipa**  32:21
33:2,5,6,13,17

**mitchell**  12:4

**mix**  46:16

**money**  9:20
10:13 11:24
12:22,23 21:14

35:1 39:25
40:2 41:17

**monies**  11:20
18:2 41:20

**month**  27:12

**months**  34:8

**morgan**  24:19
25:3 30:9 32:9
33:20

**morning**  6:2,3
6:13,15 7:2,4,7
7:10,14,15
45:24

**motion**  8:6,7,8
8:24 14:6,7,23
22:11 24:14
25:12,23 42:7
46:4 48:5,8,11

**motions**  8:5
9:2 14:7,9,21
14:25 22:10
23:8

**moves**  18:12

**mpia**  33:9

**multiple**  9:5
11:12 13:15
17:24 29:7
33:7

**mute**  6:21

**muted**  6:4

**myriad**  8:14

**n**

**n**  4:1 6:1 48:1
49:1

**name**  6:20
10:16 11:18
12:12

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 78 of 79 PageID #: 2399

[names - outstanding]                                               Page 14

names  26:12
narrative  7:25
  24:5
near  42:7
nearly  14:12
  28:17
necessary
  30:23 43:24
need  17:9 23:8
  30:15 43:6,21
  43:25 44:3,19
  45:8
needed  12:21
  27:23
needs  43:5
negotiating
  28:6
negotiations
  33:3
net  28:20 29:2
  29:3 31:24
  34:5
network  32:22
  32:23 33:22
  37:5,7
never  11:20
  27:16 33:5,6,7
  33:12,13,14
new  1:2 2:4 4:6
  4:13,20 9:15
  18:1,16,24
  21:12,13 23:23
  25:16 27:3,4
  34:20,24 35:9
  35:21 37:16
  39:13 40:2,16
  42:9,17,20

newhouse
  35:11 40:7
newly  13:5
niknim  1:15
  4:18 24:20
  25:3,22 27:2,2
  27:6,6,8 30:10
  31:19 32:9
  33:19 37:1,8
  39:15,21,24
  40:1,11,14
  41:8,11,13,15
  41:19,22,22,25
  42:2
nolan  4:8 7:7,7
  7:17,19,19
  23:6,14 43:3
non  8:22 10:5
  10:16 29:16
  33:22 37:4
noncomplian...
  36:22
note  20:4 28:22
  28:24
noted  21:24
  22:14 38:12,17
  42:23
notes  29:18
notice  8:4
november  11:2
  11:6
number  6:22
  6:23 10:23
  13:20
ny  4:6,13,20
  5:4 49:23

**o**

o  2:21 6:1 49:1
object  16:20
  32:19,21 33:23
  34:3,6
objected  15:7
  16:6
objection  17:2
  17:5
objections  8:15
  15:5,18,25
  17:6
objects  15:11
obligation
  18:17 37:17
obligations
  31:2
observe  43:23
observed  42:1
obviously  17:3
occur  29:9
occurred  17:22
  19:2 32:11
  34:7 37:17,25
  38:20
occurrence
  31:11
october  13:10
offering  16:24
office  4:17
officer  9:24
  26:17 27:5
  30:2,3 39:4
  41:13
officers  9:17
  39:1

okay  44:24
  45:2 46:1
old  49:21
once  6:18
  20:16 22:17
  29:25
ongoing  45:9
opened  16:12
opening  16:7
  16:16
operated  9:9
  9:11 26:22
operating  9:24
  22:7 26:8 27:3
  30:2
opinion  16:18
  16:24 20:22
opportunity
  45:3
opposed  46:14
order  9:3
  11:24 23:5,7
  43:4,8
orders  23:22
orion  1:6,12,21
  7:9 10:6,7,9,12
  10:20 15:18
  22:1 28:6 30:2
  30:6 39:4
  41:17
outlined  20:14
outset  36:15
  42:7
outstanding
  10:23 11:5
  21:2 28:22,24
  28:25 35:16

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-19    Filed 05/12/25    Page 79 of 79 PageID #: 2400

[overall - porteck]                                                        Page 15

| | | | |
|---|---|---|---|
| **overall** 21:7 | 26:16 27:17,23 | **pay** 20:18 | **petrozza's** |
| **overruled** 16:1 | 28:3,6,10 29:5 | 36:10 41:23 | 9:20 13:3 |
| 17:3,6 | 29:16 32:2,15 | **payment** 8:19 | **phone** 6:21 |
| **oversee** 17:11 | 33:1 37:6 39:1 | 30:24 32:6 | **phrase** 27:21 |
| **owed** 12:16 | **parmar's** | 36:21 37:1 | **physician** 11:1 |
| 13:8 31:15,19 | 38:14 | 40:11 | 11:4 26:10 |
| 31:20 34:2 | **part** 11:6 16:3 | **payments** 33:8 | 27:10 37:5 |
| 37:7,8 | 16:4 26:2 32:2 | 41:25 | **physicians** |
| **own** 25:7 | 36:13 43:8 | **pc** 26:25 | 27:18 30:18,21 |
| **owned** 26:21 | 45:24 | **pca** 26:25 | 32:22,23 33:22 |
| 32:16,18,25 | **partial** 24:14 | 28:23 29:3 | 37:7 |
| **owner** 18:4 | 25:12,23 42:6 | **pending** 9:4 | **piercing** 40:15 |
| 40:17,24 | 43:12 | 14:22 24:1 | **plaintiff** 7:20 |
| **ownership** | **partially** 31:2 | **percent** 10:9 | 7:21 8:6 11:2 |
| 10:6,9 11:15 | **participated** | 13:22 | 19:22 21:17 |
| 32:18 | 40:3,10 | **period** 34:9 | 35:3 |
| | **particularly** | 45:6 | **plaintiffs** 1:13 |
| **p** | 15:11 17:10 | **permeable** | 1:22 7:8 |
| | **parties** 6:21 | 44:21 | **plaintiff's** 14:6 |
| **p** 4:1,1,8,15 6:1 | 8:5 14:4,11,13 | **person** 9:24 | **plaza** 2:3 |
| **p.c.** 5:1 | 14:16 19:14,16 | 35:1 45:4,8 | **pleadings** |
| **p.m.** 12:6 | 22:15 24:3 | **personal** 11:23 | 12:13 14:4 |
| **pachulski** 4:3 | 25:5,7,25 26:5 | 15:20 27:7 | 22:14 26:11 |
| **page** 28:13 | 27:22 28:5 | 41:3,14,16,19 | 42:24 |
| 48:4 | 30:12,25 32:10 | 41:23 | **please** 6:17,18 |
| **paid** 10:11,13 | 34:12 40:3 | **petition** 11:5 | 6:19,21,25 |
| 20:17 28:3,16 | 43:10,13 44:15 | 19:2 32:12 | **plenty** 46:16 |
| 29:23 37:3 | **parties'** 9:2 | 34:8,23 37:13 | **pllc** 4:17 |
| 41:15 | **partner** 12:4 | 37:25 | **plus** 11:1 27:11 |
| **par** 15:16 | **party** 14:20 | **petitions** 35:17 | **point** 22:18 |
| **paragraph** | 17:13 32:25 | **petrozza** 7:24 | 28:10 33:25 |
| 26:20 | 37:3 | 9:13,14,18,21 | **points** 44:6 |
| **parent** 40:17 | **passing** 39:8 | 10:1,10,13 | **pool** 41:23 |
| **parmar** 9:22 | **past** 26:2 | 11:8,10,22 | **porteck** 24:23 |
| 9:23 10:3,14 | **paul** 9:22 | 12:17,19 20:2 | 26:18,19,20,24 |
| 11:8,17,23 | 26:16 | 20:13,17,17 | 27:11,13,13,16 |
| 12:4,6,10,23 | | | 27:20 29:1,13 |
| 12:23,25 13:6 | | | |
| 16:12 20:13 | | | |

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 1 of 78 PageID #:
2401

[porteck - receive]                                                        Page 16

29:24,25 30:19
31:20 36:22
38:13,18 39:12
**portion** 29:18
30:13 40:12
**portions** 34:17
**position** 40:1
**positions** 39:4
**possession**
20:15
**power** 18:6
**practical** 30:22
**practice** 9:12
11:1,4 14:12
24:2 26:9
27:18 30:18,21
46:13
**practices** 26:10
27:11
**preceded** 35:15
**prefer** 46:8
**prepare** 44:19
44:20
**prepared** 33:3
41:5 44:1
**prepetition**
8:20 9:9
**present** 18:18
37:18 45:3
**presented** 15:2
**presiding** 6:17
**pretrial** 43:17
44:20
**prevail** 21:17
**price** 27:19,21
27:22,25 28:4
28:7,12,13,18

30:14 38:13,15
**primarily** 9:12
26:9
**primary** 9:22
9:24
**principal** 9:22
**prior** 21:3,4
23:25 32:11
34:8,23
**private** 11:7,7
11:9,11
**privilege** 40:24
**probably**
43:22
**probative**
20:24
**procedure** 8:13
**procedures**
24:8
**proceeding** 8:3
8:18 9:6 13:24
15:17 22:23
23:19,20,25
34:17 36:7
44:4 45:25
46:11
**proceedings**
23:21 47:1
49:4
**proffered**
16:25
**projections**
33:10
**promise** 19:24
20:3
**promissory**
20:4

**proof** 10:21
35:17 41:6
**proper** 8:4,4
23:24
**property** 11:25
12:1,20 17:17
17:19,20 18:10
18:13,25 20:16
32:5 37:24
**proposed** 25:7
**protect** 30:18
30:23
**protocol** 45:5,9
**provided** 8:5
12:1,23 13:13
20:6 22:4 25:5
25:7 27:1
29:10 33:6,11
33:12,14 38:22
**provides** 18:16
27:18 31:1
34:24
**providing**
16:23
**provisions**
36:23 42:9
**purchase**
24:22 27:12,19
27:21,22 28:4
28:6,12,12,18
30:13,14 32:21
33:15 36:23
38:15,18,22
**purchaser**
30:19
**purchasing**
26:18 41:24

**purpose** 10:8
30:17
**purposes** 8:23
14:1 16:1 22:5
22:23,25 24:11
31:2 34:16,18
38:10 41:10,11
41:16 42:5
44:20
**pursuant** 8:12
27:11 31:5
**put** 6:21

**q**

**question** 17:16
21:20 22:3,6
28:9 36:6
**questions** 21:6

**r**

**r** 2:21 4:1,17
4:22 6:1 49:1
**raised** 8:15
15:19
**raises** 8:8
**ray** 36:2
**read** 26:11
**really** 28:3
**reason** 15:4
22:19
**reasonably**
36:9
**reasons** 9:1
20:14 21:18
22:10 25:17
43:7,7
**receive** 11:12
11:20 30:19

Case 8-20-08049-ast    Doc 148    Filed 08/08/24    Entered 08/08/24 14:49:43
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 2 of 78 PageID #: 2402

[received - routinely]                                                    Page 17

| | | | |
|---|---|---|---|
| **received** 12:18 20:18 39:25 | **reference** 23:23 | **remember** 6:19 44:11 | **resolve** 43:14 46:17 |
| **receiving** 12:20 41:17 | **referred** 10:15 30:10 | **rendered** 35:10 36:6 | **respect** 15:6 17:16 21:11 34:10 38:12 39:23 |
| **recite** 9:6 14:16 34:11 43:5 | **reflect** 13:8 31:16,20 | **repaid** 8:22,22 **repay** 19:25 20:3 | **restating** 43:7 |
| **record** 6:20 9:7 16:3,4 17:22 20:3,7,13 21:1 22:1 23:9 26:12 28:15 29:4 43:6,8 46:25 49:4 | **reflected** 31:17 31:18 **refocusing** 44:23 **regard** 35:4,24 **registered** 27:3 **regularly** 17:9 **reily** 20:23 21:25 | **repeat** 23:8 **replete** 15:10 **report** 21:24 33:2,3,4 **represent** 11:15 **representing** 7:18 | **result** 31:20,25 **resulted** 10:21 **retention** 20:15 **return** 12:23 25:25 26:5 32:4 43:10 **returns** 33:12 **revenue** 9:12 26:9 33:10 |
| **recorded** 6:17 **records** 12:15 13:8 15:13 17:4,4,5,6,9,13 29:9 31:15,18 31:19,22 34:1 34:4 | **reinventing** 43:21 **relate** 8:16 29:20 **related** 15:17 **relationship** 10:2 20:12,13 38:25 | **request** 16:11 25:18 38:14 43:1 **requests** 20:2 **required** 30:20 31:9 33:2,3,5 38:21 | **revolves** 8:18 **right** 7:12,17 7:22 20:19 23:13,17 44:3 45:14 46:18,21 **rights** 30:18 42:10,12,19 |
| **recover** 24:25 29:23 40:2 **recoverable** 18:10 **recovered** 24:13 | **relevant** 9:13 9:23 26:6,15 **relief** 10:24 25:22 43:5,5,9 43:10 | **requirement** 15:9,21 35:9 **requirements** 38:19,21 43:17 **requires** 32:5 38:4 | **rita** 3:25 49:3,8 **road** 5:3 27:4 49:21 **robinson** 10:15 10:16 11:20 12:4,9 17:23 |
| **recovery** 3:1 18:13 23:19 24:16 39:20,22 39:24 42:15 | **rely** 20:1 **remain** 43:15 **remained** 10:23 11:5 35:16 | **residence** 27:4 **residences** 45:16 **resident** 9:14 **resolution** 43:12,12 46:12 | 18:6 25:1 29:12 33:19 **rosen** 4:10,15 6:2,4,7,11 7:2 7:2,3 43:4 |
| **redo** 15:4 **refer** 9:14,18 10:4,7 12:13 12:14 16:17 17:13 25:4 26:14,19,25 | **remaining** 26:4 34:17 43:9 **remedies** 25:15 | **resolutions** 27:9 42:2 | **routinely** 17:7 |

[rule - software]                                                   Page 18

| | | | |
|---|---|---|---|
| **rule**  8:1,12,13 15:8,9 22:23 24:6,9 34:15 41:9 46:9 | **scale**  11:6 **schedules**  33:5 33:6 **scheduling**  9:3 23:5 | **seeks**  24:16 39:24 **seems**  30:12 44:13 | **settlement** 44:22 45:10 **several**  11:14 26:7 43:18 |
| **ruled**  22:12 **rules**  8:13 15:8 24:8 | **scheiman**  4:17 4:22 7:4,5 43:4 **school**  41:3 | **seized**  21:4 **sell**  27:20 32:15 | **severally**  40:15 **share**  28:12 **shareholder** |
| **ruling**  6:5,9 7:23,25 24:4,5 26:3 | **se**  26:19 **second**  15:22 15:24 16:18 | **seller**  32:22 **seller's**  31:2 **sellers**  27:13 | 9:25 13:21 27:6 41:13 42:2 |
| **rulings**  14:14 15:2 23:9,10 48:3 | 24:25 25:4,10 25:21 29:22 32:13 34:7 | 33:13 **sent**  10:13 12:10,11 14:1 | **shareholders** 27:9 **shares**  33:21 |
| **s** | 36:25 37:2 39:6,15 48:9 | 25:3 32:3,10 **separate**  40:19 | **sheets**  33:10 **sheiman**  7:5 |
| **s**  2:22 4:1 6:1 6:16 | **section**  8:3 18:2,12,16 | 40:21 **separately** | **short**  6:5 23:7 **shortest**  19:22 |
| **s.d.n.y.**  35:7,12 40:6,23 42:14 | 22:2,16 23:22 25:14 30:15 | 14:23 25:7 **series**  9:11 | **shortly**  12:19 29:25 |
| **sale**  29:13 32:20 33:4,17 36:22 38:13 | 31:1,9 34:21 34:24 37:11,11 42:9,15,19 | 26:8 **serious**  22:15 **serve**  30:5 | **side**  28:23 **sideways**  29:15 **signature** |
| **salon**  41:24 **sandpebble** 41:4 | **sections**  33:7 34:19 **sector**  9:11 | **served**  39:3 **services**  11:16 11:21 13:13 | 11:19 49:7 **signed**  11:18 20:4 27:16 |
| **sanford**  4:15 7:2 **sardis**  22:8 | **securing**  31:2 **see**  15:22 18:21 19:8,13 22:8 | 26:10,21 27:1 **set**  16:9 21:16 22:20,22 23:2 | **significant** 43:7 **similarly**  37:16 |
| **sartison**  13:7 16:5,9 **sartison's** | 31:13 33:15 35:5,10 36:2 38:3 40:5,21 | 23:20 25:6,6 26:1,3 28:4 34:15 43:6,16 | **simply**  19:23 30:23 43:4 **single**  41:12 |
| 16:10 **sat**  18:6 **satisfaction** | 41:3 42:13 43:22 **seek**  25:12 | 43:17 44:6 45:22 **setting**  44:7 | **sit**  46:12 **skills**  46:13 **small**  36:9 |
| 31:23 34:4 **satisfied**  21:23 **satisfy**  35:5,19 | **seeking**  23:19 29:23 42:15 | **settings**  38:8 **settle**  43:11 44:19 | **software**  32:15 32:17 |

| | | | |
|---|---|---|---|
| **sole** 27:5 | **start** 7:22 | **successful** | **talk** 22:19 |
| **solutions** 32:23 | 43:16 44:12 | 32:17 | **talking** 22:18 |
| 32:24 33:22 | **started** 43:19 | **sufficient** | **tax** 33:12 41:16 |
| 37:5 49:20 | **state** 6:19 9:14 | 35:19 | **tech** 32:19,22 |
| **solvency** 36:7 | 19:22 25:15 | **suite** 4:19 5:3 | 33:24 34:3,7 |
| 39:7,8 | 33:12 | 49:22 | **technologies** |
| **somewhat** | **stated** 23:1 | **suits** 41:24 | 26:13 29:12 |
| 44:21 | 24:10 26:11 | **summary** 3:3 | 30:4,7,8 |
| **sore** 6:12 | 28:10 30:17 | 8:6,7,23 9:2 | **technology** |
| **sorry** 6:7,11,12 | 31:7 36:15 | 13:25 14:6,7 | 26:21 30:3 |
| **sought** 24:12 | 37:19 42:7 | 14:15,21,24 | **teed** 46:9 |
| 25:22 | 43:10 | 16:3 21:25 | **tends** 45:12 |
| **southern** 10:19 | **statement** 16:7 | 22:11 23:7 | **tent** 35:4 |
| 10:20 21:2 | 16:22 26:20 | 24:13,14 25:12 | **tenth** 28:17 |
| 35:14 | **statements** | 25:18,20,24 | **terms** 18:11 |
| **space** 9:12 26:9 | 16:16 33:11,15 | 29:10 34:11,16 | 28:19 46:3 |
| 26:21 | **states** 1:1 2:2 | 40:11 42:7,23 | **testified** 11:22 |
| **speak** 6:17 | 10:18 | 43:1,8 46:10 | 11:24 12:19 |
| **speaker** 44:5 | **stating** 32:3 | 48:5,8,11 | 28:2 |
| 44:24 45:2,14 | **statutes** 18:19 | **summer** 23:4 | **testifies** 30:17 |
| 45:20 46:1,5 | 37:20,20 | 45:16 | **testimony** |
| 46:19,23 | **stricken** 16:23 | **sunshine** 13:4 | 16:21,25,25 |
| **speaking** 6:19 | **strike** 8:8 14:7 | 13:5,9,10,12 | 43:23 45:7 |
| 6:21 | 22:12 | 16:7,12,14 | **texas** 10:19,21 |
| **specific** 16:22 | **structure** 32:5 | **supported** | 21:2 35:14 |
| **specifics** 12:1 | **subject** 8:11 | 19:24 | **text** 20:1 |
| **spend** 22:17 | **submission** | **supposed** 28:7 | **thank** 23:14,15 |
| **stage** 29:22 | 14:9,12 | **suspect** 23:12 | 23:16 44:9 |
| **stand** 23:10 | **submit** 44:20 | | 46:2,4,23,24 |
| **standard** 34:11 | **submitted** 14:8 | **t** | 46:25 |
| **standards** | 23:11 | | **thanks** 46:6 |
| 14:15 | **subsequently** | **t** 49:1,1 | **that's** 6:7 16:9 |
| **standing** 25:13 | 10:10,14 | **tae** 40:5 | 19:5 |
| 25:14 42:8,18 | **substantially** | **take** 6:25 27:7 | **theories** 39:21 |
| **stang** 4:3 | 31:6 | 46:17 | **theory** 18:11 |
| **star** 13:4,5,9 | **substantive** | **taken** 12:8 | 25:13 39:20,21 |
| 13:10 16:8,12 | 18:11 | 14:14 24:4 | 39:22 |
| | | 45:7 | |

[therefrom - typically]                                               Page 20

| | | | |
|---|---|---|---|
| **therefrom** | **transaction** | 39:13,16,24 | **triggered** |
| 17:13 | 11:7,9,12 | 40:4 48:6,9 | 22:16 |
| **therewith**  23:5 | 12:13 13:25 | **transferee** | **true**  49:4 |
| **there's**  16:2 | 21:8 24:22,24 | 36:13 | **trust**  2:22 6:16 |
| **think**  43:19 | 29:8,22,24 | **transferees** | 7:9 27:8,14,14 |
| 44:22 | 31:21 32:14 | 40:4 | 27:16 41:15,21 |
| **third**  4:5,12 | 33:24 36:8 | **transferor** | **truste**  27:16 |
| 32:25 37:3 | 37:4,9 38:13 | 19:17 35:25 | **trustee**  1:11,20 |
| **thousand**  42:3 | 38:22,23 39:17 | 36:5,7,9,13 | 4:4 7:9,11 14:9 |
| **three**  44:18 | 41:8 | 38:5 | 17:11 18:12 |
| **throat**  6:12 | **transactions** | **transferred** | 19:6 21:23 |
| **time**  10:24 | 17:24 19:18 | 17:18 18:9,14 | 23:18 24:13,16 |
| 11:11 12:16 | 39:6 | 18:25 20:16 | 25:9,14,20,23 |
| 13:7 14:13,14 | **transcribed** | 30:9 32:8 | 29:22 32:1 |
| 15:4 17:21 | 3:25 | 33:21,21,23 | 34:22 35:21 |
| 20:9,21 21:3,3 | **transcript**  49:4 | 37:24 | 37:12 38:4 |
| 21:5,9,22 22:7 | **transfer**  8:19 | **transfers**  3:1 | 39:20,24 40:13 |
| 22:17 23:12 | 8:20,24 12:14 | 23:19 24:12 | 41:6 42:8,18 |
| 24:1,3 26:20 | 13:12 14:1,2 | 25:10,11 35:15 | 42:23 |
| 26:24 29:1 | 17:22 18:23 | 35:22 37:24 | **trustee's**  25:13 |
| 32:17 35:16 | 19:2,3,7,21,23 | 38:1 39:2 | 25:18 48:5,8 |
| 39:2,6,9 42:21 | 20:9,10,21,24 | 42:16,22 43:1 | **trustee's**  8:6 |
| 42:25 44:14,22 | 21:3,5,12,16 | **treatments** | 21:11 |
| 45:12,18,20,22 | 21:20,22 22:8 | 41:24 | **trustworthin...** |
| 46:13,16 | 22:17,18,20 | **trial**  9:3 15:4 | 17:8 |
| **times**  9:13,23 | 24:17,20 25:1 | 16:4 21:10 | **try**  44:18 46:19 |
| 26:6,15 29:6,7 | 25:2,4,5,9,10 | 22:22,25,25 | **turn**  23:17 |
| 41:12 | 25:19,19,21,21 | 23:3,5,12 | 34:19 39:19 |
| **title**  8:3 23:22 | 29:21 30:11 | 24:11 26:1,4 | 42:6 |
| **today**  43:6,13 | 31:4,25 32:1,3 | 29:20 34:18 | **two**  18:19 19:2 |
| 43:18 44:2,3 | 32:10,11,13 | 38:10 41:11 | 24:12 26:24 |
| **today's**  24:4 | 34:7,20,22,24 | 42:5 43:16,20 | 32:11 34:8,23 |
| **today's**  14:14 | 35:10,20,25 | 44:21,23,24 | 37:12,25 42:3 |
| **together**  24:15 | 36:3,6,11,17 | 45:4 | 42:21 |
| 37:21 | 36:18,19,21,25 | **trials**  45:10 | **type**  17:9 |
| **told**  27:23 | 37:2,12,22,25 | **tried**  15:1 23:4 | **typically**  38:7 |
| 45:13,14 | 38:1 39:9,11 | 45:23 | 38:8 |

[u.s. - year]                                                                     Page 21

| u | united   1:1 2:2 | venue   8:3 | wheels   43:21 |
|---|---|---|---|

**u**

**u.s.**   2:23 35:6
   35:11 40:22
**ultimate**   24:11
**ultimately**   8:22
   10:21 14:25
   22:20 29:19
**unconcerned**
   27:25
**under**   8:1,3
   15:8 17:3,4
   18:23 19:18
   21:22 22:2
   23:22 24:5
   30:19 32:14
   33:13 34:15
   35:9,21 37:10
   37:16 38:17
   39:13 40:2
   42:9,17,20
   45:4
**undertaken**
   9:19
**undisputed**   8:2
   17:22 18:25
   19:3 20:21
   22:24,24 24:7
   24:10,10 25:6
   25:8 34:16,18
   37:1 41:10
   42:18
**unidentified**
   44:5,24 45:2
   45:14,20 46:1
   46:5,19,23
**union**   41:3

**united**   1:1 2:2
   10:18 29:17
**unknown**   2:25
**unrebutted**
   21:25
**unsatisfied**
   42:21
**unsecured**
   42:12,13,25
**use**   25:14 41:2
   41:3 42:19
   45:9
**used**   29:13
   41:22 44:11,14
**uses**   40:17
**utilize**   42:19
**utilized**   17:23

**v**

**v**   1:14,23 6:22
   6:24 7:23
   15:23 17:13,14
   22:8 23:18
   35:6,11 36:14
   40:5,7,22 41:4
   42:13
**valuation**
   14:22 29:4
**value**   28:19,20
   28:23,25 29:2
   29:3,5
**valued**   28:21
**various**   8:5,8
   9:5 14:4,8,9
   33:5 38:8,18
   38:20
**veil**   40:15

**venue**   8:3
**veritext**   49:20
**vernacular**
   29:15
**voice**   41:24
**voidable**   37:19
**vulnerable**
   35:23

**w**

**walia**   1:15 4:11
   6:23 7:1 23:18
   24:21 26:22,23
   27:5,6,13,14
   27:14,16,19,23
   27:25 28:2
   29:5,15,23
   30:1,6,16
   31:19 32:3,14
   32:16,18 38:15
   39:1,5,20,25
   40:9,14 41:7
   41:13,16,17,20
   41:22
**walia's**   27:4
   28:14 31:14
   32:10 41:14
**want**   26:2
   39:19 44:6
   46:1
**wanted**   11:12
   11:24
**way**   11:14
   19:22 45:15
**weltsch**   3:25
   49:3,8
**went**   20:16
   29:15 43:11

**wheels**   43:21
**wife's**   41:21
**willing**   32:4
**wire**   12:5,7,10
   12:20 14:1
   24:17,25 25:5
   25:19 29:11
   31:4
**wired**   12:25
   13:4,11 29:14
   33:18
**wiring**   12:24
**withheld**   30:23
**witness**   43:23
**witnesses**
   15:15 45:8
   46:14
**wl**   15:23 18:21
**wong**   15:6,11
   15:14,25 16:20
**won't**   9:6
   14:16 22:17
**work**   23:7 27:7
   41:14 43:4
**working**   12:21
   33:9
**writing**   27:20
**written**   15:22
   29:4 30:25

**x**

**x**   1:4,8,10,17
   1:19 2:1 36:2
   48:1

**y**

**year**   12:17
   23:3 31:16

**[year – zoom]**

34:9 45:12,18
**years** 19:2
32:11 34:23
37:13,25 43:18
**yoo** 40:6
**york** 1:2 2:4
4:6,13,20 9:15
18:1,16,24
21:12,13 23:23
25:16 27:3,5
34:20,24 35:9
35:21 37:16
39:14 40:2,16
42:9,17,20
**you're** 6:4 7:17

**z**

**ziehl** 4:3
**zoom** 45:3,5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been

served via U.S. Mail and the Court's Electronic Filing System to:

| | |
|---|---|
| Sanford P. Rosen, Esq. | Eugene Ronald Scheiman, Esq. |
| Paris Gyparakis, Esq. | **The Law Office of Eugene R. Scheiman** |
| **ROSEN & ASSOCIATES, P.C.** | 570 Lexington Avenue |
| 747 Third Avenue | Suite 1600 |
| New York, NY 10017-2803 | New York, NY 10022 |
| Email: srosen@rosenpc.com | Email: eugene.scheiman@scheimanlaw.com |
| pgyparakis@rosenpc.com | *Attorney for Defendants Arvind Walia and* |
| *Attorneys for Defendants Arvind Walia and* | *Niknim Management Inc.* |
| *Niknim Management Inc.* | |


_____/s/ Rolanda Mori_____
Rolanda Mori

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al*.,<br><br>                     Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS<br>CAPACITY AS LIQUIDATING TRUSTEE OF<br>ORION HEALTHCORP, INC., ET AL.,<br><br>                     Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT<br>INC.,<br><br>                     Defendants. | Adv. Proc. No. 20-08049 (AST) |

## ORDER GRANTING AND DENYING IN PART JUDGMENT AGAINST DEFENDANTS AR IND WALIA AND NIKNIM MANAGEMENT INC.

The Court, having held trial in the above-referenced matter on July 24, 2024, and having considered the evidence, the Court's April 10, 2024 ruling on *Motion for Summary Judgment, or in the Alternative Summary Adjudication as Against Defendants Arvind Walia; Niknim Management Inc*, prior pleadings and the record in this bankruptcy case as a whole; and having set this matter for a ruling conference on November 20, 2024 (the "Ruling Conference"); and sufficient cause appearing; and for the reasons set forth on the record of the Ruling Conference including certain legal and factual findings of the Court,

**IT IS HEREBY ORDERED ADJUDGED AND DECREED** that:

1.      Plaintiff's First Cause of Action to Avoid an Intentionally Fraudulent Transfer under 11 U.S.C. §§544 and 548(a)(1)(A) and N.Y. Debtor and Creditor Law §276, and Second Cause of Action to Avoid a Constructively Fraudulent Transfer under 11 U.S.C. §544 and N.Y. Debtor and Creditor Law §§272-275, and §273-a, to avoid and recover the

transfer in the amount of $2,500,000 (the "<u>First Transfer</u>"), made to the Defendants Arvind Walia and NIKNIM Management, Inc., is <u>denied</u> as to either causes of action.

2.  Plaintiff's First Cause of Action to Avoid an Intentionally Fraudulent Transfer under 11 U.S.C. §§544 and 548(a)(1)(A) and N.Y. Debtor and Creditor Law §276, Second Cause of Action to Avoid a Constructively Fraudulent Transfer under 11 U.S.C. §544 and N.Y. Debtor and Creditor Law §§272-275, and §273-a, to avoid and recover the transfer in the amount of $1,520,000 (the "<u>Second Transfer</u>") and Fourth Cause of Action For Recovery of Property Pursuant to 11 U.S.C.§544 and N.Y. Debtor and Creditor Law is <u>granted</u> as to each causes of action. Defendants NIKNIM Management, Inc., and Arvind Walia, individually, are joint and severally liable for $1,520,000.

3.  Plaintiff's Fifth Cause of Action to Object to the Claim No. 10067, filed in the amount of $61,590, as filed by Arvind Walia, is <u>granted</u> and the claim disallowed pursuant to Bankruptcy Code section 502(d).

4.  Plaintiff is awarded plus pre- judgment interest in accordance with the applicable interest rate as to the Second Transfer as against Defendants Arvind Walia and NIKNIM Management Inc., jointly and individually.

5.  The Court retains jurisdiction over remaining matters related thereto including costs and issuance of judgment.

Dated: December 6, 2024
Central Islip, New York



_____
Alan S. Trust
Chief United States Bankruptcy Judge

```
 1                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF NEW YORK
 2                                          .
    In re:                                  .      Central Islip, New York
 3                                          .
                                            .      November 20, 2024
 4  EHRENBERG V. ARVIND WALIA ET AL         .
                                            .      8-20-08049-AST
 5                                          .
                                            .      Calendar Time 10:00 AM
 6  . . . . . . . . . . . . . . . . . . .   .

 7                       8-20-08049-AST
                 EHRENBERG V. ARVIND WALIA ET AL
 8
        [1] COMPLAINT BY HOWARD M. EHRENBERG IN HIS CAPACITY AS
 9   LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL AGAINST
       ARVIND WALIA, NIKNIM MANAGEMENT INC. - NATURE(S) OF SUIT:
10  (12(RECOVERY OF MONEY/PROPERTY - 547 PREFERENCE)), (13(RECOVERY OF
      MONEY/PROPERTY - 548 FRAUDULENT TRANSFER)), (14(RECOVERY OF
11                   MONEY/PROPERTY - OTHER)).

12                 BEFORE HONORABLE ALAN S. TRUST

13  Attorney for the Plaintiff:    JEFFREY NOLAN
                                   Pachulski Stang Ziehl & Hones
14                                 10100 Santa Monica Boulevard
                                   13th Floor
15                                 Los Angeles, CA 90067

16  Attorney for the Defendants:   SANFORD ROSEN
                                   Rosen & Associates, P.C.
17                                 P.O. Box 1274
                                   Shelter Island Heights, NY 11965
18
                                   EUGENE SCHEIMAN
19                                 Law Office of Eugene R. Scheiman
                                   17 State Street, Floor 40
20                                 New York, NY 10004

21  Court Transcriber:             CATHERINE ALDRICH
                                   E-Scribe
22                                 2376 Cleveland Street
                                   Bellmore, NY 11710

23


24
    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.
```

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 12 of 78 PageID #:
2412

2

1              THE COURT:  This is Judge Trust. We'll take appearances

2       please, starting with the plaintiff.

3              JEFFREY NOLAN: Good morning, Your Honor. Jeff Nolan

4       appearing on behalf of the plaintiff, Howard Ehrenberg. Also

5       attending is Mr. Ehrenberg.

6              THE COURT: And then for the defendants?

7              SANFORD ROSEN: Good morning, Judge. Sanford Rosen,

8       co-counsel for the defendant.

9              EUGENE SCHEIMAN: Eugene Scheiman for defendant Walia.

10             THE COURT: Alright. Alright. Good morning. Do the parties

11      have a settlement to announce?

12             JEFFREY NOLAN: Unfortunately, no, Your Honor.

13             THE COURT: Okay. Alright. Then, this morning will be the

14      court's ruling after trial. The matters presented are court

15      proceedings under Title 28 Section 157B. This court has authority

16      to hear and determine under the standing orders of reference in effect

17      in this district following what constitutes the court's post trial

18      findings of fact and conclusions of law. By way of background, the

19      debtors, they were all listed on the petition starting with Orion

20      Health Corp Inc. They were a consolidated enterprise of several

21      companies engaged, excuse me, aggregated through a series of

22      acquisitions, which operate in the healthcare space, primarily

23      revenue and practice management for physician practices. This

24      adversary proceeding involves two transfers sought to be recovered

25      by the trustee as either actual and/or constructive fraudulent

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 13 of 78 PageID #:
2413

3

1  transfers under Section 544 and 548 of the Bankruptcy Code and

2  Sections 273 through 276 of the New York Debtor and Creditor Laws.

3  Both transfers were made by one or more of the debtors either directly

4  or indirectly to the named defendants, Arvind Walia and Niknim

5  Management. The first transfer was made two years pre-petition on

6  April 15, 2016 from an M & T Bank account of the debtors to a JP

7  Morgan Chase bank account of the corporate defendant, Niknim in the

8  amount of $2,500,000. I'll refer to that as the first transfer. That

9  was made at the direction of Paul Parmar who was the control person

10 on behalf of one or more of the corporate debtor entities at the

11 time. That transfer was made at the direction of defendant Walia

12 on behalf of an entity called Porteck Corporation, which was a seller

13 in connection with an asset purchase agreement, which I'll refer

14 to as the APA. The APA provided for a purchase price to the favor

15 of Porteck in the amount of $12,800,000. The terms of that APA

16 including an indemnification provision under Section 1.6 which

17 provided the $2,500,000 of the purchase price was to be escrowed

18 to indemnify the buyer of Physicians Practice Plus in the event that

19 claims arose post closing. The provision- the contractual provision

20 provided that if funds and indemnification were not needed by the

21 buyer, they could be returned to the seller. The record reflects

22 that the indemnification clause or the rights of the buyer to seek

23 indemnity were never triggered. The second transfer was a wire

24 transfer made one year pre-petition in June of 2017 from a lawyer's

25 trust account, lawyers to the benefit of the debtors, which was held

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 14 of 78 PageID #:
2414

4

1   at JP Morgan Chase. That transfer was made to Niknim in the amount

2   of $1,520,000. I'll refer to that as the second transfer and

3   collectively both as the transfers. The second transfer reportedly

4   represented a closing payment to be made pursuant to the terms of

5   a membership purchase agreement with an entity called Objectech.

6   Walia was the owner of Objectech and under the Objectech transaction,

7   Walia on behalf of Objectech agreed to sell to Parmar, a software

8   company indirectly owned by Walia called AllRad Direct, LLC.

9   Objectech was a shell company that owned AllRad. Sale agreement was

10  signed by Objectech as seller and Physicians Health Network

11  Management Solution, an entity owned and controlled by Parmar as

12  the buyer. Earlier in this adversary proceeding, both parties moved

13  for summary judgment in all claims. On April 10th this year, this

14  court held a ruling conference on the summary judgment motions. At

15  that time, the court described in great detail both the Porteck

16  transaction and the Objectech transaction and outlined its reasons

17  for denying the defendant's motion for partial summary judgment and

18  granting in part the trustee's motion for summary judgment. The only

19  relief requested at that time was against defendant Niknim and only

20  on the second transfer. The court incorporates its summary judgment

21  ruling for purposes of this ruling conference. The court then set

22  a date for trial on the remaining matters at issue after the parties

23  were not successful in mediation. The trial was held on July 23rd.

24  For the reasons to follow, the court has determined that the second

25  transfer is also avoidable against Mr. Walia, and the trustee can

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 15 of 78 PageID #:
2415

5

1   recover the second transfer in the amount of $1,520,000 from either

2   defendant; however, the court has also determined that the trustee

3   did not satisfy his burden of proof demonstrating that the first

4   transfer can be avoided against either Walia or Niknim. At the summary

5   judgment stay, the court had found a number of facts to not be in

6   material dispute, but found others to be in dispute and directed

7   the parties as part of their pretrial- joint pretrial memorandum

8   to stipulate the facts, which were not at issue for purposes of trial.

9   Those stipulated facts appear at Docket 137, the joint facts. I will

10  incorporate those into this ruling as well, but will only recite

11  a few of them. With respect to the first transfer of $2,500,000 in

12  2- in 2015, Mr. Parmar, then CEO of Constellation Healthcare

13  Technologies, wanted to acquire a medical billing company and became

14  interested in Porteck. Porteck was a technology services company

15  owned and controlled by Mr. Walia, who was its CEO. At the time,

16  Porteck had two business lines referred to as HMS and PC Advantage,

17  which were both medical billing companies. In March of 2015, the

18  debtor and the- the later debtor entity, Physician Practice Plus

19  acquired the assets of Porteck pursuant to an APA. The sellers were

20  Walia, Porteck and the Janaminder Trust. Mr. Walia executed the APA

21  on behalf of all entities, but the Walia Trust, also the seller never

22  signed the APA. Parmar signed on behalf of the buyer. The APA provided

23  a purchase price of $12,800,000 even though Mr. Walia had agreed

24  in writing to sell Porteck's assets for $10,800,000. The purchase

25  price was "juiced upwards" by $2,000,000 because Mr. Walia- Mr.

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 16 of 78 PageID #:
2416

6

1   Parmar told Walia he needed an extra $2,000,000 to cover deal fees.

2   Mr. Walia testified he didn't really pay attention to the "juiced

3   up" purchase price. The trial evidence reflects that the deal fees

4   were actually under $200,000, not anywhere close to the $2,000,000.

5   As far as the assets being acquired, the net assets of being acquired

6   from AHMS were $1,350,000. The net asset value of PTA at the time-

7   of PCA at the time was $474,000. So the total value of the assets

8   being acquired from Porteck for $12,800,000 was less than

9   $2,000,000. The parties agreed that the purchase price was five times

10  the EBITDA of the acquired business lines. The bank records reflected

11  that a wire of $9,800,000 went from an IOLTA account at Robinson

12  Brogg held on behalf of the debtor CHT to close the purchase price-

13  to close the purchase, but of that $9,800,000, $6,800,000 went to

14  Walia and his entities, and $3,000,000 went "sideways" to another

15  non-debtor entity controlled by Mr. Parmar. After the deal closed,

16  Walia moved over to debtor Orion Health Company as the CEO and then

17  became the chief technology officer of CHT and served in those

18  capacities after both of the transfers at issue were made. Mr. Walia

19  testified about the purpose of the $2,500,000 escrow agreement to

20  protect the buyer in- in the event of a claim. Although the APA,

21  particularly in Section 1.6, calls for the execution of an escrow

22  agreement and the selection of an escrow agent, neither of those

23  ever occurred. As far as the second transfer of $1,520,000, as I

24  stated, that was in connection with the purchase of an entity called

25  Objectech, which was owned- excuse me, purchase of a company Mr.

1   Walia indirectly owned called AllRad, which was actually directly

2   held by Objectech. The purchase agreement required for various due

3   diligence to be undertaken and reports to be issued, but those were

4   never provided. State and federal tax returns were also to be provided

5   to the buyer. Those were not provided. But despite the pre-closing

6   deficiencies, the purchase agreement closed in June of 2017 and the

7   debtor funded the $1,520,000 and acquired the share ownership in

8   AllRad that the agreement called for. The court at trial had four

9   affidavits from the trustee, an expert affidavit of Craig Jacobson,

10  an expert affidavit of Max Mitchell, a fact affidavit of Frank

11  Lazarra, and a fact affidavit of Edith Wong. All of those affidavits

12  as well as numerous other exhibits totaling 31 were admitted. Each

13  of those witnesses were available at trial for cross examination.

14  The court also, upon request of the trustee, took notice of a proof

15  of claim filed by Walia at Claim 10141, a summons and verified

16  complaint filed in New York State Court Criterion's LLC versus Visian

17  Court Physicians Practice Arvind Walia and Constellation

18  Healthcare. The court also accepted the affidavit of Mr. Walia and

19  he was cross examined at trial. The court generally found all the

20  witnesses' testimony to be credible. There were very few conflicting

21  areas of conflict between the witnesses' fact testimony. As parties

22  were well aware, Bankruptcy Code Section 548(a)(1) allows the

23  trustee to avoid transfer made two years prior to the petition date

24  if made with actual fraudulent intent to hinder, delay or defraud.

25  DCL 276 similarly so provides as a matter of New York State Law.

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 18 of 78 PageID #:
2418

8

1    Those two provisions are essentially identical. See this court's

2    opinion in Janitorial Closeout, 213 Westlaw, 492375 at 5. For a

3    transfer to be avoided as actually fraudulent, the debtor moving-

4    the party with a burden of proof must demonstrate that the debtor

5    had an interest in the transferred property, the property occurred

6    within the applicable limitations period, and the transfer was made

7    with actual intent to hinder, delay or defraud. For purposes of this

8    analysis, the court focuses on the intent of the transferor, not

9    the intent of the transferee. The trustee's burden was to establish

10   fraudulent intent by clear and convincing evidence. See in re Jacobs,

11   Bankruptcy Eastern District of New York 2008, 394 B.R. 646. The court

12   routinely in the Second Circuit as elsewhere look in a number of

13   badges of fraud for that determination. See this court's opinion

14   in Zerbo, 392 B.R. 642 at 649. The trustee also sought to avoid the

15   transfers as constructively fraudulent under Bankruptcy Code

16   Section 548 (a)(1)(B) and New York DCL 273 through 275. Under the

17   Bankruptcy Code, the trustee must establish that an interest in the

18   debtors- of the debtor's property was transferred, that it occurred

19   within two years prior to the petition date, that the debtor received

20   less than a reasonably equivalent value in exchange, and that one

21   of the four financial conditions enumerated in the code was

22   satisfied. See in re Molina, 657 B.R. 172 at 186, Bankruptcy Eastern

23   District 2023. Under State Law, a transfer can be a fraudulent

24   conveyance- can be a constructively fraudulent- excuse me- can be

25   a constructively fraudulent transfer if it is made without fair

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 19 of 78 PageID #:
2419

9

1    consideration and neither the transferor was insolvent or rendered

2    insolvent at the time of the transfer, was engaged or about to engage

3    in a business for which its property constitutes a reasonably small

4    capital, or the transferor believed it would incur debt beyond its

5    ability to pay. See in re Dreier, 452 B.R. 391 at 441, Bankruptcy

6    Southern District of New York 2011. Fair consideration of New York

7    DCL 272 requires that when an exchange for property is made that

8    the- that the fair- that the transferor receives a fair equivalent

9    and good faith and- and- excuse me, receives a fair equivalent value

10   in good faith or that when the property is transferred, the obligation

11   is incurred in good faith. It's made to secure a present advance

12   or for payment of antecedent debt, not disproportionately small as

13   compared with the value of the property transferred or the obligation

14   undertaken. The courts generally agree that the determination of

15   fair consideration can be elusive and is not subject to a precise

16   formula. Here in connection- here it is undisputed that the debtors

17   had an interest in- in the property, which was made the subject of

18   both transfers. See joint facts paragraph 6 that they were made within

19   the applicable statutes of limitations. The first transfer was made

20   in connection with the Porteck APA, which was governed by the state-

21   which was governed by the laws of the State of New York. The second

22   transfer was purportedly made in connection with the Objectech

23   purchase agreement also governed by the laws of the State of New

24   York. At the trial, the trustee asserted that defendant should be

25   held liable for both of the transfers, largely arguing that the

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 20 of 78 PageID #: 2420

10

1    transfers arose out of a fraud orchestrated against creditors by

2    Parmar joined in by Mr. Walia, that Walia was Parmar's "partner in

3    crime," and that neither of the transfers could have occurred but

4    for Walia's involvement. Conversely, Walia maintained that he

5    believed the transfers were legitimate. More specifically, as to

6    the first transfer, the trustee's theory is that the Porteck APA

7    escrow provisions, which Walia claims as the source of fair

8    consideration for the $2,500,000 stems from a transaction, which

9    is fraudulent on its face. Much of the evidence deduced to trial

10   by the trustee suggests issues or concerns with the overall purchase

11   price of the APA including the "juiced up" $2,000,000, payment of

12   the purchase price and how the overall agreement was carried out

13   between Walia and Parmar. However, the trustee has not brought any

14   claims concerning the validity of the APA itself. The underlying

15   overall transaction is not and was not the subject of a fraudulent

16   transfer attacked by the trustee either as action or constructive.

17   In fact, at trial, the court questioned the trustee's counsel about

18   whether the trustee believed that he had stated a fraudulent transfer

19   claim against the APA. Counsel's response was that was "irrelevant."

20   Thus, in the court's analysis, it is not the APA or the overall Porteck

21   transaction, which is under attack before this court. The only issue

22   before this court relates to the $2,500,000 second and final payment

23   made approximately 13 months after the Porteck closing. The record

24   is clear that the $2,500,000 which was held back was held back for

25   the indemnity obligations of the seller under the APA. While Section

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 21 of 78 PageID #:
2421

11

1.6 provided that the $2,500,000 would be delivered by Physician Practices, the buyer and a debtor, at closing to an escrow agent pursuant to an escrow agreement. As stated, no such escrow agreement was executed. No such escrow agent was selected. However, it's clear that the intent of the expressed provision of the escrow portion of the APA was to protect the rights of the buyer, Physician Practice and the ability for the buyer to secure their right to funds in the event of the triggering of an indemnity obligation. However, the record is also clear that no indemnity claims were ever asserted by the buyer against the seller, and the trustee has not asserted or proven that the $2,500,000 first transfer exceeded the remaining contractual obligations of Physicians Practice. Thus, the trustee has failed to demonstrate that the first transfer was made without fair consideration. Generally, satisfying a contractual obligation constitutes reasonably equivalent value as a matter of law. While it doesn't express the bar claim for constructive fraud, the trustee must still need the elements of proof and he has failed to do so here. See King Operations in re PA Co-Man Inc, 644 B.R. 553 at 626, Bankruptcy Western District of Pennsylvania, 2022. The court has also found that the evidence submitted at trial including what was undisputed in summary judgment failed to prove the elements of an actual fraudulent transfer concerning the $2,500,000 as it relates to either defendant. Walia was the signatory to the APA as the selling shareholder. He was the owner and control person of Porteck. He informed Niknim to manage his consulting work and take care of his

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 22 of 78 PageID #: 2422

12

1  personal investments and family trust. Walia consistently used

2  Niknim's bank account for business transactions and often for

3  personal needs. The $2,500,000 as stated was the payment of a specific

4  contractual obligation. Again, while much of the evidence proffered

5  by the trustee suggests suspicion around the overall purchase price

6  for the Porteck assets, the APA itself was not the subject of a

7  fraudulent transfer claim. The court also noted that the debtor's

8  books and records did not reflect an antecedent debt of $2,500,000

9  owed to the sellers of Porteck at the relevant time. That in and

10 of itself does not prove a fraudulent transfer because the contract

11 expressly provides for that post closing obligation. Thus, all

12 relief as to the first transfer is denied. As relates to the second

13 transfer, the court previously found that the second transfer was

14 avoidable as against Niknim. For the following reasons, the court

15 also finds that the second transfer is avoidable against Walia and

16 the trustee may recover the $1,520,000 from either defendant.

17 Section 550 of the Bankruptcy Code expressly provides that to the

18 extent that a transfer is avoided under sections 544, 548, or others,

19 the trustee may recover for the benefit of the estate, the property

20 transferred or the value of the property transfer from either the

21 initial transferee of such transfer or the entity for whose benefit

22 such transfer was made or an immediate- or immediate transferee.

23 Court has already avoided the second transfer as against Niknim under

24 Section 548. Section 550 on its face makes such a fraudulent transfer

25 recoverable against any party for whose benefit the transfer was

1  made that retains- or that retains the property transfers. Here,

2  Niknim was the initial transferee. The record is clear that the sole

3  intent of the second transfer being made to Niknim was to benefit

4  Walia. Niknim was clearly a vehicle that Walia used for his personal

5  and business purposes, that it was Mr. Walia who personally benefited

6  from the second transfer as well as actively participating in the

7  transaction. As noted, the sale agreement involved the sale of

8  AllRad, which Mr. Walia indirectly owned. Additional evidence in

9  the record supports this conclusion. On June 21, 2017 at 6:37 p.m.,

10  Walia emailed Sam Zaharis at Constellation Health Group that he was

11  able to sign the APA on behalf of Objectech as he was the only member.

12  He noted in that email that Objectech was a shell company. In that

13  same email, Mr. Walia provided wire instructions for the money to

14  go to Niknim's bank account. Other than the fact that Walia owned

15  both Objectech and Niknim, there is no other relationship between

16  these companies in the record. Thus, there is no reason for the

17  $1,520,000 purchase price to be wired to Niknim's bank account since

18  it was not a seller other than solely as a convenience for and to

19  the benefit of Walia. Again, Walia had testified that he used Niknim's

20  bank account for personal expenses, for business purposes, and as

21  a convenience for himself. Niknim had no interest in AllRad, so it

22  is clear that it was Walia who benefited from the transfer to Niknim.

23  Thus, the court has concluded that the trustee may recover the second

24  transfer from either defendant. Because the court has not granted

25  judgment in favor of the trustee on the first transfer and has

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 24 of 78 PageID #:
2424

14

1   determined that the second transfer is recoverable against either

2   defendant under Section 550, the court need not and therefore will

3   not address the trustee's claims of alter ego. Section 551 provides

4   that any transfer avoidant under Sections 548 and others are

5   preserved for the benefit of the estate. As the second transfer has

6   been avoided pursuant to Section 548 and is found recoverable against

7   both defendants, the second transfer is preserved for the benefit

8   of the estate. Finally, with respect to the claims objection, the

9   trustee also objected to the Walia claims. Section 502D provides

10  that the court will disallow the claim of any entity who has received

11  fraudulent transfer until such transfer has been repaid. On July

12  5, 2018, Walia filed a claim for $61,590. All claims of Walia and

13  Niknim are disallowed unless and until they have repaid the

14  fraudulent transfer receipt in addition to applicable pre and post

15  judgment interest. The court is directing that the trustees submit

16  a judgment in his- in his favor avoiding the second transfer, both

17  as against Niknim and as against Walia with a judgment of liability

18  against both along with all appropriate prejudgment and post

19  judgment interest at the applicable statutory rates as well as

20  allowable costs of suit. That will conclude the court's ruling

21  conference on 20-8049. The court will be in recess until 11 o'clock.

22  I'm going to direct that the the- the attorneys for each side work on

23  a form of judgment to be submitted consistent with my ruling within

24  14 days. The court will now be in recess until 11 o'clock and we

25  will go off the record. Thank you all.

Case 8-20-08049-ast    Doc 154    Filed 12/16/24    Entered 12/16/24 21:04:13
Case 2:25-cv-02032-RPK    Document 5-20    Filed 05/12/25    Page 25 of 78 PageID #:
2425

15

```
 1            JEFFREY NOLAN: Thank you, Your Honor.

 2            SANFORD ROSEN: Thank you.

 3            EUGENE SCHEIMAN: Thank you, Your Honor.

 4

 5                    *          *          *

 6                       CERTIFICATION

 7   I, Catherine Aldrich, certify that the foregoing is a correct

 8   transcript from the electronic sound recordings of the proceedings

 9   in the above-entitled matter.

10

11

12   _____  December 13, 2024

13        Catherine Aldrich

14

15

16

17

18

19

20

21

22

23

24

25
```

## A

**Ability** - 9:5, 11:7
**Able** - 13:11
**About** - 6:19, 9:2, 10:17
**Above** - 15:9
**Accepted** - 7:18
**Account** - 3:6, 3:7, 3:25, 6:11, 12:2, 13:14, 13:17, 13:20
**Acquire** - 5:13
**Acquired** - 5:19, 6:5, 6:8, 6:10, 7:7
**Acquisitions** - 2:22
**Action** - 10:16
**Actively** - 13:6
**Actual** - 2:25, 7:24, 8:7, 11:22
**Actually** - 6:4, 7:1, 8:3
**Addition** - 14:14
**Additional** - 13:8
**Address** - 14:3
**Admitted** - 7:12
**Advance** - 9:11
**Advantage** - 5:16
**Adversary** - 2:24, 4:12
**Affidavit** - 7:9, 7:10, 7:11, 7:18
**Affidavits** - 7:9, 7:11
**After** - 2:14, 4:22, 6:15, 6:18, 10:23
**Again** - 12:4, 13:19
**AGAINST** - 1:16, 4:19, 4:25, 5:4, 10:1, 10:19, 11:10, 12:14, 12:15, 12:23, 12:25, 14:1, 14:6, 14:17, 14:18
**Agent** - 6:22, 11:2, 11:4
**Aggregated** - 2:21
**Agree** - 9:14
**Agreed** - 4:7, 5:23, 6:9
**Agreement** - 3:13, 4:5, 4:9, 6:19, 6:22, 7:2, 7:6, 7:8, 9:23, 10:12, 11:3, 13:7
**AHMS** - 6:6
**AL** - 1:7, 1:13, 1:16
**ALAN** - 1:21
**ALDRICH** - 1:36, 15:7, 15:13
**All** - 2:19, 4:13, 5:21, 7:11, 7:19, 12:11, 14:12, 14:18, 14:25
**Allowable** - 14:20
**Allows** - 7:22

**Allrad** - 4:8, 4:9, 7:1, 7:8, 13:8, 13:21
**Along** - 14:18
**Already** - 12:23
**Alright** - 2:10, 2:13
**Also** - 2:4, 4:25, 5:2, 5:21, 7:4, 7:14, 7:18, 8:14, 9:23, 11:9, 11:20, 12:7, 12:15, 14:9
**Alter** - 14:3
**Although** - 6:20
**AM** - 1:10
**Amount** - 3:8, 3:15, 4:1, 5:1
**An** - 3:6, 3:12, 3:13, 3:16, 4:5, 4:11, 5:19, 6:1, 6:11, 6:21, 6:22, 6:24, 7:9, 7:10, 8:5, 8:17, 9:7, 9:17, 11:2, 11:3, 11:8, 11:21, 12:8, 12:22
**Analysis** - 8:8, 10:20
**And/Or** - 2:25
**Angeles** - 1:26
**Announce** - 2:11
**Another** - 6:14
**Antecedent** - 9:12, 12:8
**Any** - 10:13, 12:25, 14:4, 14:10
**Anywhere** - 6:4
**APA** - 3:14, 3:15, 5:19, 5:20, 5:22, 6:20, 9:20, 10:6, 10:11, 10:14, 10:19, 10:20, 10:25, 11:6, 11:23, 12:6, 13:11
**Appear** - 5:9
**Appearances** - 2:1
**Appearing** - 2:4
**Applicable** - 8:6, 9:19, 14:14, 14:19
**Appropriate** - 14:18
**Approximately** - 10:23
**April** - 3:6, 4:13
**Are** - 2:14, 8:1, 14:4, 14:13
**Areas** - 7:21
**Arguing** - 9:25
**Arose** - 3:19, 10:1
**Around** - 12:5
**ARVIND** - 1:7, 1:13, 1:17, 3:4, 7:17
**AS** - 1:15, 2:25, 3:8, 3:14, 4:2, 4:3, 4:10, 4:11, 5:7, 5:10, 5:16, 6:5, 6:16, 6:23, 7:12, 7:21, 7:25, 8:3, 8:12,

8:15, 9:12, 10:5, 10:7, 10:16, 11:3, 11:15, 11:22, 11:23, 12:3, 12:12, 12:14, 12:23, 13:6, 13:7, 13:11, 13:18, 13:20, 14:5, 14:17, 14:19
**Asserted** - 9:24, 11:9, 11:10
**Asset** - 3:13, 6:6
**Assets** - 5:19, 5:24, 6:5, 6:7, 12:6
**Associates** - 1:28
**AST** - 1:8, 1:12
**At** - 3:9, 3:10, 3:11, 4:1, 4:14, 4:19, 4:22, 5:4, 5:8, 5:9, 5:15, 6:6, 6:7, 6:11, 6:18, 7:8, 7:13, 7:15, 7:19, 8:2, 8:14, 8:22, 9:2, 9:5, 9:24, 10:17, 11:2, 11:18, 11:20, 12:9, 13:9, 13:10, 14:19
**Attack** - 10:21
**Attacked** - 10:16
**Attending** - 2:5
**Attention** - 6:2
**Attorney** - 1:22, 1:27
**Attorneys** - 14:22
**Authority** - 2:15
**Available** - 7:13
**Avoid** - 7:23, 8:14
**Avoidable** - 4:25, 12:14, 12:15
**Avoidant** - 14:4
**Avoided** - 5:4, 8:3, 12:18, 12:23, 14:6
**Avoiding** - 14:16
**Aware** - 7:22

## B

**Back** - 10:24
**Background** - 2:18
**Badges** - 8:13
**Bank** - 3:6, 3:7, 6:10, 12:2, 13:14, 13:17, 13:20
**BANKRUPTCY** - 1:1, 3:1, 7:22, 8:11, 8:15, 8:17, 8:22, 9:5, 11:19, 12:17
**Bar** - 11:16
**Be** - 2:13, 2:24, 3:17, 3:21, 4:4, 5:4, 5:5, 5:6, 7:3, 7:4, 7:20, 8:3, 8:23, 8:24, 9:15, 9:24, 11:1, 13:17, 14:21, 14:23, 14:24
**Became** - 5:13, 6:17

**Because** - 5:25, 12:10, 13:24
**Been** - 14:6, 14:11
**BEFORE** - 1:21, 10:21, 10:22
**Behalf** - 2:4, 3:10, 3:12, 4:7, 5:21, 5:22, 6:12, 13:11
**Being** - 6:5, 6:8, 13:3
**Believed** - 9:4, 10:5, 10:18
**Bellmore** - 1:39
**Benefit** - 3:25, 12:19, 12:21, 12:25, 13:3, 13:19, 14:5, 14:7
**Benefited** - 13:5, 13:22
**Between** - 7:21, 10:13, 13:15
**Beyond** - 9:4
**Billing** - 5:13, 5:17
**Books** - 12:8
**Both** - 3:3, 4:3, 4:12, 4:15, 5:17, 6:18, 9:18, 9:25, 13:15, 14:7, 14:16, 14:18
**Boulevard** - 1:24
**Box** - 1:29
**Brogg** - 6:12
**Brought** - 10:13
**Burden** - 5:3, 8:4, 8:9
**Business** - 5:16, 6:10, 9:3, 12:2, 13:5, 13:20
**But** - 5:6, 5:10, 5:21, 6:13, 7:3, 7:5, 10:3
**Buyer** - 3:18, 3:21, 3:22, 4:12, 5:22, 6:20, 7:5, 11:2, 11:6, 11:7, 11:10
**BY** - 1:1, 1:42, 1:43, 2:18, 2:25, 3:3, 3:20, 4:8, 4:10, 4:11, 5:15, 5:25, 6:15, 7:2, 7:15, 8:10, 9:20, 9:21, 9:23, 10:1, 10:2, 10:10, 10:16, 11:1, 11:10, 12:5

## C

**CA** - 1:26
**Calendar** - 1:10
**Called** - 3:12, 4:5, 4:8, 6:24, 7:1, 7:8
**Calls** - 6:21
**Can** - 4:25, 5:4, 8:23, 8:24, 9:15
**Capacities** - 6:18
**CAPACITY** - 1:15

**Capital** - 9:4
**Care** - 11:25
**Carried** - 10:12
**CATHERINE** - 1:36, 15:7, 15:13
**Central** - 1:4
**CEO** - 5:12, 5:15, 6:16
**CERTIFICATION** - 15:6
**Certify** - 15:7
**Chase** - 3:7, 4:1
**Chief** - 6:17
**CHT** - 6:12, 6:17
**Circuit** - 8:12
**Claim** - 6:20, 7:15, 10:19, 11:16, 12:7, 14:10, 14:12
**Claims** - 3:19, 4:13, 10:7, 10:14, 11:9, 14:3, 14:8, 14:9, 14:12
**Clause** - 3:22
**Clear** - 8:10, 10:24, 11:4, 11:9, 13:2, 13:22
**Clearly** - 13:4
**Cleveland** - 1:38
**Close** - 6:4, 6:12, 6:13
**Closed** - 6:15, 7:6
**Closeout** - 8:2
**Closing** - 3:19, 4:4, 7:5, 10:23, 11:2, 12:11
**Co** - 2:8, 11:18
**Code** - 3:1, 7:22, 8:15, 8:17, 8:21, 12:17
**Collectively** - 4:3
**Companies** - 2:21, 5:17, 13:16
**Company** - 4:8, 4:9, 5:13, 5:14, 6:16, 6:25, 13:12
**Compared** - 9:13
**COMPLAINT** - 1:15, 7:16
**Concerning** - 10:14, 11:22
**Concerns** - 10:10
**Conclude** - 14:20
**Concluded** - 13:23
**Conclusion** - 13:9
**Conclusions** - 2:18
**Conditions** - 8:21
**Conference** - 4:14, 4:21, 14:21
**Conflict** - 7:21
**Conflicting** - 7:20
**Connection** - 3:13, 6:24, 9:16, 9:20, 9:22
**Consideration** - 9:1, 9:6, 9:15, 10:8, 11:14

**Consistent** - 14:23
**Consistently** - 12:1
**Consolidated** - 2:20
**Constellation** - 5:12, 7:17, 13:10
**Constitutes** - 2:17, 9:3, 11:15
**Constructive** - 2:25, 10:16, 11:16
**Constructively** - 8:15, 8:24, 8:25
**Consulting** - 11:25
**Contract** - 12:10
**Contractual** - 3:19, 11:12, 11:14, 12:4
**Control** - 3:9, 11:24
**Controlled** - 4:11, 5:15, 6:15
**Convenience** - 13:18, 13:21
**Conversely** - 10:4
**Conveyance** - 8:24
**Convincing** - 8:10
**Corp** - 2:20
**Corporate** - 3:7, 3:10
**Corporation** - 3:12
**Correct** - 15:7
**Costs** - 14:20
**Could** - 3:21, 10:3
**Counsel** - 2:8, 10:17
**Counsel's** - 10:19
**COURT** - 1:1, 1:36, 2:1, 2:6, 2:10, 2:13, 2:14, 2:15, 4:14, 4:15, 4:20, 4:21, 4:24, 5:2, 5:5, 7:8, 7:14, 7:16, 7:17, 7:18, 7:19, 8:8, 8:11, 10:17, 10:21, 10:22, 11:19, 12:7, 12:13, 12:14, 12:23, 13:23, 13:24, 14:2, 14:10, 14:15, 14:21, 14:24
**Courts** - 9:14
**Court's** - 2:14, 2:17, 8:1, 8:13, 10:20, 14:20
**Cover** - 6:1
**Craig** - 7:9
**Credible** - 7:20
**Creditor** - 3:2
**Creditors** - 10:1
**Crime** - 10:3
**Criterion's** - 7:16
**Cross** - 7:13, 7:19

---

**D**

**Date** - 4:22, 7:23, 8:19

---

**Days** - 14:24
**DCL** - 7:25, 8:16, 9:7
**Deal** - 6:1, 6:3, 6:15
**Debt** - 9:4, 9:12, 12:8
**Debtor** - 3:2, 3:10, 5:18, 6:12, 6:15, 6:16, 7:7, 8:3, 8:4, 8:19, 11:2
**Debtors** - 2:19, 3:3, 3:6, 3:25, 8:18, 9:16
**Debtor's** - 8:18, 12:7
**December** - 15:12
**Deduced** - 10:9
**Defendant** - 2:8, 2:9, 3:7, 3:11, 4:19, 5:2, 9:24, 11:23, 12:16, 13:24, 14:2
**Defendants** - 1:27, 2:6, 3:4, 14:7
**Defendant's** - 4:17
**Deficiencies** - 7:6
**Defraud** - 7:24, 8:7
**Delay** - 7:24, 8:7
**Delivered** - 11:1
**Demonstrate** - 8:4, 11:13
**Demonstrating** - 5:3
**Denied** - 12:12
**Denying** - 4:17
**Described** - 4:15
**Despite** - 7:5
**Detail** - 4:15
**Determination** - 8:13, 9:14
**Determine** - 2:16
**Determined** - 4:24, 5:2, 14:1
**Did** - 5:3, 12:8
**Didn't** - 6:2
**Diligence** - 7:3
**Direct** - 4:8, 14:22
**Directed** - 5:6
**Directing** - 14:15
**Direction** - 3:9, 3:11
**Directly** - 3:3, 7:1
**Disallow** - 14:10
**Disallowed** - 14:13
**Disproportionately** - 9:12
**Dispute** - 5:6
**DISTRICT** - 1:2, 2:17, 8:11, 8:23, 9:6, 11:19
**Do** - 2:10, 11:17
**Docket** - 5:9
**Does** - 12:10
**Doesn't** - 11:16
**Dreier** - 9:5
**Due** - 7:2

---

**E**

**Each** - 7:12, 14:22
**Earlier** - 4:12
**EASTERN** - 1:2, 8:11, 8:22
**EBITDA** - 6:10
**Edith** - 7:11
**Effect** - 2:16
**Ego** - 14:3
**EHRENBERG** - 1:7, 1:13, 1:15, 2:4, 2:5
**Either** - 2:25, 3:3, 5:1, 5:4, 10:16, 11:23, 12:16, 12:20, 13:24, 14:1
**Electronic** - 1:42, 15:8
**Elements** - 11:17, 11:21
**Elsewhere** - 8:12
**Elusive** - 9:15
**Email** - 13:12, 13:13
**Emailed** - 13:10
**Engage** - 9:2
**Engaged** - 2:21, 9:2
**Enterprise** - 2:20
**Entities** - 3:10, 5:21, 6:14
**Entitled** - 15:9
**Entity** - 3:12, 4:5, 4:11, 5:18, 6:15, 6:24, 12:21, 14:10
**Enumerated** - 8:21
**Equivalent** - 8:20, 9:8, 9:9, 11:15
**Escrow** - 6:19, 6:21, 6:22, 10:7, 11:2, 11:3, 11:4, 11:5
**Escrowed** - 3:17
**Essentially** - 8:1
**Establish** - 8:9, 8:17
**Estate** - 12:19, 14:5, 14:8
**ET** - 1:7, 1:13, 1:16
**EUGENE** - 1:32, 1:33, 2:9, 15:3
**Even** - 5:23
**Event** - 3:18, 6:20, 11:8
**Ever** - 6:23, 11:9
**Evidence** - 6:3, 8:10, 10:9, 11:20, 12:4, 13:8
**Examination** - 7:13
**Examined** - 7:19
**Exceeded** - 11:11
**Exchange** - 8:20, 9:7
**Excuse** - 2:21, 6:25, 8:24, 9:9
**Executed** - 5:20, 11:4
**Execution** - 6:21
**Exhibits** - 7:12

**Expenses** - 13:20
**Expert** - 7:9, 7:10
**Express** - 11:16
**Expressed** - 11:5
**Expressly** - 12:11, 12:17
**Extent** - 12:18
**Extra** - 6:1

**F**

**Face** - 10:9, 12:24
**Fact** - 2:18, 7:10, 7:11, 7:21, 10:17, 13:14
**Facts** - 5:5, 5:8, 5:9, 9:18
**Failed** - 11:13, 11:17, 11:21
**Fair** - 8:25, 9:6, 9:8, 9:9, 9:15, 10:7, 11:14
**Faith** - 9:9, 9:10, 9:11
**Family** - 12:1
**Far** - 6:5, 6:23
**Favor** - 3:14, 13:25, 14:16
**Federal** - 7:4
**Fees** - 6:1, 6:3
**Few** - 5:11, 7:20
**Filed** - 7:15, 7:16, 14:12
**Final** - 10:22
**Finally** - 14:8
**Financial** - 8:21
**Findings** - 2:18
**Finds** - 12:15
**First** - 3:5, 3:8, 5:3, 5:11, 9:19, 10:6, 11:11, 11:13, 12:12, 13:25
**Five** - 6:9
**Floor** - 1:25, 1:34
**Focuses** - 8:8
**Follow** - 4:24
**Following** - 2:17, 12:14
**For** - 1:22, 1:27, 2:6, 2:8, 2:9, 2:23, 3:14, 4:13, 4:17, 4:18, 4:21, 4:22, 4:24, 5:8, 5:24, 6:8, 6:21, 7:2, 7:8, 7:13, 8:2, 8:7, 8:13, 9:3, 9:7, 9:12, 9:25, 10:4, 10:8, 10:24, 11:7, 11:16, 12:2, 12:6, 12:11, 12:14, 12:19, 12:21, 12:25, 13:4, 13:13, 13:16, 13:18, 13:20, 13:21, 14:5, 14:7, 14:12, 14:22
**Foregoing** - 15:7
**Form** - 14:23
**Formula** - 9:16
**Found** - 5:5, 5:6, 7:19,

11:20, 12:13, 14:6
**Four** - 7:8, 8:21
**Frank** - 7:10
**Fraud** - 8:13, 10:1, 11:16
**FRAUDULENT** - 1:19, 2:25, 7:24, 8:3, 8:10, 8:15, 8:23, 8:24, 8:25, 10:9, 10:15, 10:18, 11:22, 12:7, 12:10, 12:24, 14:11, 14:14
**From** - 3:6, 3:24, 5:1, 6:6, 6:8, 6:11, 7:9, 10:8, 12:16, 12:20, 13:6, 13:22, 13:24, 15:8
**Funded** - 7:7
**Funds** - 3:20, 11:7

**G**

**Generally** - 7:19, 9:14, 11:14
**Go** - 13:14, 14:25
**Going** - 14:22
**Good** - 2:3, 2:7, 2:10, 9:9, 9:10, 9:11
**Governed** - 9:20, 9:21, 9:23
**Granted** - 13:24
**Granting** - 4:18
**Great** - 4:15
**Group** - 13:10

**H**

**Had** - 5:5, 5:16, 5:23, 7:8, 8:5, 9:17, 10:18, 13:19, 13:21
**Has** - 2:15, 4:24, 5:2, 10:13, 11:10, 11:13, 11:17, 11:19, 12:23, 13:23, 13:24, 13:25, 14:5, 14:10, 14:11
**Have** - 2:11, 10:3, 14:13
**He** - 6:1, 6:2, 7:19, 10:4, 10:18, 11:17, 11:24, 13:10, 13:11, 13:12, 13:19
**Health** - 2:20, 4:10, 6:16, 13:10
**Healthcare** - 2:22, 5:12, 7:18
**HEALTHCORP** - 1:16
**Hear** - 2:16
**Heights** - 1:30
**Held** - 3:25, 4:14, 4:23, 6:12, 7:2, 9:25, 10:24
**Here** - 9:16, 11:18, 13:1

**Himself** - 13:21
**Hinder** - 7:24, 8:7
**HIS** - 1:15, 5:3, 6:14, 11:25, 13:4, 14:16
**HMS** - 5:16
**Hones** - 1:23
**Honor** - 2:3, 2:12, 15:1, 15:3
**HONORABLE** - 1:21
**How** - 10:12
**HOWARD** - 1:15, 2:4
**However** - 5:2, 10:13, 11:4, 11:8

**I**

**Identical** - 8:1
**I'll** - 3:8, 3:13, 4:2
**I'm** - 14:22
**Immediate** - 12:22
**In** - 1:4, 1:15, 2:16, 2:17, 2:22, 3:7, 3:13, 3:15, 3:18, 3:24, 4:1, 4:12, 4:13, 4:15, 4:18, 4:23, 5:1, 5:5, 5:6, 5:11, 5:12, 5:14, 5:17, 5:24, 6:17, 6:20, 6:21, 6:24, 7:6, 7:7, 7:16, 8:2, 8:5, 8:10, 8:12, 8:14, 8:17, 8:20, 8:21, 8:22, 9:3, 9:5, 9:10, 9:11, 9:16, 9:17, 9:20, 9:22, 10:2, 10:17, 10:20, 11:7, 11:18, 11:21, 12:9, 13:6, 13:8, 13:12, 13:16, 13:21, 13:25, 14:14, 14:16, 14:21, 14:24, 15:9
**INC** - 1:16, 1:17, 2:20, 11:18
**Including** - 3:16, 10:11, 11:20
**Incorporate** - 5:10
**Incorporates** - 4:20
**Incur** - 9:4
**Incurred** - 9:11
**Indemnification** - 3:16, 3:20, 3:22
**Indemnify** - 3:18
**Indemnity** - 3:23, 10:25, 11:8, 11:9
**Indirectly** - 3:4, 4:8, 7:1, 13:8
**Informed** - 11:25
**Initial** - 12:21, 13:2
**Insolvent** - 9:1, 9:2
**Instructions** - 13:13

**Intent** - 7:24, 8:7, 8:8, 8:9, 8:10, 11:5, 13:3
**Interest** - 8:5, 8:17, 9:17, 13:21, 14:15, 14:19
**Interested** - 5:14
**Into** - 5:10
**Investments** - 12:1
**Involved** - 13:7
**Involvement** - 10:4
**Involves** - 2:24
**IOLTA** - 6:11
**Irrelevant** - 10:19
**Is** - 2:1, 2:5, 4:25, 8:25, 9:7, 9:10, 9:11, 9:15, 9:16, 10:6, 10:9, 10:15, 10:20, 10:21, 10:24, 11:9, 12:12, 12:15, 12:18, 13:2, 13:15, 13:16, 13:22, 14:1, 14:6, 14:7, 14:15, 15:7
**Island** - 1:30
**Islip** - 1:4
**Issue** - 4:22, 5:8, 6:18, 10:21
**Issued** - 7:3
**Issues** - 10:10
**It** - 8:18, 8:25, 9:4, 9:16, 10:20, 11:16, 11:22, 13:5, 13:18, 13:21, 13:22
**Its** - 4:16, 4:20, 5:15, 9:3, 9:4, 10:9, 12:24
**It's** - 9:11, 11:4
**Itself** - 10:14, 12:6, 12:10

**J**

**Jacobs** - 8:10
**Jacobson** - 7:9
**Janaminder** - 5:20
**Janitorial** - 8:2
**Jeff** - 2:3
**JEFFREY** - 1:22, 2:3, 2:12, 15:1
**Joined** - 10:2
**Joint** - 5:7, 5:9, 9:18
**JP** - 3:6, 4:1
**Judge** - 2:1, 2:7
**Judgment** - 4:13, 4:14, 4:17, 4:18, 4:20, 5:5, 11:21, 13:25, 14:15, 14:16, 14:17, 14:19, 14:23
**Juiced** - 5:25, 6:2, 10:11
**July** - 4:23, 14:11
**June** - 3:24, 7:6, 13:9

EHRENBERG V. WALIA ET AL                    8-20-08049-AST                    NOVEMBER 20, 2024

---

## K

**King -** 11:18

## L

**Largely -** 9:25
**Later -** 5:18
**Law -** 1:33, 2:18, 7:25, 8:23, 11:15
**Laws -** 3:2, 9:21, 9:23
**Lawyers -** 3:25
**Lawyer's -** 3:24
**Lazarra -** 7:11
**Legitimate -** 10:5
**Less -** 6:8, 8:20
**Liability -** 14:17
**Liable -** 9:25
**Limitations -** 8:6, 9:19
**Lines -** 5:16, 6:10
**LIQUIDATING -** 1:16
**Listed -** 2:19
**LLC -** 4:8, 7:16
**Look -** 8:12
**Los -** 1:26

## M

**Made -** 3:3, 3:5, 3:9, 3:11, 3:24, 4:1, 4:4, 6:18, 7:23, 7:24, 8:6, 8:25, 9:7, 9:11, 9:17, 9:18, 9:19, 9:22, 10:23, 11:13, 12:22, 13:1, 13:3
**Maintained -** 10:4
**Makes -** 12:24
**Man -** 11:18
**Manage -** 11:25
**MANAGEMENT -** 1:17, 2:23, 3:5, 4:11
**March -** 5:17
**Material -** 5:6
**Matter -** 7:25, 11:15, 15:9
**Matters -** 2:14, 4:22
**Max -** 7:10
**May -** 12:16, 12:19, 13:23
**Me -** 2:21, 6:25, 8:24, 9:9
**Mediation -** 4:23
**Medical -** 5:13, 5:17
**Member -** 13:11
**Membership -** 4:5
**Memorandum -** 5:7
**Mitchell -** 7:10
**Molina -** 8:22
**Money -** 13:13
**MONEY/**

**PROPERTY -** 1:18, 1:19, 1:20
**Monica -** 1:24
**Months -** 10:23
**More -** 3:3, 3:10, 10:5
**Morgan -** 3:7, 4:1
**Morning -** 2:3, 2:7, 2:10, 2:13
**Motion -** 4:17, 4:18
**Motions -** 4:14
**Moved -** 4:12, 6:16
**Moving -** 8:3
**Mr -** 2:5, 4:25, 5:12, 5:15, 5:20, 5:23, 5:25, 6:2, 6:15, 6:18, 6:25, 7:18, 10:2, 13:5, 13:8, 13:13
**Much -** 10:9, 12:4
**Must -** 8:4, 8:17, 11:17
**My -** 14:23

## N

**Named -** 3:4
**NATURE -** 1:17
**Need -** 11:17, 14:2
**Needed -** 3:20, 6:1
**Needs -** 12:3
**Neither -** 6:22, 9:1, 10:3
**Net -** 6:5, 6:6
**Network -** 4:10
**Never -** 3:23, 5:21, 7:4
**NEW -** 1:2, 1:4, 1:35, 3:2, 7:16, 7:25, 8:11, 8:16, 9:6, 9:21, 9:23
**NIKNIM -** 1:17, 3:4, 3:7, 4:1, 4:19, 5:4, 11:25, 12:2, 12:14, 12:23, 13:2, 13:3, 13:4, 13:15, 13:21, 13:22, 14:13, 14:17
**Niknim's -** 13:14, 13:17, 13:19
**No -** 2:12, 11:3, 11:4, 11:9, 13:15, 13:16, 13:21
**NOLAN -** 1:22, 2:3, 2:12, 15:1
**Non -** 6:15
**Not -** 3:20, 4:23, 5:3, 5:5, 5:8, 6:4, 7:5, 8:8, 9:12, 9:15, 10:13, 10:15, 10:20, 11:10, 12:6, 12:8, 12:10, 13:18, 13:24, 14:2, 14:3
**Noted -** 12:7, 13:7, 13:12
**Notice -** 7:14
**November -** 1:6
**Now -** 14:24

**Number -** 5:5, 8:12
**Numerous -** 7:12
**NY -** 1:30, 1:35, 1:39

## O

**Objectech -** 4:5, 4:6, 4:7, 4:9, 4:10, 4:16, 6:25, 7:2, 9:22, 13:11, 13:12, 13:15
**Objected -** 14:9
**Objection -** 14:8
**Obligation -** 9:10, 9:13, 11:8, 11:14, 12:4, 12:11
**Obligations -** 10:25, 11:12
**Occurred -** 6:23, 8:5, 8:18, 10:3
**O'clock -** 14:21, 14:24
**OF -** 1:2, 1:16, 1:17, 1:18, 1:19, 1:33, 2:4, 2:16, 2:18, 2:20, 2:21, 3:1, 3:2, 3:3, 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:12, 3:15, 3:17, 3:18, 3:22, 3:24, 3:25, 4:2, 4:4, 4:6, 4:7, 4:21, 5:1, 5:3, 5:5, 5:7, 5:8, 5:11, 5:12, 5:17, 5:19, 5:21, 5:22, 5:23, 6:5, 6:6, 6:7, 6:10, 6:11, 6:12, 6:13, 6:17, 6:18, 6:19, 6:20, 6:21, 6:22, 6:23, 6:24, 6:25, 7:6, 7:9, 7:10, 7:11, 7:13, 7:14, 7:15, 7:18, 7:21, 7:25, 8:4, 8:7, 8:8, 8:9, 8:11, 8:12, 8:13, 8:18, 8:21, 9:2, 9:6, 9:12, 9:13, 9:14, 9:17, 9:19, 9:21, 9:23, 9:25, 10:1, 10:3, 10:7, 10:9, 10:11, 10:14, 10:15, 10:25, 11:5, 11:6, 11:8, 11:12, 11:15, 11:17, 11:19, 11:21, 11:24, 11:25, 12:3, 12:4, 12:6, 12:8, 12:9, 12:10, 12:17, 12:19, 12:20, 12:21, 13:3, 13:7, 13:11, 13:19, 13:25, 14:3, 14:5, 14:8, 14:10, 14:12, 14:17, 14:20, 14:23, 15:8
**Off -** 14:25
**Office -** 1:33
**Officer -** 6:17
**Often -** 12:2
**Okay -** 2:13
**On -** 2:4, 2:19, 3:5, 3:10, 3:12, 4:7, 4:13, 4:14, 4:20, 4:22, 4:23, 5:21, 5:22,

6:12, 8:8, 10:9, 12:24, 13:9, 13:11, 13:25, 14:11, 14:21, 14:22
**One -** 3:3, 3:10, 3:24, 8:20
**Only -** 4:18, 4:19, 5:10, 10:21, 13:11
**Operate -** 2:22
**Operations -** 11:18
**Opinion -** 8:2, 8:13
**Or -** 3:3, 3:4, 3:10, 3:22, 5:4, 7:24, 8:7, 9:1, 9:2, 9:4, 9:10, 9:12, 9:13, 10:10, 10:16, 10:20, 11:11, 12:18, 12:20, 12:21, 12:22, 13:1
**Orchestrated -** 10:1
**Orders -** 2:16
**ORION -** 1:16, 2:19, 6:16
**OTHER -** 1:20, 7:12, 13:14, 13:15, 13:18
**Others -** 5:6, 12:18, 14:4
**Out -** 10:1, 10:12
**Outlined -** 4:16
**Over -** 6:16
**Overall -** 10:10, 10:12, 10:15, 10:20, 12:5
**Owed -** 12:9
**Owned -** 4:8, 4:9, 4:11, 5:15, 6:25, 7:1, 13:8, 13:14
**Owner -** 4:6, 11:24
**Ownership -** 7:7

## P

**PA -** 11:18
**Pachulski -** 1:23
**Paragraph -** 9:18
**Parma -** 10:2
**Parmar -** 3:9, 4:7, 4:11, 5:12, 5:22, 6:1, 6:15, 10:13
**Parmar's -** 10:2
**Part -** 4:18, 5:7
**Partial -** 4:17
**Participating -** 13:6
**Particularly -** 6:21
**Parties -** 2:10, 4:12, 4:22, 5:7, 6:9, 7:21
**Partner -** 10:2
**Party -** 8:4, 12:25
**Paul -** 3:9
**Pay -** 6:2, 9:5
**Payment -** 4:4, 9:12, 10:11, 10:22, 12:3

PC - 5:16
PCA - 6:7
Pennsylvania - 11:19
Period - 8:6
Person - 3:9, 11:24
Personal - 12:1, 12:3, 13:4, 13:20
Personally - 13:5
Petition - 2:19, 3:5, 3:24, 7:23, 8:19
Physician - 2:23, 5:18, 11:1, 11:6
Physicians - 3:18, 4:10, 7:17, 11:12
Plaintiff - 1:22, 2:2, 2:4
Please - 2:2
Plus - 3:18, 5:18
Porteck - 3:12, 3:15, 4:15, 5:14, 5:16, 5:19, 5:20, 6:8, 9:20, 10:6, 10:20, 10:23, 11:24, 12:6, 12:9
Porteck's - 5:24
Portion - 11:5
Post - 2:17, 3:19, 12:11, 14:14, 14:18
Practice - 2:23, 3:18, 5:18, 7:17, 11:6, 11:12
Practices - 2:23, 11:2
Pre - 3:5, 3:24, 7:5, 14:14
Precise - 9:15
PREFERENCE - 1:18
Prejudgment - 14:18
Present - 9:11
Presented - 2:14
Preserved - 14:5, 14:7
Pretrial - 5:7
Previously - 12:13
Price - 3:14, 3:17, 5:23, 5:25, 6:3, 6:9, 6:12, 10:11, 10:12, 12:5, 13:17
Primarily - 2:22
Prior - 7:23, 8:19
Proceeding - 2:24, 4:12
Proceedings - 1:42, 2:15, 15:8
Produced - 1:43
Proffered - 12:4
Proof - 5:3, 7:14, 8:4, 11:17
Property - 8:5, 8:18, 9:3, 9:7, 9:10, 9:13, 9:17, 12:19, 12:20, 13:1
Protect - 6:20, 11:6
Prove - 11:21, 12:10

Proven - 11:11
Provided - 3:14, 3:17, 3:20, 5:22, 7:4, 7:5, 11:1, 13:13
Provides - 7:25, 12:11, 12:17, 14:3, 14:9
Provision - 3:16, 3:19, 11:5
Provisions - 8:1, 10:7
PTA - 6:6
Purchase - 3:13, 3:14, 3:17, 4:5, 5:23, 5:24, 6:3, 6:9, 6:12, 6:13, 6:24, 6:25, 7:2, 7:6, 9:23, 10:10, 10:12, 12:5, 13:17
Purportedly - 9:22
Purpose - 6:19
Purposes - 4:21, 5:8, 8:7, 13:5, 13:20
Pursuant - 4:4, 5:19, 11:3, 14:6

**Q**

Questioned - 10:17

**R**

Rates - 14:19
Re - 1:4, 8:10, 8:22, 9:5, 11:18
Really - 6:2
Reason - 13:16
Reasonably - 8:20, 9:3, 11:15
Reasons - 4:16, 4:24, 12:14
Receipt - 14:14
Received - 8:19, 14:10
Receives - 9:8, 9:9
Recess - 14:21, 14:24
Recite - 5:10
Record - 3:21, 10:23, 11:9, 13:2, 13:9, 13:16, 14:25
Recorded - 1:42
Recording - 1:42
Recordings - 15:8
Records - 6:10, 12:8
Recover - 5:1, 12:16, 12:19, 13:23
Recoverable - 12:25, 14:1, 14:6
Recovered - 2:24
RECOVERY - 1:18, 1:19

Refer - 3:8, 3:13, 4:2
Reference - 2:16
Referred - 5:16
Reflect - 12:8
Reflected - 6:10
Reflects - 3:21, 6:3
Relates - 10:22, 11:22, 12:12
Relationship - 13:15
Relevant - 12:9
Relief - 4:19, 12:12
Remaining - 4:22, 11:11
Rendered - 9:1
Repaid - 14:11, 14:13
Reportedly - 4:3
Reports - 7:3
Represented - 4:4
Request - 7:14
Requested - 4:19
Required - 7:2
Requires - 9:7
Respect - 5:11, 14:8
Response - 10:19
Retains - 13:1
Returned - 3:21
Returns - 7:4
Revenue - 2:23
Right - 11:7
Rights - 3:22, 11:6
Robinson - 6:11
ROSEN - 1:27, 1:28, 2:7, 15:2
Routinely - 8:12
Ruling - 2:14, 4:14, 4:21, 5:10, 14:20, 14:23

**S**

Sale - 4:9, 13:7
Sam - 13:10
Same - 13:13
SANFORD - 1:27, 2:7, 15:2
Santa - 1:24
Satisfied - 8:22
Satisfy - 5:3
Satisfying - 11:14
SCHEIMAN - 1:32, 1:33, 2:9, 15:3
Scribe - 1:37
Second - 3:23, 4:2, 4:3, 4:20, 4:24, 5:1, 6:23, 8:12, 9:21, 10:22, 12:12, 12:13, 12:15, 12:23, 13:3, 13:6, 13:23, 14:1, 14:5, 14:7,

14:16
Section - 2:15, 3:1, 3:16, 6:21, 7:22, 8:16, 10:25, 12:17, 12:24, 14:2, 14:3, 14:6, 14:9
Sections - 3:2, 12:18, 14:4
Secure - 9:11, 11:7
See - 8:1, 8:10, 8:13, 8:22, 9:5, 9:18, 11:18
Seek - 3:22
Selected - 11:4
Selection - 6:22
Sell - 4:7, 5:24
Seller - 3:12, 3:21, 4:10, 5:21, 10:25, 11:10, 13:18
Sellers - 5:19, 12:9
Selling - 11:23
Series - 2:21
Served - 6:17
Service - 1:43
Services - 5:14
Set - 4:21
Settlement - 2:11
Several - 2:20
Share - 7:7
Shareholder - 11:24
Shell - 4:9, 13:12
Shelter - 1:30
Should - 9:24
Side - 14:22
Sideways - 6:14
Sign - 13:11
Signatory - 11:23
Signed - 4:10, 5:22
Similarly - 7:25
Since - 13:17
Small - 9:3, 9:12
So - 6:7, 7:25, 11:17, 13:21
Software - 4:7
Sole - 13:2
Solely - 13:18
Solution - 4:11
Sought - 2:24, 8:14
Sound - 1:42, 15:8
Source - 10:7
Southern - 9:6
Space - 2:22
Specific - 12:3
Specifically - 10:5
Standing - 2:16
Stang - 1:23
Starting - 2:2, 2:19

**State -** 1:34, 7:4, 7:16, 7:25, 8:23, 9:20, 9:21, 9:23
**Stated -** 6:24, 10:18, 11:3, 12:3
**STATES -** 1:1
**Statutes -** 9:19
**Statutory -** 14:19
**Stay -** 5:5
**Stems -** 10:8
**Still -** 11:17
**Stipulate -** 5:8
**Stipulated -** 5:9
**Street -** 1:34, 1:38
**Subject -** 9:15, 9:17, 10:15, 12:6
**Submit -** 14:15
**Submitted -** 11:20, 14:23
**Successful -** 4:23
**Such -** 11:3, 11:4, 12:21, 12:22, 12:24, 14:11
**Suggests -** 10:10, 12:5
**SUIT -** 1:17, 14:20
**Summary -** 4:13, 4:14, 4:17, 4:18, 4:20, 5:4, 11:21
**Summons -** 7:15
**Supports -** 13:9
**Suspicion -** 12:5

**T**

**Take -** 2:1, 11:25
**Tax -** 7:4
**Technologies -** 5:13
**Technology -** 5:14, 6:17
**Terms -** 3:15, 4:4
**Testified -** 6:2, 6:19, 13:19
**Testimony -** 7:20, 7:21
**Than -** 6:8, 8:20, 13:14, 13:18
**Thank -** 14:25, 15:1, 15:2, 15:3
**That -** 3:8, 3:11, 3:15, 3:18, 3:20, 3:22, 4:1, 4:2, 4:9, 4:15, 4:19, 4:24, 5:2, 5:3, 6:3, 6:9, 6:11, 6:13, 6:24, 7:8, 8:4, 8:13, 8:17, 8:18, 8:19, 8:20, 9:7, 9:8, 9:10, 9:14, 9:16, 9:18, 9:24, 9:25, 10:2, 10:3, 10:4, 10:6, 10:18, 10:19, 10:24, 11:1, 11:5, 11:9, 11:11, 11:13, 11:20, 12:7, 12:9, 12:11, 12:13, 12:15,

12:17, 12:18, 13:1, 13:2, 13:4, 13:5, 13:10, 13:12, 13:14, 13:19, 13:22, 13:23, 14:1, 14:4, 14:10, 14:15, 14:20, 14:22, 15:7
**The -** 1:22, 1:27, 2:1, 2:2, 2:4, 2:6, 2:8, 2:10, 2:13, 2:14, 2:16, 2:17, 2:18, 2:19, 2:22, 2:25, 3:1, 3:2, 3:3, 3:4, 3:5, 3:6, 3:7, 3:8, 3:9, 3:10, 3:11, 3:14, 3:15, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:23, 3:25, 4:1, 4:2, 4:3, 4:4, 4:6, 4:12, 4:14, 4:15, 4:16, 4:17, 4:18, 4:20, 4:21, 4:22, 4:23, 4:24, 4:25, 5:1, 5:2, 5:3, 5:4, 5:5, 5:7, 5:8, 5:9, 5:11, 5:15, 5:17, 5:18, 5:19, 5:20, 5:21, 5:22, 5:24, 6:2, 6:3, 6:4, 6:5, 6:6, 6:7, 6:9, 6:10, 6:12, 6:13, 6:15, 6:16, 6:17, 6:18, 6:19, 6:20, 6:21, 6:22, 6:23, 6:24, 7:2, 7:5, 7:6, 7:7, 7:8, 7:9, 7:14, 7:18, 7:19, 7:21, 7:22, 7:23, 8:3, 8:4, 8:5, 8:6, 8:8, 8:9, 8:11, 8:12, 8:14, 8:16, 8:17, 8:18, 8:19, 8:21, 9:1, 9:2, 9:4, 9:8, 9:10, 9:13, 9:14, 9:16, 9:17, 9:19, 9:20, 9:21, 9:22, 9:23, 9:24, 9:25, 10:3, 10:5, 10:6, 10:7, 10:8, 10:9, 10:10, 10:11, 10:12, 10:13, 10:14, 10:15, 10:16, 10:17, 10:18, 10:19, 10:20, 10:21, 10:22, 10:23, 10:24, 10:25, 11:1, 11:2, 11:5, 11:6, 11:7, 11:8, 11:10, 11:11, 11:12, 11:13, 11:16, 11:17, 11:19, 11:20, 11:21, 11:22, 11:23, 11:24, 12:3, 12:4, 12:5, 12:6, 12:7, 12:9, 12:10, 12:12, 12:13, 12:14, 12:15, 12:16, 12:17, 12:19, 12:20, 12:21, 12:23, 12:25, 13:1, 13:2, 13:3, 13:6, 13:7, 13:9, 13:11, 13:13, 13:14, 13:16, 13:19, 13:22, 13:23,

13:24, 13:25, 14:1, 14:2, 14:3, 14:5, 14:7, 14:8, 14:9, 14:10, 14:13, 14:15, 14:16, 14:19, 14:20, 14:21, 14:22, 14:24, 14:25, 15:7, 15:8, 15:9
**Their -** 5:7, 11:7
**Them -** 5:11
**Then -** 2:6, 2:13, 4:21, 5:12, 6:16
**Theory -** 10:6
**There -** 7:20, 13:15, 13:16
**Therefore -** 14:2
**These -** 13:16
**They -** 2:19, 2:20, 3:21, 9:18, 14:13
**This -** 2:1, 2:13, 2:15, 2:17, 2:23, 4:12, 4:13, 4:21, 5:10, 8:1, 8:7, 8:13, 10:21, 10:22, 13:9
**Those -** 5:9, 5:10, 6:17, 6:22, 7:3, 7:5, 7:11, 7:13, 8:1
**Though -** 5:23
**Through -** 2:21, 3:2, 8:16
**Thus -** 10:20, 11:12, 12:11, 13:16, 13:23
**Time -** 1:10, 3:11, 4:15, 4:19, 5:15, 6:6, 6:7, 9:2, 12:9
**Times -** 6:9
**Title -** 2:15
**To -** 2:11, 2:16, 2:24, 3:4, 3:6, 3:8, 3:14, 3:17, 3:18, 3:21, 3:22, 3:25, 4:1, 4:2, 4:4, 4:7, 4:24, 5:5, 5:6, 5:8, 5:11, 5:13, 5:16, 5:19, 5:24, 6:1, 6:2, 6:4, 6:12, 6:13, 6:14, 6:16, 6:19, 7:3, 7:4, 7:5, 7:20, 7:23, 7:24, 8:3, 8:7, 8:9, 8:14, 8:19, 9:2, 9:5, 9:11, 9:15, 10:5, 10:9, 10:22, 11:2, 11:3, 11:6, 11:7, 11:13, 11:17, 11:21, 11:23, 11:25, 12:9, 12:12, 12:17, 13:3, 13:11, 13:13, 13:14, 13:17, 13:18, 13:22, 14:6, 14:8, 14:9, 14:14, 14:22, 14:23
**Told -** 6:1
**Took -** 7:14
**Total -** 6:7
**Totaling -** 7:12
**Transaction -** 4:6, 4:16,

10:8, 10:15, 10:21, 13:7
**Transactions -** 12:2
**Transcriber -** 1:36
**Transcript -** 1:43, 15:8
**Transcription -** 1:43
**TRANSFER -** 1:19, 3:5, 3:8, 3:11, 3:23, 3:24, 4:1, 4:2, 4:3, 4:20, 4:25, 5:1, 5:4, 5:11, 6:23, 7:23, 8:3, 8:6, 8:23, 8:25, 9:2, 9:19, 9:22, 10:6, 10:16, 10:18, 11:11, 11:13, 11:22, 12:7, 12:10, 12:12, 12:13, 12:15, 12:18, 12:20, 12:21, 12:22, 12:23, 12:24, 12:25, 13:3, 13:6, 13:22, 13:24, 13:25, 14:1, 14:4, 14:5, 14:7, 14:11, 14:14, 14:16
**Transferee -** 8:9, 12:21, 12:22, 13:2
**Transferor -** 8:8, 9:1, 9:4, 9:8
**Transferred -** 8:5, 8:18, 9:10, 9:13, 12:20
**Transfers -** 2:24, 3:1, 3:3, 4:3, 6:18, 8:15, 9:18, 9:25, 10:1, 10:3, 10:5, 13:1
**Trial -** 2:14, 2:17, 4:22, 4:23, 5:8, 6:3, 7:8, 7:13, 7:19, 9:24, 10:9, 10:17, 11:20
**Triggered -** 3:23
**Triggering -** 11:8
**TRUST -** 1:21, 2:1, 3:25, 5:20, 5:21, 12:1
**TRUSTEE -** 1:16, 2:25, 4:25, 5:2, 7:9, 7:14, 7:23, 8:14, 8:17, 9:24, 10:10, 10:13, 10:16, 10:18, 11:10, 11:12, 11:16, 12:5, 12:16, 12:19, 13:23, 13:25, 14:9
**Trustees -** 14:15
**Trustee's -** 4:18, 8:9, 10:6, 10:17, 14:3
**Two -** 2:24, 3:5, 5:16, 7:23, 8:1, 8:19

**U**

**Under -** 2:15, 2:16, 3:1, 3:16, 4:6, 6:4, 8:15, 8:16, 8:23, 10:21, 10:25, 12:18, 12:23, 14:2, 14:4

**Underlying** - 10:14
**Undertaken** - 7:3, 9:14
**Undisputed** - 9:16, 11:21
**Unfortunately** - 2:12
**UNITED** - 1:1
**Unless** - 14:13
**Until** - 14:11, 14:13, 14:21, 14:24
**Up** - 6:3, 10:11
**Upon** - 7:14
**Upwards** - 5:25
**Used** - 12:1, 13:4, 13:19

---
### V
---

**Validity** - 10:14
**Value** - 6:6, 6:7, 8:20, 9:9, 9:13, 11:15, 12:20
**Various** - 7:2
**Vehicle** - 13:4
**Verified** - 7:15
**Versus** - 7:16
**Very** - 7:20
**Visian** - 7:16

---
### W
---

**WALIA** - 1:7, 1:13, 1:17, 2:9, 3:4, 3:11, 4:6, 4:7, 4:8, 4:25, 5:4, 5:15, 5:20, 5:21, 5:23, 5:25, 6:1, 6:2, 6:14, 6:16, 6:18, 7:1, 7:15, 7:17, 7:18, 10:2, 10:4, 10:7, 10:13, 11:23, 12:1, 12:15, 13:4, 13:5, 13:8, 13:10, 13:13, 13:14, 13:19, 13:22, 14:9, 14:12, 14:17
**Walia's** - 10:4
**Wanted** - 5:13
**Was** - 3:5, 3:9, 3:11, 3:12, 3:17, 3:23, 3:25, 4:1, 4:6, 4:9, 4:19, 4:23, 5:14, 5:15, 5:25, 6:7, 6:8, 6:9, 6:24, 6:25, 7:1, 7:19, 8:6, 8:9, 8:18, 8:21, 9:1, 9:2, 9:17, 9:19, 9:20, 9:21, 9:22, 10:2, 10:12, 10:15, 10:19, 10:24, 11:4, 11:6, 11:13, 11:20, 11:23, 11:24, 12:3, 12:6, 12:13, 12:22, 12:25, 13:2, 13:3, 13:4, 13:5, 13:10, 13:11, 13:12, 13:18, 13:22
**Way** - 2:18
**Well** - 5:10, 7:12, 7:22,

13:6, 14:19
**We'll** - 2:1
**Went** - 6:11, 6:13, 6:14
**Were** - 2:19, 2:20, 3:3, 3:20, 3:23, 4:23, 5:8, 5:17, 5:19, 6:4, 6:6, 6:18, 7:3, 7:4, 7:5, 7:12, 7:13, 7:20, 7:22, 9:18, 10:5, 11:9
**Western** - 11:19
**Westlaw** - 8:2
**What** - 2:17, 11:20
**When** - 9:7, 9:10
**Whether** - 10:18
**Which** - 2:22, 3:12, 3:13, 3:16, 3:25, 5:8, 5:17, 6:25, 7:1, 9:3, 9:17, 9:20, 9:21, 10:7, 10:8, 10:21, 10:24, 13:8
**While** - 10:25, 11:15, 12:4
**Who** - 3:9, 5:15, 13:5, 13:22, 14:10
**Whose** - 12:21, 12:25
**Will** - 2:13, 5:9, 5:10, 14:2, 14:10, 14:20, 14:21, 14:24, 14:25
**Wire** - 3:23, 6:11, 13:13
**Wired** - 13:17
**With** - 2:2, 2:19, 3:13, 4:5, 5:11, 6:24, 7:24, 8:4, 8:7, 9:13, 9:20, 9:22, 10:10, 14:8, 14:17, 14:18, 14:23
**Within** - 8:6, 8:19, 9:18, 14:23
**Without** - 8:25, 11:13
**Witnesses** - 7:13
**Witnesses'** - 7:20, 7:21
**Wong** - 7:11
**Work** - 11:25, 14:22
**Would** - 9:4, 11:1
**Writing** - 5:24

---
### Y
---

**Year** - 3:24, 4:13
**Years** - 3:5, 7:23, 8:19
**YORK** - 1:2, 1:4, 1:35, 3:2, 7:16, 7:25, 8:11, 8:16, 9:6, 9:21, 9:24
**You** - 14:25, 15:1, 15:2, 15:3
**Your** - 2:3, 2:12, 15:1, 15:3

---
### Z
---

**Zaharis** - 13:10
**Zerbo** - 8:14
**Ziehl** - 1:23

---
### '
---

**'S** - 12:2

---
### $
---

**$1,350,000** - 6:6
**$1,520,000** - 4:2, 5:1, 6:23, 7:7, 12:16, 13:17
**$10,800,000** - 5:24
**$12,800,000** - 3:15, 5:23, 6:8
**$2,000,000** - 5:25, 6:1, 6:4, 6:9, 10:11
**$2,500,000** - 3:8, 3:17, 5:11, 6:19, 10:8, 10:22, 10:24, 11:1, 11:11, 11:22, 12:3, 12:8
**$200,000** - 6:4
**$3,000,000** - 6:14
**$474,000** - 6:7
**$6,800,000** - 6:13
**$61,590** - 14:12
**$9,800,000** - 6:11, 6:13

---
### 1
---

**1.6** - 3:16, 6:21, 11:1
**10:00** - 1:10
**10004** - 1:35
**10100** - 1:24
**10141** - 7:15
**10th** - 4:13
**11** - 14:21, 14:24
**11710** - 1:39
**11965** - 1:30
**12** - 1:18
**1274** - 1:29
**13** - 1:18, 10:23, 15:12
**137** - 5:9
**13th** - 1:25
**14** - 1:19, 14:24
**15** - 3:6
**157B** - 2:15
**17** - 1:34
**172** - 8:22
**186** - 8:22

---
### 2
---

**20** - 1:6

**2008** - 8:11
**2011** - 9:6
**2015** - 5:12, 5:17
**2016** - 3:6
**2017** - 3:24, 7:6, 13:9
**2018** - 14:12
**2022** - 11:19
**2023** - 8:23
**2024** - 1:6, 15:12
**20-8049** - 14:21
**21** - 13:9
**213** - 8:2
**2376** - 1:38
**23rd** - 4:23
**272** - 9:7
**273** - 3:2, 8:16
**275** - 8:16
**276** - 3:2, 7:25
**28** - 2:15

---
### 3
---

**31** - 7:12
**391** - 9:5
**392** - 8:14
**394** - 8:11

---
### 4
---

**40** - 1:34
**441** - 9:5
**452** - 9:5
**492375** - 8:2

---
### 5
---

**502D** - 14:9
**544** - 3:1, 12:18
**547** - 1:18
**548** - 1:19, 3:1, 7:22, 8:16, 12:18, 12:24, 14:4, 14:6
**550** - 12:17, 12:24, 14:2
**551** - 14:3
**553** - 11:18

---
### 6
---

**6:37** - 13:9
**626** - 11:18
**642** - 8:14
**644** - 11:18
**646** - 8:11
**649** - 8:14
**657** - 8:22

Case 8-20-08049-ast   Doc 154   Filed 12/16/24   Entered 12/16/24 21:04:13
2433
Case 2:25-cv-02032-RPK   Document 5-20   Filed 05/12/25   Page 33 of 78 PageID #:

EHRENBERG V. WALIA ET AL                8-20-08049-AST                NOVEMBER 20, 2024

| 8 |
|---|

**8-20-08049 -** 1:8, 1:12

| 9 |
|---|

**90067 -** 1:26

# United States Bankruptcy Court

Eastern District of New York
290 Federal Plaza
Central Islip, NY 11722

IN RE:                                                      CASE NO: 8−20−08049−ast

Ehrenberg v. Arvind Walia et al

DEBTOR(s)

## NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

**NOTICE IS HEREBY GIVEN THAT:**

A transcript of the proceeding held on 11/20/24 was filed on 12/16/24.

The following deadlines apply:

The parties have until December 23, 2024 to file with the court a Notice of Intent to Request Redaction of this transcript. The deadline for filing a Transcript Redaction Request is January 6, 2025.

If a Transcript Redaction Request is filed, the redacted transcript is due January 16, 2025.

If no such Notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is March 17, 2025, unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber E−Scribe at 800−300−1012 or you may view the document at the public terminal at the Office of the Clerk.

Dated: December 18, 2024

For the Court, Robert A. Gavin, Jr., Clerk of Court

BLnftransap2.jsp [Notice of Filing Transcript and Deadlines to Restriction and Redaction rev. 02/01/17]

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: admin | Date Created: 12/18/2024 |
| Case: 8–20–08049–ast | Form ID: 296 | Total: 4 |

**Recipients of Notice of Electronic Filing:**
aty     Eugene Ronald Scheiman          eugene.scheiman@scheimanlaw.com
aty     Sanford P Rosen          srosen@rosenpc.com

                                                                    TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
aty     Jeffrey Norlan      Pachulski Stang Ziehl & Jones LLP      780 Third Avenue      34th Floor      New York, NY 10017
        Jeffrey Nolan      Pachulski Stang Ziehl & Hones      10100 Santa Monica Boulevard      13th Floor      Los Angeles, CA 90067

                                                                    TOTAL: 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 18-71748-(AST) |
| HOWARD M. EHRENBERG IN HIS CAPACITY<br>AS LIQUIDATING TRUSTEE OF ORION<br>HEALTHCORP, INC., ET AL.,<br><br>               Plaintiff,<br><br>      - against -<br><br>ARVIND WALIA; NIKNIM MANAGEMENT,<br>INC.,<br><br>               Defendant. | Adversary Proc. No. 20-08049-(AST) |

## JUDGEMENT AGAINST AR IND WALIA AND NIKNIM MANAGEMENT INC.

The Court having called this adversary for the duly scheduled ruling conference on

November 20, 2024, (the "Ruling Conference") following the trial conducted on July 24, 2024,

and the Court having considered the evidence submitted by the parties and issued its order

related thereto, judgment is hereby entered against Arvind Walia and NIKNIM Management,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

Inc., jointly and individually, in favor of the Plaintiff, Howard M. Ehrenberg, In His Capacity As Liquidating Trustee Of Orion Healthcorp, Inc., as follows:

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiff recover the following:

1.    Judgment is hereby entered against Defendants, Arvind Walia, and NIKNIM Management, Inc., jointly and individually, and in favor of Plaintiff, Howard M Ehrenberg, the duly appointed Liquidating Trustee for Orion Healthcorp., Inc., in the amount of $1,520,000 in principal plus costs of suit of $350.00 and prejudgment interest, calculated from the date of the filing of the Complaint on March 13, 2020, to judgment, (1,831 days) calculated in accordance with New York State Law at 9    simple interest in the amount of $686,248.76, for a total judgment of $2,206,598.76.

2.    Post-judgment interest shall accrue and be payable by Defendants, Arvind Walia and NIKNIM Management, Inc., jointly and individually at the prevailing federal rate pursuant to 28 U.S.C. § 1961(a) from the date of entry of this Judgment to the date the amount is paid in full.



Dated: April 3, 2025
      Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: admin | Date Created: 4/4/2025 |
| Case: 8–20–08049–ast | Form ID: pdf000 | Total: 6 |

**Recipients of Notice of Electronic Filing:**
aty            Eugene Ronald Scheiman       eugene.scheiman@scheimanlaw.com
aty            Paris Gyparakis       pgyparakis@pbnlaw.com
aty            Sanford P Rosen       srosen@rosenpc.com

TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
ust       United States Trustee      Long Island Federal Courthouse      560 Federal Plaza – Room 560      Central Islip, NY 11722–4437 USA
10129404      Arvind Walia      C/O The Law Office of Eugene R. Scheiman      570 Lexington Avenue, Suite 1600      New York, New York 10022
10129405      Niknim Management Inc.      C/O The Law Office of Eugene R. Scheiman      570 Lexington Avenue, Suite 1600      New York, New York 10022

TOTAL: 3

Official Form 417A (12/23)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>Defendants. | Adv. Proc. No. 20-08049 (AST) |

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1.    Name(s) of appellant(s): Arvind Walia and Niknim Management Inc.

2.    Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☑ Defendants
☐ Other (describe) _____

For appeals in a bankruptcy case and not in an adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1.   Describe the judgment—or the appealable order or decree—from which the appeal is taken:

 a.   *Judgment against Defendants Arvind Walia and Niknim Management Inc.*
 *ORDERED AND ADJUDGED that Plaintiff recover the following: Judgment is*
 *hereby entered against Defendants, Arvind Walia, and NIKNIM Management, Inc.,*
 *jointly and individually, and in favor of Plaintiff, Howard M Ehrenberg, the duly*

*appointed Liquidating Trustee for Orion Healthcorp., Inc., in the amount of
$1,520,000 in principal plus costs of suit of $350.00 and prejudgment interest,
calculated from the date of the filing of the Complaint on March 13, 2020, to
judgment, (1,831 days) calculated in accordance with New York State Law at 9%
simple interest in the amount of $686,248.76, for a total judgment of
$2,206,598.76.Post-judgment interest shall accrue and be payable by Defendants,
Arvind Walia and NIKNIM Management, Inc., jointly and individually at the
prevailing federal rate pursuant to 28 U.S.C. § 1961(a) from the date of entry of this
Judgment to the date the amount is paid in full [Doc. No. 157], a copy of which is
annexed hereto.*

2.     State the date on which the judgment—or the appealable order or decree—was entered:
April 3, 2025

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment—or the appealable order or decree—from which the
appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach
additional pages if necessary):

| Party | Attorney |
|---|---|
| 1. Plaintiff:<br><br>HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL. | Jeffery P. Nolan, Esq.<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Phone: (310) 772.2313<br>Email: jnolan@pszjlaw.com |
| 2. Defendants:<br><br>ARVIND WALIA and NIKNIM MANAGEMENT INC. | Sanford P. Rosen, Esq.<br>**ROSEN & ASSOCIATES, P.C.**<br>PO Box 1274<br>Shelter Island Heights, NY 11965<br>Phone: (212) 223-1100<br>Email: srosen@rosenpc.com<br><br>Eugene R. Scheiman, Esq.<br>**LAW OFFICS OF EUGENE R. SCHEIMAN, PLLC**<br>570 Lexington Avenue<br>New York, NY 10022<br>Phone: (646) 280-9000<br>Email: eugene.scheiman@sheimanlaw.com |

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**5: Sign below**

**ROSEN & ASSOCIATES, P.C.**

By: */s/ Sanford P. Rosen*
    Sanford P. Rosen                                  April 10, 2025

P.O. Box 1274
Shelter Island Heights, NY 11965
Telephone: (212) 223-1100

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

**CERTIFICATE OF SERVICE**

      I certify that on April 10, 2025, I caused a true and correct copy of the foregoing document to be served by the Court's CM/ECF notification system, which will send notice of electronic filing to all counsel of record.

/s/ *Christine McCabe*
    Christine McCabe

Case 8:20-cv-08449-aat Doc 1571 Filed 04/01/25 Entered 04/01/25 09:22:36:34
Case 2:25-cv-02032-RPK     Document 5-20     Filed 05/12/25     Page 43 of 78 PageID #:
2443

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC.,[1]<br><br>               Debtor.<br><br>─────────────────<br><br>HOWARD M. EHRENBERG IN HIS CAPACITY<br>AS LIQUIDATING TRUSTEE OF ORION<br>HEALTHCORP, INC., ET AL.,<br><br>               Plaintiff,<br><br>      - against -<br><br>ARVIND WALIA; NIKNIM MANAGEMENT,<br>INC.,<br><br>               Defendant. | Chapter 11<br><br>Case No. 18-71748-(AST)<br><br><br><br><br><br><br>Adversary Proc. No. 20-08049-(AST) |

<u>**JUDGEMENT AGAINST AR IND WALIA AND NIKNIM MANAGEMENT  INC.**</u>

The Court having called this adversary for the duly scheduled ruling conference on

November 20, 2024, (the "Ruling Conference") following the trial conducted on July 24, 2024,

and the Court having considered the evidence submitted by the parties and issued its order

related thereto, judgment is hereby entered against Arvind Walia and NIKNIM Management,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748

Inc., jointly and individually, in favor of the Plaintiff, Howard M. Ehrenberg, In His Capacity As Liquidating Trustee Of Orion Healthcorp, Inc., as follows:

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiff recover the following:

1.  Judgment is hereby entered against Defendants, Arvind Walia, and NIKNIM Management, Inc., jointly and individually, and in favor of Plaintiff, Howard M Ehrenberg, the duly appointed Liquidating Trustee for Orion Healthcorp., Inc., in the amount of $1,520,000 in principal plus costs of suit of $350.00 and prejudgment interest, calculated from the date of the filing of the Complaint on March 13, 2020, to judgment, (1,831 days) calculated in accordance with New York State Law at 9   simple interest in the amount of $686,248.76, for a total judgment of $2,206,598.76.

2.  Post-judgment interest shall accrue and be payable by Defendants, Arvind Walia and NIKNIM Management, Inc., jointly and individually at the prevailing federal rate pursuant to 28 U.S.C. § 1961(a) from the date of entry of this Judgment to the date the amount is paid in full.



Dated: April 3, 2025
      Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge

2

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: admin | Date Created: 4/4/2025 |
| Case: 8–20–08049–ast | Form ID: pdf000 | Total: 6 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | Eugene Ronald Scheiman | eugene.scheiman@scheimanlaw.com |
| aty | Paris Gyparakis | pgyparakis@pbnlaw.com |
| aty | Sanford P Rosen | srosen@rosenpc.com |

TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| ust | United States Trustee | Long Island Federal Courthouse | 560 Federal Plaza – Room 560    Central Islip, NY 11722–4437 USA |
| 10129404 | Arvind Walia | C/O The Law Office of Eugene R. Scheiman | 570 Lexington Avenue, Suite 1600    New York, New York 10022 |
| 10129405 | Niknim Management Inc. | C/O The Law Office of Eugene R. Scheiman | 570 Lexington Avenue, Suite 1600    New York, New York 10022 |

TOTAL: 3

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: admin | Date Created: 4/17/2025 |
| Case: 8–20–08049–ast | Form ID: pdf000 | Total: 2 |

**Recipients of Notice of Electronic Filing:**

aty        Jeffrey P Nolan        jnolan@pszjlaw.com

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

ust        United States Trustee        Long Island Federal Courthouse        560 Federal Plaza – Room 560        Central Islip, NY 11722–4437

TOTAL: 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**CIVIL COVER SHEET**

This form is REQUIRED for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

IN RE: Bankruptcy Case No. 18-71748 (AST) Adv. Pro. No. *(if applicable)* 20-08049 (AST)

**Bankruptcy Appeal**

| APPELLANTS | APPELLEES |
|---|---|
| ARVIND WALIA and NIKNIM MANAGEMENT INC. | HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL. |

| ATTORNEYS (FIRM NAME, ADDRESS, TEL. NO.) | ATTORNEYS (IF KNOWN) |
|---|---|
| Sanford P. Rosen, Esq. **ROSEN & ASSOCIATES, P.C.** P.O. Box 1274 Shelter Island Heights, NY 11965 Phone: (212) 223-1100 Email: srosen@rosenpc.com  Eugene R. Scheiman, Esq. **LAW OFFICES OF EUGENE R. SCHEIMAN, PLLC** 570 Lexington Avenue New York, NY 10022 Phone: (646) 280-9000 Email: eugene.scheiman@sheimanlaw.com | Jeffery P. Nolan, Esq. **PACHULSKI STANG ZIEHL & JONES LLP** 780 Third Avenue, 34th Floor New York, NY 10017 Phone: (310) 772.2313 Email: jnolan@pszjlaw.com |

BASIS OF JURISDICTION: Federal Question

CAUSE OF ACTION - 28:1334 Bankruptcy Appeal *(Write brief statement of cause.)*
Appellants appeal from the Judgment of the United States Bankruptcy Court entered against
Appellants Arvind Walia and Niknim Management Inc. [Doc. No. 157]

NATURE OF SUIT: 422 Bankruptcy Appeal (801)

RELATED CASE(S) IN DISTRICT COURT, IF ANY

DISTRICT JUDGE _____ DOCKET NUMBER_____

*CIVIL CASES ARE DEEMED RELATED IF PENDING CASE INVOLVED:*

   *1. PROPERTY ' INCLUDED IN AN EARLIER NUMBERED PENDING SUIT*

   *2. SAME ISSUE OF FACT OR GROWS OUT OF THE SAME TRANSACTION*

   *3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT COPYRIGHT OR TRADEMARK*

Date: 04/10/2025 _____     Signature of Attorney of Record: /s/ *Sanford P. Rosen*
                                                                    *(or Appellant Pro Se)*

***FOR COURT USE ONLY***

APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

CIVIL COVER SHEET, Bankruptcy Appeal (cont'd)

Did the cause of action arise in Nassau or Suffolk County? Yes

If YES, please indicate which county: <u>Suffolk</u>

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

YES Yes                                    NO

Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?

YES        (If yes, please explain)                NO No

_____

Please provide your bar code and e-mail address below. Your bar code consists of the initials of your first and last name and the last four digits of your social security number, or any other four-digit number registered by the attorney with the Clerk of Court. This information must be provided pursuant to local rule 11.1(b) of the local civil rules,

Attorney Bar Code: 19-23079

E-Mail Address srosen@rosenpc.com

_____

_____

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ORION HEALTHCORP, INC. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL.,<br><br>Plaintiff,<br>v.<br><br>ARVIND WALIA; NIKNIM MANAGEMENT INC.,<br><br>Defendants. | Adv. Proc. No. 20-08049 (AST) |

## <u>STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL</u>

Arvind Walia and Niknim Management Inc., pursuant to the Notice of Appeal dated April 10, 2025, of the judgment of the United States Bankruptcy Court for the Eastern District of New York dated April 3, 2025 (the "<u>Judgment</u>"), set forth the following as their statement of issues to be presented on appeal:

1. Whether, by its order dated April 23, 2024, which underlies the Judgment, the Bankruptcy Court erred in granting summary judgment against Defendant-Appellant Niknim Management Inc., notwithstanding the existence of a genuine issue of material fact as to the reasonableness of value received by the debtors because of their exclusive use of the software acquired under the Objectech Membership Purchase Agreement.

2. Whether, by its order dated April 23, 2024, which underlies the Judgment, the Bankruptcy Court erred in denying the Defendants'-Appellants' summary judgment motion by finding that the Plaintiff-Appellee had standing to assert the claims under section 544 of the Bankruptcy Code, notwithstanding the failure to properly plead standing.

*(Signature on following page.)*

Dated: April 16, 2025

Respectfully Submitted,

ROSEN & ASSOCIATES, P.C.

By: /s/ Sanford P. Rosen
       Sanford P. Rosen
PO Box 1274
Shelter Island Heights, NY 11965
(212) 223-1100

*Counsel to Arvind Walia and*
    *Niknim Management Inc., Appellants*

*and*

LAW OFFICES OF EUGENE R. SCHEIMAN, PLLC
570 Lexington Avenue, Suite 1600
New York, NY 10022
(646) 280-9000

*Co-Counsel to Arvind Walia and*
    *Niknim Management Inc., Appellants*

## CERTIFICATE OF SERVICE

      I certify that on April 16, 2025, I caused a true and correct copy of the foregoing document to be served by the Court's CM/ECF notification system, which will send notice of electronic filing to all counsel of record.

/s/ *Sanford P. Rosen*
   Sanford P. Rosen

2349

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| ORION HEALTHCORP, INC. *et al*., | Chapter 11 |
| Debtors. | Case No. 18-71748 (AST) |
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 20-08049 (AST) |
| ARVIND WALIA; NIKNIM MANAGEMENT INC., | |
| Defendants. | |

**DESIGNATION OF RECORD ON APPEAL AND**
**STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL**

Arvind Walia and Niknim Management Inc. (together, the "Appellants") designate the following items to be included in the record on appeal, pursuant to the Notice of Appeal dated April 10, 2025, from the order and judgment of the United States Bankruptcy Court for the Eastern District of New York dated April 3, 2025, entering judgment against the Appellants, jointly and individually (the "Judgment"), and set forth the following as their designation of the record on appeal and statement of issues to be presented on appeal:

A. Designation of Record:

1. Amended Complaint and Exhibits [Docket 22]
2. Answer [Docket 23]
3. Defendants' Motion for Partial Summary Judgment and Exhibits [Docket 51]
4. Plaintiff's Motion for Summary Judgment [Docket 53]
5. Plaintiff's Statement of Undisputed Facts [Docket 54]
6. Affidavit of Jeffrey P. and Exhibits [Docket 55]
7. Affidavit of Edith Wong in Support of Plaintiff's Motion and Exhibits [Docket 56]
8. Affidavit of Frank Lazzara Support of Plaintiff's Motion and Exhibits [Docket 57]
9. Statement-Request for Judicial Notice Nolan in Support of Plaintiff's Motion and Exhibits [Docket 58]

10. Objection/Opposition to Defendants' Motion for Partial Summary Judgment [Docket 60]

11. Response-Plaintiff's Response to Defendants' Separate Statement of Facts [Docket 61]

12. Affidavit of Jeffrey P. Nolan in Opposition to Defendants' Motion and Exhibits [Docket 62]

13. Affidavit of Arvind Walia in Opposition to Plaintiff's Motion [Docket 64]

14. Brief in Opposition to Plaintiff's Motion [Docket 65]

15. Affirmation of Sanford P. Rosen in Opposition to Plaintiff's Motion [Docket 66]

16. Affidavit of Arvind Walia in Opposition to Plaintiff's Motion [Docket 67]

17. Memorandum of Law in Opposition to Plaintiff's Motion [Docket 68]

18. Affidavit of Sanford P. Rosen in Opposition to Plaintiff's Motion [Docket 69]

19. Reply of Defendants in Support of Motion [Docket 70]

20. Objection and Request to Strike the Affidavit of Arvind Walia in Support of Motion [Docket 71]

21. Reply Brief in Support of Plaintiff's Motion [Docket 72]

22. Affidavit of Jeffrey P. Nolan in Support of Plaintiff's Motion and Exhibits [Docket 73]

23. Defendants' Corrected Affidavit in Opposition to Plaintiff's Motion [Docket 84]

24. Affirmation of Sanford P. Rosen in Opposition to Plaintiff's Motion [Docket 85]

25. Transcript of Ruling Hearing of April 10, 2024

26. Order Granting and Denying in Part Plaintiff's Motion for Summary Judgment/Summary Adjudication and Denying Defendants Arvind Walia's and Niknim Management, Inc.'s Crossmotion for Summary Judgment; Ruling on Evidentiary Objections; and Establishing Facts as Admitted in the Case Pursuant to FRCP 56(g) [Docket 97]

27. Order Granting and Denying in Part Judgment against Defendants Arvind Walia and Niknim Management, Inc. [Docket 153]

28. Judgment against Defendants Arvind Walia and Niknim Management, Inc. [Docket 157]

29. Notice of Appeal to District Court [Docket 159]

30. Civil Cover Sheet [Docket 160]

B.    Issues on Appeal:

1. Whether, by its order dated April 23, 2024, which underlies the Judgment, the Bankruptcy Court erred in granting summary judgment against Defendant-Appellant Niknim Management Inc., notwithstanding the existence of a genuine issue of material fact as to the reasonableness of value received by the debtors because of their exclusive use of the software acquired under the Objectech Membership Purchase Agreement.

2. Whether, by its order dated April 23, 2024, which underlies the Judgment, the Bankruptcy Court erred in denying Defendants' summary judgment motion by finding that the Plaintiff had standing to assert the claims under section 544 of the Bankruptcy Code, notwithstanding the Plaintiff's failure to properly plead his standing.

Dated: April 16, 2025                    Respectfully Submitted,

                                          ROSEN & ASSOCIATES, P.C.
                                          *Counsel to Arvind Walia and Niknim*
                                          *Management Inc.*

                                          By:  */s/ Sanford P. Rosen*
                                                Sanford P. Rosen

                                          PO Box 1274
                                          Shelter Island Heights, NY 11965
                                          (212) 223-1100

                                          LAW OFFICES OF EUGENE R. SCHEIMAN, PLLC
                                          *Co-counsel to Arvind Walia and Niknim*
                                          *Management Inc.*
                                          570 Lexington Avenue, Suite 1600
                                          New York, NY 10022
                                          (646) 280-9000

## CERTIFICATE OF SERVICE

I certify that on April 16, 2025, I caused a true and correct copy of the foregoing document to be served by the Court's CM/ECF notification system, which will send notice of electronic filing to all counsel of record.

                        */s/ Sanford P. Rosen*
                            Sanford P. Rosen

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| ORION HEALTHCORP, INC., ET AL., | Case No. 18-71748 (AST) |
| Debtor. | |

| | |
|---|---|
| HOWARD M. EHRENBERG, IN HIS CAPACITY AS LIQUIDATING TUSTEE OF ORION HEALTHCORP, INC., ET AL., | Adv. Proc. No. 20-08049(AST) |
| Plaintiff-Appellee, | Civil Case No. 2:25-cv-02032-RPK (E.D.N.Y) |
| v. | |
| ARVIND WALIA; NIKNIM MANAGEMENT, INC., | |
| Defendants-Appellants. | |

### APPELLEE'S SUPPLEMENTAL DESIGNATION OF RECORD OF ADDITIONAL ITEMS TO BE INCLUDED IN RECORD RE: NOTICE OF APPEAL

Plaintiff, Howard M. Ehrenberg, in his capacity as Liquidating Trustee of Orion Healthcorp,. Inc., (the "**Appellee**") hereby submits *Appellee's Supplemental Designation Of The Record Of Additional Items To Be Included In The Record Re: Notice Of Appeal of Order Granting and Denying In Part Against Arvind Walia and Niknim Management, Inc. Judgment Against Arvind Walia and Niknim Management, Inc.* (the "**Supplemental Designation**")*,* to the appeal filed by Defendants, Arvind Walia and Niknim Management, Inc. (the "**Appellant**") as follows:

### APPELLEE'S SUPPLEMENTAL DESIGNATIONS OF THE RECORD

1.      Stipulation and Order Re Filing of First Amended Complaint; and Entering of Scheduling Order [Docket No. 20].

2.      Stipulation Requesting Amendment to Case Management and Discovery Plan (signed by Judge) [Docket No. 27].

3.      Letter of Adjournment [Docket No. 33].

4.      Stipulation to Attend Mediation and Toll Remaining Deadlines [Docket No. 34]

5.      Letter to Judge Trust re Mediation [Docket No. 37].

6.      Declaration of Jeffrey P. Nolan with Regard to Status and Completion of Remaining Expert Discovery [Docket No. 38].

7.      Declaration of Sanford P. Rosen with Respect to the Status of the Litigation and the Filing of Plaintiff's Proposed Order to Complete Remaining Expert Discovery and in Response to the Declaration of Jeffrey P. Nolan Submitted in Support of the Order [Docket No. 40].

8.      Letter to Judge Trust re note settled after mediation [Docket No. 41].

9.      Order to Complete Expert Discovery [Docket No. 42].

10.     Letter to Judge Trust Requesting Pre-Motion Conference [Docket No. 45].

11.     Stipulation for Scheduling Order re Briefing Schedule for Summary Judgment Motions and Order (signed by Judge) [Docket No. 49].

12.     Letter to Judge Trust re Summary Judgment briefing complete [Docket No. 79].

13.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 80].

14.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 81].

15.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 82].

16.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 83].

17.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 87].

18.     Letter to Judge Trust stating Defendants ready to proceed with hearing on Motion for Summary Judgment [Docket No. 88].

19.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 89].

20.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 90].

21.     Letter to Judge Trust re adjournment of Pretrial Conference [Docket No. 91].

22.     Adversary Pre-Trial Scheduling Order [Docket No. 92].

23.     Request For Judicial Notice [Docket No. 136].

24.     Joint Pre-Trial Memorandum [Docket No. 137].

Dated:  April 30, 2025                    PACHULSKI STANG ZIEHL & JONES LLP


                                  By    /s/Jeffrey P. Nolan
                                        Ilan D. Scharf, Esq.
                                        Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
                                        780 Third Avenue, 34th Floor
                                        New York, New York 10017
                                        Telephone: (212) 561-7700
                                        Facsimile: (212) 561-7777

                                        *Counsel for Howard M. Ehrenberg in his
                                        capacity as the Liquidating Trustee of Orion
                                        Healthcorp, Inc., et al.*

## <u>CERTIFICATE OF SERVICE</u>

STATE OF NEW YORK    )
                            )
COUNTY OF NEW YORK  )

       I, Rolanda Mori, am over the age of eighteen years, am employed by Pachulski Stang Ziehl & Jones LLP. I am not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003.

       On April 30, 2025, in addition to service via the Court's ECF system, I caused a true and correct copy of the following document to be served via electronic mail upon parties set forth on the service list annexed hereto as Exhibit A.

- *Appellee's Supplemental Designation Of Record Of Additional Items To Be Included In Record Re: Notice Of Appeal*

I declare under penalty of perjury, under the laws of the State of New York and the United States of America that the foregoing is true and correct.

                                      */s/ Rolanda Mori*
                                      Rolanda Mori

## EXHIBIT A

**SERVICE BY E-MAIL**

| NAME | NOTICE NAME | EMAIL |
|---|---|---|
| Sanford P. Rosen, Esq. Paris Gyparakis, Esq. **ROSEN & ASSOCIATES, P.C.** 747 Third Avenue New York, NY 10017-2803 | *Defendants Arvind Walia and Niknim Management Inc.* | srosen@rosenpc.com pgyparakis@rosenpc.com |
| Eugene Ronald Scheiman, Esq. **The Law Office of Eugene R. Scheiman** 570 Lexington Avenue Suite 1600 New York, NY 10022 Email: | *Defendants Arvind Walia and Niknim Management Inc.* | eugene.scheiman@scheimanlaw.com |